Eric Honig (CSBN 140765)
LAW OFFICE OF ERIC HONIG
A Professional Law Corporation
P.O. Box 10327
Marina del Rey, CA 90295
erichonig@aol.com
Telephone:  (310) 699-8051
Fax:  (310) 943-2220

RICHARD M. BARNETT (CSBN 65132)
A Professional Law Corporation
105 West F Street, 4th Floor
San Diego, CA 92101
richardmbarnett@gmail.com
Telephone: (6l9) 231-1182
Facsimile: (619) 233-3221

Michael S. Chernis  (CSBN 259319)
CHERNIS LAW GROUP P.C.
Santa Monica Water Garden
2425 Olympic Blvd.
Suite 4000-W
Santa Monica, CA 90404
Michael@chernislaw.com
Tel:  (310) 566-4388
Fax: (310) 382-2541

ERIC D. SHEVIN (CSBN 160103)
Shevin Law Group
15260 Ventura Boulevard, Suite 1400
Sherman Oaks, California  91403
eric@shevinlaw.com
tel. 818-784-2700
fax 818-784-2411

PAUL L. GABBERT (CSBN 74430)
2530 Wilshire Boulevard
Second Floor
Santa Monica, CA 90403
plgabbert@aol.com
Telephone: 424 272-9575
Facsimile: 310 829-2148

Attorneys for Plaintiffs Does 1-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| 1 | DOES 1-6, on behalf of themselves and all others similarly situated, | ) ) | No. |
| 2 | | ) ) | |
| 3 | Plaintiffs, | ) ) | **EX PARTE APPLICATION FOR TEMPORARY RESTRAINING** |
| | v. | ) ) | **ORDER; DECLARATIONS; EXHIBIT; PROPOSED ORDER** |
| 4 | UNITED STATES OF AMERICA, and | ) ) | |
| 5 | MERRICK GARLAND, in his official capacity as United States Attorney | ) ) | |
| 6 | General, | ) ) | |
| 7 | Defendants. | ) ) | |
| 8 | ———————————————— | ) | |

PLEASE TAKE NOTICE that Class Representative Plaintiffs DOES 1-6 ("Plaintiffs"), on behalf of themselves and all others similarly situated, pursuant to Local Rule 7-19 hereby apply ex parte to the Court for a temporary restraining order ("TRO") for injunctive relief in support of their Class Action Complaint, including production of a search warrant and return. Counsel for the Defendant United States is Andrew Brown, Assistant U.S. Attorney, Major Frauds Section, 1100 United States Courthouse, 312 North Spring Street, Los Angeles, CA 90012, (213) 894-0102, andrew.brown@usdoj.gov. Plaintiffs' counsel already informed defense counsel by e-mail of the filing of the Complaint and intended TRO, and will serve him with a copy of the Complaint and the TRO application immediately after its filing.

Dated: April 15, 2021          Respectfully submitted,

LAW OFFICE OF ERIC HONIG
A Professional Law Corporation

RICHARD M. BARNETT

ERIC D. SHEVIN

CHERNIS LAW GROUP P.C.

PAUL L. GABBERT

/s/
_____
ERIC HONIG
Attorneys for Plaintiffs and the Class

2

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................ iii

I.   INTRODUCTION................................................. 1

II.  FACTS........................................................ 1

    A.   Background on US Private Vault Safe Deposit Boxes. ............. 1

    B.   Government seizure of Plaintiffs' property from USPV boxes........ 2

    C.   Plaintiffs each rent a USPV box, maintain control of the box key, and
    stored personal property in their respective box, and have filed this
    class action seeking injunctive and declaratory relief.............. 3

    D.   Injunctive relief requested in Class Action Complaint and TRO...... 4

III. APPLICABLE LAW.............................................. 4

    A.   Applicable law for granting TROs.............................. 4

    B.   Legal authority in support of the requested TROs................. 5

        1.   Plaintiffs have standing to seek a TRO.................... 5

        2.   Plaintiffs request the Court to order the Defendant
        government to produce the search warrant and return
        relating to the USPV boxes............................. 6

        3.   Plaintiffs request the Court to enjoin the Defendant
        government from conducting any further investigation
        of class members and their property pending a determination
        by the Court whether there was  particularized probable
        cause as to the search of their individual safe deposit boxes
        and seizure of their property.......................... 7

        4.   Plaintiffs request the Court to enjoin the Defendant
        government  from informing potential class members
        that they must provide personal information to the
        government as a condition to claiming return of their
        property................................................ 8

        5.   Plaintiffs, on behalf of themselves and the class members,
        request the court to allow them to file claims for return of
        their property using a pseudonym; alternatively,
        Plaintiffs request the Court to appoint a special
        master to administer class members' claims to boxes
        and property............................................ 10

**6.** **Plaintiffs request the Court to order an extension or temporary suspension of the deadlines for filing claims in administrative and judicial forfeiture proceedings instituted by the government against the class members' personal property, at lease until the Court determines the constitutionality of the search and seizure of their property.**. . . . . . . . . . . . . . . . . . . 12

**7.** **Plaintiffs request the Court to stay discovery in any judicial forfeiture proceedings instituted by the government against the class members' personal property pursuant to 18 U.S.C. §983 pending the Court's determinations as to whether the searches of their boxes and seizures of their property violated the Fourth and/or Fifth Amendment.**. . . . . . . . . . . . . . . . . . . 13

**8.** **Plaintiffs request the Court to enjoin the Defendant government from destroying and/or disposing of the safe deposit box nests and individual safe deposit boxes, so as to allow access to the boxes using the box holders' keys issued by USPV, and enjoin Defendant from depositing into a financial institution any currency seized from the boxes, so that Plaintiffs and class members can first have the currency scientifically tested.**. . . . . . . . . . . 14

**IV.** **DISCUSSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**V.** **CONCLUSION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ii

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

*Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.1991). . . . . . . . . . . . . . . . . . .  14

4

*Alliance for the Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). . . . . . .  5, 16

5

*Anheuser–Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348
  (9th Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

6

*Cox v. United States*, 2008 WL 477877, at *6 (D. Ariz. Feb. 19, 2008). . . . . . . . . .  17

7

*Doe v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . .  9

8

*Doe v. Stegall,* 653 F.2d 180, 185 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . .  10

9

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068
  (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

10

*Doe #1 v. Trump* (D. Or. 2020) 335 F.R.D. 416, 429. . . . . . . . . . . . . . . . . . . . . . . . .  6

11

*Elrod v. Burns*, 427 U.S. 347, 373 (1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

12

*Evers v. County of Custer*, 745 F.2d 1196 1201 (9th Cir. 1984). . . . . . . . . . . . . . . .  9

13

*Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1282 (N.D. Cal. 2014). . . . . . . . .  17

14

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers
  Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). . . . . . . . . . . . . . . . .  5

15

*Hilao v. Estate of Marcos,* 103 F.3d 767, 772 (9th Cir. 1996). . . . . . . . . . . . . . . . . .  11

16

*Hill v. McDonough*, 547 U.S. 573, 584 (2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

17

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d411, 422 (4th Cir. 1999). . . .  5

18

*LaDue v. LaFrance Corp.*, 2006 U.S. Dist. LEXIS 63166
  (E.D. Tex. Oct. 27, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

19

*Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir.2006). . . . . . . . . . . . . . . . . . . .  14

20

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). . . . . . . . . . . . . . . . . . .  17, 18

21

*Mockaitis v. Harcleroad*, 104 F.3d 1522, 1532 (9th Cir. 1997). . . . . . . . . . . . . . . . . .  8

22

*Nat'l Urb. League v. Ross*, 484 F. Supp. 3d 802, 806 (N.D. Cal. 2020). . . . . . . . . .  17

23

*Ramsden v. United States*, 2 F.3d 322, 324-325 (9th Cir. 1993). . . . . . . . . . . . . . . .  16

24

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
  599 F.2d 707, 713 (5th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

25

26

27

28

*Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).... 11

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832,
    839 n. 7 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Chadwick*, 433 U.S. 1, 11 (1977), *abrogated on other
    grounds by California v. Acevedo*, 500 U.S. 565 (1991). . . . . . . . . . . . . . . . . 16

*United States v. Howard*, 828 F.2d 552, (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . 8

*United States v. Johnson*, 256 F.3d 895, 905 (9th Cir. 2001).. . . . . . . . . . . . . . . . 8

*United States v. Jones*, 565 U.S. 400, 407 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002).. . . . . 14

*United States v. Nora*, 765 F.3d 1049, 1060 (9th Cir. 2014). . . . . . . . . . . . . . . . . 7

*United States v. Ross*, 456 U.S. 798, 824 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). . . . . . . 7

*United States v. Spilotro*, 800 F.2d 959, 962 (9th Cir. 1986).. . . . . . . . . . . . . . . . . 16

*United States v. Wardlow*, 528 U.S. 119, 123-24 (2000). . . . . . . . . . . . . . . . . . . . . 8

*United States v. Wetselaar*, 2013 WL 8206582, at *10 (D. Nev. Dec. 31, 2013). . . 16

*U.S. v. $40,955.00 in U.S. Currency* 554 F.3d 752, 758 (9th Cir. 2009). . . . . . . . . 15

*U.S. v. Real Property Located at 475 Martin Lane, Beverly Hills, CA*,
    545 F.3d 1134, 1140 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). . . . . . . . . . . . . . . 5

## FEDERAL STATUTES AND RULES

Fed.R.Civ.P. 53(a)(1)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed.R.Civ.P. 65(a)-(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed.R.Crim.P. 41(f)(1)(B) and (D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed.R.Crim.P. 41(f)(1)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed.R.Crim.P. 41(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

U.S. Const. amend. IV.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

1

U.S. Const. amend. V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. §981(g)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

18 U.S.C. §§983(a)(1)(A)(i), (a)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

18 U.S.C. §983(a)(1)(A)(ii).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

18 U.S.C. §983(a)(4)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.

# INTRODUCTION

Just three weeks ago, the Defendant U.S. government searched a private safe deposit box facility with a criminal seizure warrant. Instead of searching only the boxes named in the warrant, however, the government searched and seized the entire walls of more than 600 boxes, which included the opening and seizing of the contents of individual, private, anonymously held safe deposit boxes that were not named in the warrant. This violated the Fourth Amendment to the U.S. Constitution. To compound the government's improper conduct, it also informed box holders that if they wanted to get back their property back, they had to identify themselves and provide personal information to government law enforcement agents. This violated the Fifth Amendment.

As a result of the government's illegal and improper conduct, Plaintiffs have filed a class action complaint to obtain return of class members' property and to enjoin the government from continuing to violate the class members' constitutional rights. Plaintiff class representatives also now apply for a temporary restraining order to seek expedited injunctive and declaratory relief.

# II.

# FACTS

A.   Background on US Private Vault Safe Deposit Boxes

Since 2011, US Private Vaults ("USPV") has operated a facility offering private safe deposit boxes for rent to the public at 9182 West Olympic Boulevard in Beverly Hills, and houses several hundred safe deposit boxes of varying sizes, each secured by its own lock and key. USPV has marketed the safe deposit services to the general public. *See*, https://www.usprivatevaults.com/uspv-vs-bank-safe-deposit-box.

USPV leases these boxes to the public under yearly leases and provides security and insurance for their contents. USPV does not keep a key to any rented boxes, which means that the only person with the ability to open the box is the renter or the renter's

authorized designee.  According to USPV's website, it: 1)  has been operating in Beverly Hills since 2011; 2)  provides several advantages that are unavailable at bank safety deposit boxes; 3)  insures its boxes (up to $500,000/box), a service banks do not offer; 4)  does not hold keys to their clients' boxes; banks keep a key; 5)  is not subject to federal banking rules that could mandate "bank  holidays" or a suspension of withdrawals in case of an economic crisis; 6)  provides box access in much less time than at a bank, "in 5 minutes;" 7)  is not subject to probate lock out upon the death of the box owner; and 8)  offers a wider selection of box sizes than do banks.  *Id.*

Security at USPV is handled by ADT, a publicly traded security company which has over $5 billion in revenue and operates "the largest network of security professionals in the United States."  USPV provides several enhanced privacy and security features to protect against the theft of personal identifying information, including: a) customers are identified by encrypted biometric information in the form of an iris scan; b) USPV does not maintain keys to its customers' safe deposit boxes, who access their boxes through iris scan or biometric hand geometry scan; c) 24/7 video monitoring at ADT's central station, as well as motion detectors, heat sensors, and other sophisticated security measures to detect the presence of intruders after regular business hours.  *Id.*

USPV has between 600 and 1000 safe deposit boxes rented to hundreds of different customers.  Civil Minutes, ECF 17, *John Doe v. United States of America, et al*, CD/CA No. 2:21-cv-02803-RGK-MAR, p. 2.

B.    Government seizure of Plaintiffs' property from USPV boxes

From March 22, 2021 through March 26, 2021, federal law enforcement agents acting at the direction of the United States Attorney's Office for the Central District of California conducted a search of USPV and seized every safe deposit box contained in the facility.  The Defendant government confirmed that it seized all of the boxes at USPV and claims it searched the contents of each box pursuant to a sealed criminal seizure warrant.  *Id.*  The government is refusing to return box  holders' property unless

they waive their Fifth Amendment rights against self-incrimination, i.e., every box holder who seeks return of their property will be subject to a criminal investigation. *Id.* at p. 3; *see also* No. 2:21-cv-02803, ECF 7, 3:15-22.[1]

In addition, to make a "claim" for return of their property, a box holder must fill out and submit a form to the FBI containing their full name, address, e-mail address and telephone contact information. *Id; see also* www.forms.fbi.gov/uspvclaims ("To make a claim for property stored at U.S. Private Vaults in Beverly Hills, California, please provide the following information. An FBI agent will contact you for additional details."). The form also includes a warning that it is a federal crime to knowingly make any false statements concerning the facts on the form. *Id.*

While the searches of the Plaintiffs' USPV safe deposit boxes and seizures of their property were being executed, box holders were told by law enforcement officers that to contest the seizure of their property they must fill out a claim form online at www.forms.fbi.gov/uspvclaims, and then the FBI within 30-60 days will send those box holders notices of seizure to initiate civil administrative forfeiture proceedings against the property. Declaration of Eric Honig, ¶8.

C. <u>Plaintiffs each rent a USPV box, maintain control of the box key, and stored personal property in their respective box, and have filed this class action seeking injunctive and declaratory relief.</u>

Plaintiffs each rent a safe deposit box at USPV, were provided keys to their personal box, and maintain and have maintained exclusive control over their box since in and before March 2021. Each of Plaintiffs store and have stored valuable personal property and/or currency in their box, none of which is contraband. Plaintiffs have never defaulted on their box lease payments. Class Action Complaint, ECF 1, ¶11; *see also*

---

[1] Many of the facts the Court relied upon in issuing its minute order, *supra*, were taken from facts sworn to in that case in an attorney's declaration in support of a John Doe client. Those facts also for the most part support this Application. See Exhibit A, Declaration of Ariel A. Newman.

Declarations of Does 1-6 Plaintiff Class Representatives, ¶¶1-5.  Accordingly, Plaintiffs bring this class action on behalf of themselves and on behalf of the class, defined as follows: "All persons and/or entities who maintained a safe deposit box at US Private Vaults, located at 9182 West Olympic Boulevard, Beverly Hills, CA 90212 during the month of March 2021."

D.    Injunctive relief requested in Class Action Complaint and TRO.

In this class action Plaintiffs allege the government's conduct in opening and searching their individual boxes violated the Fourth and Fifth Amendment, and are seeking the following injunctive relief, *inter alia*: 1) prompt return of their personal property; 2) allowing class members to file claims to their personal property in the name of a pseudonym; 3) extending and/or staying the deadlines for class members to file claims in any administrative and/or judicial forfeiture proceedings instituted by the Defendant government against the class members' personal property pending the Court's determinations as to whether the searches and seizures violated the Fourth or Fifth Amendment; 4) allowing class members to file civil forfeiture claims to their personal property in the name of "Doe" in any administrative or judicial civil forfeiture proceeding; 5) staying discovery in any judicial forfeiture proceedings instituted by the Defendant government against the class members' personal property pending the Court's determinations as to whether the searches and seizures violated the Fourth or Fifth Amendments; and 6) prohibiting disposal of the safe deposit box "nests" and boxes to preserve box holders' ability to use their keys to access their boxes so as to establish their ownership of the property within.  ECF 1, Class Action Complaint, p. 13, ¶¶b through g.

### III.

### APPLICABLE LAW

A.    Applicable law for granting TROs.

While a preliminary injunction is intended to preserve the status quo pending a

4

judgment on the merits, a TRO is intended to preserve the status quo only until a preliminary injunction hearing can be held.  ECR 17, *supra*, citing *Hoechst Diafoil Co. v. Nan Ya Plastics Corp*., 174 F.3d411, 422 (4th Cir. 1999)(citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty*., 415 U.S. 423, 439 (1974).  "Consequently, [TROS] are of limited duration, not – like preliminary injunctions – of indefinite duration."  *Id.*  Also, where a TRO may be granted without notice to the adverse party under limited circumstances, a preliminary injunction cannot be granted without notice.  Fed.R.Civ.P. 65(a)-(b).

The standard for a TRO is "substantially identical" to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001).  To obtain either, the moving party must show 1) a likelihood of success on the merits; 2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; 3) that the balance of equities tips in favor of the moving party; and 4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The court also may apply a sliding scale test, whereby the elements of the *Winte*r test are balanced "so that a stronger showing of one element may offset a weaker showing of another."  *Alliance for the Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  The moving party has the burden of persuasion.  *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

B.   Legal authority in support of the requested TROs.

**1.   Plaintiffs have standing to seek a TRO.**

To demonstrate Article III standing to make a claim for return of property, a claimant must have "a sufficient interest in the property to create a case or controversy." This burden is not a heavy one, at least at the initial stages of a lawsuit. A claimant need demonstrate only a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake, or ownership in property that is in dispute. *U.S. v. Real Property Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134,

5

1140 (9th Cir. 2008)(in their pleadings, the claimants specifically alleged an ownership interest in the defendant properties, which was sufficient at the initial stages of the litigation to establish that they had standing to challenge the civil forfeiture action); *see also Doe #1 v. Trump* (D. Or. 2020) 335 F.R.D. 416, 429 (court found class representatives  demonstrated standing to seek injunctive relief since they were under threat of suffering an "injury in fact" that was concrete and particularized, the threat must be actual and imminent, it was fairly traceable to the challenged action of the defendant, and it was likely that a favorable judicial decision would prevent or redress the injury.").

In their Class Action Complaint, the Plaintiffs specifically alleged that they maintained safe deposit boxes at USPV and/or ownership of the personal property within those boxes and identified the box numbers, that the government searched their boxes and took their property, and that they would have to reveal their identities to the government to obtain return of their property.  ECF 1, Class Action Complaint, ¶11; *see also* Declarations of Doe Plaintiff Class Representatives, ¶¶1-5.  At the very minimum, Plaintiffs have established a colorable interest in the subject safe deposit boxes and the personal property that was stored within the boxes by alleging ownership, actual possession, and/or control of the boxes and property – and thus a financial stake in these proceedings – so that their standing to represent their own interests and that of the class members in all of the safe deposit boxes cannot reasonably be in dispute.

**2.      Plaintiffs request the Court to order the Defendant government to produce the search warrant and return relating to the USPV boxes.**

The officer executing a search and seizure warrant must give a copy of the warrant and a receipt for the property taken to the person from whom the property was taken. Fed.R.Crim.P. 41(f)(1)(C).  In this case, the government opened each of Plaintiffs' individual safe deposit boxes.  Plaintiffs, however, have not received  a copy of the warrant allowing the government the authority to open either their individual boxes or the class members' boxes.

In addition, an officer present during the execution of the warrant must prepare and verify an inventory of any property seized.  The officer executing the warrant also must promptly return it – together with a copy of the inventory – to the magistrate judge designated on the warrant, and the court  must, **on request**, give a copy of the inventory to the person from whom the property was taken.  Rule 41(f)(1)(B) and (D).  Plaintiffs also have not received a copy of any inventory the government has taken as to each of their individual boxes or the class members' boxes.

Accordingly, Plaintiffs hereby request this Court to order the government to produce a copy of the warrant, and all inventories taken of both their individual boxes and the class members' boxes.

**3.** **Plaintiffs request the Court to enjoin the Defendant government from conducting any further investigation of class members and their property pending a determination by the Court whether there was particularized probable cause as to the search of their individual safe deposit boxes and seizure of their property**.

The Court should restrain the government from further violating Plaintiffs' and class members' Fourth Amendment rights.  The Fourth Amendment provides, "no Warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Here, in seizing and searching the entirety of the boxes, the government undoubtedly impinged on Plaintiffs' and the class members' Fourth Amendment rights.  Indeed, by opening the boxes, the government trespassed on their property, and infringed their reasonable expectations of privacy. *See United States v. Jones*, 565 U.S. 400, 407 (2012).

Nor does the warrant alter this conclusion.  For a warrant to be valid, it "must [] give legal, that is, not overbroad, instructions.  Under the Fourth Amendment, this means that 'there [must] be probable cause to seize the particular thing[s] named in the warrant.'" *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009) (citation omitted).  Thus, "a warrant must 'be no broader than the probable cause on which it is based." *United States v. Nora*, 765 F.3d 1049, 1060 (9th Cir. 2014)(citation

7

omitted).

Here, the government cannot establish it had probable cause to believe every box contained evidence of a crime.  Since it did not know the owner(s), it could have no actual evidence as to what a particular box contained.  And, plainly, speculation or hunches are not enough.  *See United States v. Johnson*, 256 F.3d 895, 905 (9th Cir. 2001) ("'hunches' are insufficient to establish reasonable suspicion, let alone probable cause.") (quoting *United States v. Wardlow*, 528 U.S. 119, 123-24 (2000)); *United States v. Howard*, 828 F.2d 552, (9th Cir. 1987)("mere speculation . . . is not enough to establish the probable cause").

To this end, the constitutional principle is clear: "probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom[.]" *United States v. Ross*, 456 U.S. 798, 824 (1982).  Similarly, "[p]robable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." *Id.*

The same is true here.  Even if the government had probable cause to believe one or more boxes would contain evidence of a crime – which it has not established – that would not allow it to search all of the boxes.  Yet that appears to be exactly what happened.  To prevent further Fourth Amendment violations, the Court should restrain the government from: 1) any additional search of Plaintiffs' and the class members' boxes, and 2) using any information already learned, until the Court can decide the merits of the Fourth Amendment claim.  *See Mockaitis v. Harcleroad*, 104 F.3d 1522, 1532 (9th Cir. 1997)(approving an injunction to prohibit "further violation . . . [of] the Fourth Amendment").

**4.   Plaintiffs request the Court to enjoin the Defendant government from informing potential class members that they must provide personal information to the government as a condition to claiming return of their property.**

The Court should restrain the government from insisting Plaintiffs and the class

8

members waive their Fifth Amendment right against self-incrimination to obtain return of their property.  The government has taken the position that it will not return any property unless the owners identify themselves by name.  It has also announced a plan to criminally investigate anyone who so identifies themselves.   This is constitutionally untenable.

Plaintiffs and the class members have a fundamental right to their property.  *See Evers v. County of Custer*, 745 F.2d 1196 1201 (9th Cir. 1984)("A property owner's right to exclude others is 'universally held to be a fundamental element of the property right.'") (citation omitted).  They cannot be forced to waive their Fifth Amendment rights to exercise it.  *See Simmons v. United States*, 390 U.S. 377, 394 (1968)("we find it intolerable that one constitutional right should have to be surrendered in order to assert another.").  Yet that is exactly the government's proposal.

The Court should intervene.  The Fifth Amendment privilege against self-incrimination is broad.  It "can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative or adjudicatory."  *Doe v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000).  Moreover, it "does not depend upon the likelihood, but upon the possibility of prosecution and also covers those circumstances where the disclosures would not be directly incriminating, but could provide an indirect link to incriminating evidence."  *Id.*  (internal quotations omitted).

Here, given the government's announced intentions, its position of forcing Plaintiffs and class members to provide their names to contest the seizure of their property raises the possibility of prosecution.  As such, the government's position violates the Fifth Amendment.  The Court, therefore, should restrain the government from continuing its unconstitutional conduct.

**5.      Plaintiffs, on behalf of themselves and the class members, request the court to allow them to file claims for return of their property using a pseudonym; alternatively, Plaintiffs request the Court to appoint a special master to administer class members' claims to boxes and property.**

As shown above, the government is refusing to return class member box holders' property unless they waive their Fifth Amendment rights against self-incrimination, i.e., every box holder who seeks return of their property will be subject to a criminal investigation. Class members should not have to be subjected to such an investigation simply because they are asking for their property to be returned, particularly here, where the government did not have particularized probable cause to search the individual boxes.

"[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity. *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068 (9th Cir. 2000), citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)("the cases affording plaintiff anonymity all share several characteristics . . . . The plaintiffs in those actions, at the least, divulged personal information of the utmost intimacy; many also had to admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct. . . . . Furthermore, all of the plaintiffs previously allowed in other cases to proceed anonymously were challenging the constitutional, statutory or regulatory validity of government activity.")

The Ninth Circuit has held that pseudonyms are specifically allowed when the anonymous party is "compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution." *Does I thru XXIII*, supra, 214 F.3d at 1068 (emphasis added), citing *Doe v. Stegall,* 653 F.2d 180, 185 (5th Cir. 1981)("The public right to scrutinize governmental functioning, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself.  Party anonymity does

10

not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name.")(citation omitted).

It should be undisputed that the class members' need for anonymity outweighs any possible prejudice to the government and the public's interest in knowing their identity, since they risk a criminal investigation and prosecution should they have to reveal their identities to law enforcement simply to obtain return of their property. *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)("It is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.").

Here, Plaintiffs have identified their safe deposit box numbers and provided a summary of the box contents.  This should be more than sufficient for them to establish their identities and their interests in their specific boxes.  The government does not need their name, address, telephone number, etc. to agree to return their property.

Alternatively, the Court may appoint a special master to review the individual class members' claims to their boxes and property to avoid subjecting themselves to unnecessary scrutiny and compelled waiver of their Fifth Amendment rights by the Defendant government.  Fed.R.Civ.P. 53(a)(1)(C)( court may appoint a master only to "address pretrial and post trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district."); *Hilao v. Estate of Marcos,* 103 F.3d 767, 772 (9th Cir. 1996)(court appointed a special master to supervise proceedings related to the compensatory-damage phase of the trial in connection with the class); *LaDue v. LaFrance Corp.*, 2006 U.S. Dist. LEXIS 63166 (E.D. Tex. Oct. 27, 2006)(court appointed a special master to determine whether Plaintiff had properly invoked his Fifth Amendment privilege).  The special master can administer both administrative and judicial claims to the class members' property.

11

1
2
3

**6.     Plaintiffs request the Court to order an extension or temporary suspension of the deadlines for filing claims in administrative and judicial forfeiture proceedings instituted by the government against the class members' personal property, at lease until the Court determines the constitutionality of the search and seizure of their property.**

4   Plaintiffs have alleged that the government unconstitutionally searched and/or

5   otherwise took possession of the safe deposit boxes and personal property inside.  To

6   make a "claim" for return of their property, a box holder must fill out and submit a form

7   to the FBI containing their full name, address, e-mail address and telephone contact

8   information.

9   Plaintiff assumes the government's use of the word "claim" is meant to be in the

10   context of a class member filing a claim contesting administrative forfeiture of their

11   property after the government, within 60 days of seizure, serves the class member with

12   notice of seizure of their property.  18 U.S.C. §§983(a)(1)(A)(i), (a)(2).  In fact, law

13   enforcement officers searching the boxes and seizing the property inside told box

14   holders/class members that the FBI would be sending them forfeiture seizure notices

15   within 30-60 days if they filled out the FBI "claim" form online.  Plaintiffs are unaware

16   of any other federal statutory procedure for someone to file a "claim" for the return of

17   their property after the government conducts a search and takes possession of the

18   property.

19   If that is true, since Plaintiffs in this case are seeking a determination by this Court

20   as to the constitutionality of the government's search and seizure of the class members'

21   safe deposit boxes and property, they contend that it would be most efficient and

22   economical for the Court to decide the issue of probable cause before the class members

23   are forced to hire separate attorneys to contest administrative forfeiture of their property

24   and/or before a special master would have to start sifting through and reviewing claims.

25   Accordingly, Plaintiffs are requesting the Court to extend or suspend the deadline (35

26   days after being served with notice of seizure) for class members to file administrative

27   claims to contest forfeiture of their property.

28

12

Should the Defendant government decide to forgo serving the class members with administrative notices of seizure, and instead file a judicial forfeiture case directly with the Court pursuant to 18 U.S.C. §983(a)(1)(A)(ii) – in which no notice is required if the Government files a civil judicial forfeiture action against the property before the 60-day period expires – then Plaintiffs similarly request an order from the Court to extend, suspend or stay the 30-day deadline for class members to file a judicial claim in the forfeiture proceeding.  See §983(a)(4)(A).  Plaintiffs, again, contend that the Court should rule on the constitutionality of the search and seizures only once, before the Court is inundated with hundreds of claims.

On the other hand, if the government is not seeking either to administratively or judicially forfeit the class members' property, Plaintiffs in their class action complaint are entitled to return of their property.  *See* Class Action Complaint, ECF 1, ¶¶39-41 (Second Cause of Action), requesting the Court to order the return of Plaintiffs' and class members' property pursuant to Fed.R.Crim.P. 41(g)("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return").  Accordingly, Plaintiffs request the Court to order the government to state its intentions regarding the disposition of their property taken from their safe deposit boxes, so that the Court can determine the appropriate injunctive relief.

**7.**    **Plaintiffs request the Court to stay discovery in any judicial forfeiture proceedings instituted by the government against the class members' personal property pursuant to 18 U.S.C. §983 pending the Court's determinations as to whether the searches of their boxes and seizures of their property violated the Fourth and/or Fifth Amendment.**

For the same reasons Plaintiffs herein have requested a suspension of the claim filing deadlines regarding any judicial civil forfeiture case the government may file against property taken from their USPV safe deposit boxes, Plaintiffs also request the Court to order a stay of discovery in any such judicial forfeiture case (until the Court determines the constitutionality of the box searches and seizures). 18 U.S.C.

13

§981(g)(2)(upon motion of a claimant, the court shall stay the civil forfeiture proceeding with respect to the claimant if the court determines that a) the claimant is the subject of a related criminal investigation, b) the claimant has standing to assert a claim in the civil forfeiture proceeding, and c) continuation of the forfeiture proceeding will burden the right of the claimant against self-incrimination in the related investigation).

All three factors are met here.  First, the government has acknowledged it is conducting a continuing investigation of the boxes, the box holders and the property the government took from the boxes.  Second, as shown above, Plaintiffs and the class members have standing to contest the search of their respective boxes they identified herein and the seizure and forfeiture of their property held in the boxes.  Third, as also shown above, Plaintiffs and the class members have maintained that their Fifth Amendment rights are burdened by the government's continuing investigation.

Accordingly, Plaintiffs request the Court to stay discovery regarding any class member claimant until the Court determines the constitutionality of the Defendant government's searches and seizures of property from their safe deposit boxes.

**8.** **Plaintiffs request the Court to enjoin the Defendant government from destroying and/or disposing of the safe deposit box nests and individual safe deposit boxes, so as to allow access to the boxes using the box holders' keys issued by USPV, and enjoin Defendant from depositing into a financial institution any currency seized from the boxes, so that Plaintiffs and class members can first have the currency scientifically tested.**

Under its inherent power to control litigation, a district court may levy sanctions, including dismissal of the action, for spoliation of evidence.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir.2006)(citing *Anheuser–Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir.1995)).  Sanctions may issue only when a party had some notice that the evidence was potentially relevant.  *Leon*, 464 F.3d at 959; *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir.2002); *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir.1991). A party does not engage in spoliation when,

14

without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *U.S. v. $40,955.00 in U.S. Currency* 554 F.3d 752, 758 (9th Cir. 2009).

In the Class Action Complaint, Plaintiffs are asking the Court to enjoin the government from destroying and/or disposing of the safe deposit box nests and individual safe deposit boxes, so as to allow access to the boxes using the box holders' keys issued by USPV – which can help establish their ownership of the personal property therein. Plaintiffs also are asking the Court to enjoin the government from depositing into a financial institution any currency seized from the boxes, so that Plaintiffs and class members can have the currency scientifically tested – so as to refute any claim by the government that it has detected the presence of drugs or their scent on the currency. Class Action Complaint, ECF 1, Fifth Clause of Action, ¶¶50-51.

It has been less than three weeks since the Defendant government completed its search of the safe deposit boxes at USPV and its seizure of the Plaintiffs and class members' personal property held within the boxes. The government formally is on notice of Plaintiffs' injunctive request in the Complaint and herein, although Plaintiffs hope and assume the government would know better and not already have destroyed or disposed of the boxes, locks, and currency stored in the boxes.

Accordingly, Plaintiffs hereby request the Court to enjoin the government from spoliation of the evidence.

## IV.

## DISCUSSION

As stated above, for issuance of either a TRO or injunction, the moving party must show 1) a likelihood of success on the merits; 2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; 3) that the balance of equities tips in favor of the moving party; and 4) that an injunction is in the public interest.

Plaintiffs have established a strong likelihood that they will succeed on the merits

15

of their Rule 41(g) and Class Action declaratory and injunctive relief claims seeking to enjoin the government from continuing to violate their constitutional rights.  Plaintiffs need show only that there are "serious questions going to the merits" where, as here, the "the balance of hardships tips sharply in . . . [P]laintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d at1134-35.

As for Plaintiffs' relief requested pursuant to Rule 41(g), where, as here, no criminal proceeding is pending against Plaintiffs, a district court is to consider four discretionary factors before reaching the merits of the motion.  *Ramsden v. United States*, 2 F.3d 322, 324-325 (9th Cir. 1993).  Not all factors must weigh in the movant's favor in order for the district court to exercise jurisdiction; rather, the court is to engage in a balancing test.  *Id.* at 326.

First, the government is displaying a callous disregard for Plaintiffs' constitutional rights. The government did  not have probable cause to search Plaintiffs' safe deposit boxes or to believe that Plaintiffs' property in the boxes were involved in criminal activity.  In continuing to hold Plaintiffs' personal property unless Plaintiffs surrender their Fifth Amendment rights by identifying themselves and submitting to a federal investigation, the government is displaying a callous disregard for Plaintiff's constitutional rights.

Second, as the holder of safe deposit boxes at USPV, Plaintiffs have privacy, property and individual Fourth Amendment rights in their boxes.  *United States v. Chadwick*, 433 U.S. 1, 11 (1977)("By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination."), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991); *United States v. Spilotro*, 800 F.2d 959, 962 (9th Cir. 1986)(defendant had standing to challenge the search of his safe deposit box."); *United States v. Wetselaar*, 2013 WL 8206582, at *10 (D. Nev. Dec. 31, 2013)("[A]s renters of those boxes, Defendants had a reasonable expectation of privacy in the contents, which include

16

the space inside the box and the inner metal liner itself."). Plaintiffs' need for return of these valuable items is demonstrated by their expected safe storage of their property at USPV.

Third, the government has indicated that it will continue to deprive Plaintiffs of the use of their property and continue to violate their constitutional rights under the Fourth and Fifth Amendments. "[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *Nat'l Urb. League v. Ross*, 484 F. Supp. 3d 802, 806 (N.D. Cal. 2020)(same); *Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1282 (N.D. Cal. 2014)("[i]rreparable harm is presumed if plaintiffs are likely to succeed on the merits because a deprivation of constitutional rights always constitutes irreparable harm").

Fourth, Plaintiffs have no other avenue by which to seek vindication of their rights. At this time, Plaintiffs do not have a criminal or civil forfeiture proceeding in which to file a motion to suppress their unlawfully seized property. *Cox v. United States*, 2008 WL 477877, at *6 (D. Ariz. Feb. 19, 2008)(rejecting the government's argument that the movant had an adequate remedy at law because he could challenge the legality of search warrants if criminal proceedings ever were instituted against the movant).

As for Plaintiffs' other declaratory and injunctive relief claims, the government's current conduct would result in continuing invasions and violations of Plaintiff's Fourth and Fifth Amendment rights to be free from unreasonable searches and seizures and to be afforded due process, unless and until Plaintiff agrees to surrender Plaintiff's Fifth Amendment rights against self-incrimination. Both declaratory and injunctive relief are necessary to enjoin the government from retaining Plaintiffs' personal property.

As shown above, Plaintiffs also will continue to suffer immediate and irreparable injury. The government's refusal to return their property without disclosure of Plaintiffs' personal identifying information means that the deprivation of property is ongoing.

17

The balance of equities and public interest favor Plaintiffs, since "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at1002 (citation and internal quotation marks omitted).  The government here has shown that it is and will continue to interfere with the constitutional rights of Plaintiffs and the class members, it is in the public interest to enjoin the continuation of such violations.

## V.

## CONCLUSION

Based on the foregoing, Plaintiffs hereby request that the Court grant the relief requested above and in the proposed order lodged concurrently herewith.

Dated: April 15, 2021              Respectfully submitted,

LAW OFFICE OF ERIC HONIG
A Professional Law Corporation

RICHARD M. BARNETT

ERIC D. SHEVIN

CHERNIS LAW GROUP P.C.

PAUL L. GABBERT

/s/
_____
ERIC HONIG
Attorneys for  Plaintiff and the Class

18

### DECLARATION OF ERIC HONIG

I, Eric Honig, state and declare as follows:

1.     I have personal knowledge of the facts hereinafter stated, and if called upon to testify, I could and would competently testify thereto.

2.     I am counsel of record for the Plaintiff Class Representatives in this action.

3.     This declaration is in support of Plaintiffs' application for a temporary restraining order relating to the relief sought in the Class Action Complaint filed in this action.

4.     Prior to filing the Complaint and this Application, I sent an e-mail to Assistant U.S. Attorney Andrew Brown at andrew.brown@usdoj.gov informing him of the filing of the Complaint and the intended filing of the TRO application.  Mr. Brown is counsel for the Defendant government in a related criminal case.

5.     Plaintiffs are filing this Application with the Court's ECF system after filing the Class Action Complaint.

6.     Immediately after filing this Application, I will e-mail AUSA Brown a copy of the Complaint, Application, Declarations and Exhibits, and Proposed Order.

7.     Exhibit A is a true and correct copy of the Declaration of Ariel A. Newman, ECF 7-2, filed in *John Doe v. United States of America, et al*, CD/CA No. 2:21-cv-02803-RGK-MAR.

8.     Since the March 22-26, 2021 searches of the class members' safe deposit boxes at US Private Vault, I have been contacted by several potential class members who held boxes there.  They informed me that while the searches of their safe deposit boxes and seizures of their property were being executed, they were told by law enforcement officers conducting the searches and seizures that if they must fill out a claim form online at www.forms.fbi.gov/uspvclaims to contest the seizures, and that within 30-60

///

///

19

days the FBI would be sending box holders notices of seizure to initiate civil administrative forfeiture proceedings against their property.

I certify under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed on April 15, 2021at Marina del Rey, California.

/s/ Eric Honig
ERIC HONIG

20