Eric Honig (CSBN 140765)
LAW OFFICE OF ERIC HONIG
A Professional Law Corporation
P.O. Box 10327
Marina del Rey, CA 90295
erichonig@aol.com
Telephone:  (310) 699-8051
Fax:  (310) 943-2220

RICHARD M. BARNETT (CSBN 65132)
A Professional Law Corporation
105 West F Street, 4th Floor
San Diego, CA 92101
richardmbarnett@gmail.com
Telephone: (619) 231-1182
Facsimile: (619) 233-3221

Michael S. Chernis  (CSBN 259319)
CHERNIS LAW GROUP P.C.
Santa Monica Water Garden
2425 Olympic Blvd.
Suite 4000-W
Santa Monica, CA 90404
Michael@chernislaw.com
Tel:  (310) 566-4388
Fax: (310) 382-2541

ERIC D. SHEVIN (CSBN 160103)
Shevin Law Group
15260 Ventura Boulevard, Suite 1400
Sherman Oaks, California  91403
eric@shevinlaw.com
tel. 818-784-2700
fax 818-784-2411

PAUL L. GABBERT (CSBN 74430)
2530 Wilshire Boulevard
Second Floor
Santa Monica, CA 90403
plgabbert@aol.com
Telephone: 424 272-9575
Facsimile: 310 829-2148

Devin J. Burstein (CSBN 255389)
Warren & Burstein
501 West Broadway, Suite 240
San Diego, California 92101
db@wabulaw.com
Telephone: (619) 234-4433

Attorneys for Plaintiffs Does 1-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DOES 1-6, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, and MERRICK GARLAND, in his official capacity as United States Attorney General,<br><br>Defendants. | No.: 2:21-cv-03254-MCS-SK<br><br>**REPLY TO DEFENDANTS' OPPOSITION TO EX PARTE APPLICATION FOR A RESTRAINING ORDER; DECLARATIONS** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................ ii

**I.    INTRODUCTION**............................................... 1

**II.   DISCUSSION**.................................................. 1

1.  **The Court should allow Plaintiffs and class members to claim their property from the FBI using a pseudonym..**................ 2

2.  **The Court should enjoin the Defendants from requiring class members to provide their personal information as a condition to claiming their property**.................................... 5

3.  **The government's purported concern about false claims is nonsensical**............................................... 7

4.  **The Court should order the government not to alter, dispose of or destroy the boxes, the locks, the palm and retinal scanners, any U.S. currency found in the boxes, and any other evidence seized in the searches**................................................. 8

5.  **The Court should enjoin the government from conducting further investigation of the class member box holders' property pending a determination by the Court of the legality of its "inventory search."** 9

6.  **Since the government used the warrant to justify searching the class members' boxes and seizing their property, the Court should order Defendants to produce copies of the affidavit, warrant and inventories of the class members' property**..................... 11

7.  **The government waived opposition to Plaintiffs' request to suspend deadlines and stay discovery in judicial civil forfeiture cases resulting from the inventory searches**......................... 12

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Dennis v. United States*, 339 U.S. 162, 168 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Florida v. Wells*, 495 U.S. 1, 4, 8 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990) . . . . . . . . . 9

*Garcia-Aguilar v. United States Dist. Court*, 535 F.3d 1021, 1023

    (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . 6

*Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150,

    1159 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Grey*, 959 F.3d 1166, 1183-85 (9th Cir. 2020). . . . . . . . . . . . . . 6, 10

*United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.), *cert. denied*, 447 U.S. 925,

    100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. U.S. Currency*, $30,060.00, 39 F.3d 1039, 1042 (9th Cir. 1994). . . . 7

*United States v. Weber*, 915 F.2d 1282, 1285 (9th Cir. 1990). . . . . . . . . . . . . . . . . 12

*U.S. v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 9

*U.S. v. Hyde*, 208 F.Supp.2d 1052, 1054–1055 (N.D. Cal. 2002). . . . . . . . . . . . . . . 7

## FEDERAL STATUTES AND RULES

Fed.R.Civ.P. 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fifth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fourth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

18 U.S.C. §983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 C.F.R. §14.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ii

# I.

## INTRODUCTION

The government's opposition shows a striking disregard for the Fourth and Fifth Amendment rights of the hundreds of people whose private property it has searched without a shred of evidence against them.  Indeed, this case provides a troubling reminder that "the ten most terrifying words in the English language may be, 'I'm from the government and I'm here to help you.'"  *Garcia-Aguilar v. United States Dist. Court*, 535 F.3d 1021, 1023 (9th Cir. 2008).

The government has this entire matter, and the applicable Constitutional protections, backwards.  The Fourth Amendment says the government cannot take its citizens' personal property without a warrant and particularized probable cause.[1]  The government asks this Court to endorse the opposite: it can take the property en masse and then place the burden on the individuals to prove the lawfulness of their property. The government cannot violate citizens' Fourth Amendment rights and then require a waiver of their Fifth Amendment rights to cure the government's constitutional violation, and the Government cites no authority to support such a punitive and absurd result.

Plaintiffs were mere customers of a private bank vault facility that has been indicted for money laundering.  The government has no evidence or probable cause to suggest Plaintiffs engaged in any illegal activities with USPV, and does not contend otherwise in its Opposition.  Rather, it contends that it executed a search warrant against USPV and in the process seized and searched the private boxes Plaintiffs

---

[1] Although personal property held in private safe deposit boxes is the subject of this case, all property rights, including real and intellectual property, are sacrosanct pursuant to the Fifth Amendment requirement that no citizen be deprived of their property without due process of law.

rented from USPV.  The government now suggests that perhaps Plaintiffs rented these boxes to hide unlawfully obtained currency and thus must prove otherwise. This is no different than the government indicting a UPS store or a bank for facilitating money laundering and then seizing the contents of customer boxes and forcing those customers to explain themselves to the government.

This is constitutionally abhorrent.  It is nothing other than an impermissible presumption of guilt.  "[T]he trial court must be zealous to protect the rights of [the individuals before it]." *Dennis v. United States*, 339 U.S. 162, 168 (1950).   Here, that zealous protection begins with granting the TRO.

## II.

## DISCUSSION

The government's opposition to the Doe Plaintiffs' application for a TRO, however, not only is unsupported either by facts or citations to persuasive legal authority, it also is full of misstatements and gaping holes.[2]  Nevertheless, the Court should be able to see through this smokescreen to confirm the requested TRO is well taken.

1. **The Court should allow Plaintiffs and class members to claim their property from the FBI using a pseudonym.[3]**  The government claims there is no

---

[2]  The Opposition opened with a misrepresentation: "[Plaintiffs] acknowledge... the property in the safety deposit boxes has merely been moved from one storage facility (USPV) to another (a secure warehouse controlled by the FBI), and that no searches of the boxes are now occurring or are planned, except based on warrants for individual boxes."  ECF 16, Opposition, at 1:13-19.  This statement by the government is not incorrect.  Plaintiffs have no knowledge whatsoever as to the location of their property, or whether the government is continuing to search their boxes, and did not "acknowledge" such a thing in their moving papers.

[3]  Significantly, the government did not challenge Plaintiffs' standing to bring this action and the requested TRO.  Thus, its reference to another judge's denial of a TRO (Opposition at 1:19-22) is inapposite, since that Court's decision was based on the Plaintiff's lack of standing and never reached the merits of the TRO.

cause for plaintiff anonymity or a special master.  But it disproves these points convincingly.  According to the Opposition, "Drug-detecting dogs alerted to all the cash plaintiffs' claim, except for one box in which the cash was vacuum-packed, a technique drug traffickers employ to foil drug-sniffing dogs." *Id.* at 3:20-22.  It later contends that pseudonyms would prejudice its ability to determine if items in boxes were "lawfully possessed," and then admits "the government will conduct criminal investigations where it has reason to believe that serious offenses have been committed[.]" Id. at 15:28-16:3;16:6-9.  Taken together, this is an admission that the government **will** criminally investigate virtually everyone.  This is exactly why anonymity and a special master are required.  They are the only ways to preserve class members' Fifth Amendment rights.

The government contradicts itself.  Out of one side of its mouth it pretends that it merely was conducting an "inventory search" to protect innocent owners' property, but out of the other it admits that it is conducting "criminal investigations that could involve hundreds of persons." *Id.* at 4:18-19.  Contrary to the argument on p. 4 of the Opposition, Plaintiffs are not seeking to enjoin the government from conducting any criminal investigations.

The government is free to continue conducting any criminal investigations of any person with whatever information it may have.  The salient issue, however, is whether Plaintiffs are required to supply the government with information to aid in that investigation in exchange for remedying their unlawful searches and seizures. The answer is no.

It is telling that the representative Plaintiffs' boxes contained only cash and some precious metals and jewelry – no drugs or guns.  That means the government's recitation of what other boxes contained is irrelevant and makes it less likely that

Plaintiffs should be criminally investigated, unless the government is arguing that cash alone is evidence of criminality. If that is its position, then every single box holder likely will be investigated solely because they rented a safe deposit box from a place where the indicted business itself may have been engaged in criminality unrelated to Plaintiffs' stored property.

The government's broad stroke allegations about Plaintiffs and the class members belies its true motives and intentions: "To be sure, some of the customers of USPV are honest citizens to whom the government wishes to return their property. But the majority of the box holders are criminals who used USPV's anonymity to hide their ill-gotten wealth." Opposition, 17:9-12. It is needless to say that a class member's mere rental of a safe deposit box without knowledge of the rental company's alleged criminal conduct does not make Plaintiffs "criminals." Such a pejorative, conclusory statement is unbecoming of the Department of Justice

Missing the point of the Fifth Amendment entirely, the government argued that "a claimant only has to fear a criminal prosecution if, in fact, he is a criminal...." Opposition, at 16:9-10. If the government has evidence that the Plaintiffs and class members engaged in drug deals or money laundering with the USPV people that is part of the pending indictment, it can investigate and prosecute them. But the government does not need the box contents to do that, and the class members should not be forced to help the government in its investigation.[4] Accordingly, the Court should allow Plaintiffs and the class members to seek return of their property using a pseudonym.

---

[4] The government's tactic is akin to arguing that it is entitled to go into a bank and seize all the monies and then ask the account holders to demonstrate to the government how they came about getting their monies on deposit.

4

2.      **The Court should enjoin the Defendants from requiring class members to provide their personal information as a condition to claiming their property.**  Contrary to the Opposition's argument, Plaintiffs do not "misunderstand" the FBI's so-called "claims procedure."  The government argued that this alleged non-compulsory "claims procedure" is "not typically provided when the government seizes property during the execution of a warrant," but the government is graciously "providing box holders an additional method to claim their property . . . that has nothing to do with asset forfeiture."  Opposition, 11:1-5.

However, the government cited no statute, rule or even a Department of Justice policy that provides authority to conduct this purported "claims procedure."  It says the FBI posted a notice that "invited, but did not compel" box holders to contact the FBI to make a claim to the property.  Opposition, 10:10-14. However, no such claim procedure exists under federal law, and the Opposition failed to cite any legal authority that supports or authorizes the FBI's apparently informal purported claim procedure, even though Congress has created such procedures for citizens to challenge the government's conduct in other matters.  *See.,e.g.*, 28 C.F.R. §14.2 (torts administrative claim procedure).

Instead, as Plaintiffs argued in their TRO application, the government's intention all along was to seize box holders' property for civil forfeiture.  Contesting civil forfeiture, however, is an onerous procedure that forces property owners to wait up to 90 days (or longer) to be served with notice of the seizure of their property (including simply publishing notice on a government website), then allows property owners only 30 days to file an administrative claim, then gives the government another 90 days to file a judicial civil forfeiture complaint, and then another 120 days to serve the complaint, but allows property owners only 30 days after the government

5

files a judicial forfeiture complaint to find and retain an attorney to file a claim to contest the potential permanent loss of their property. *See*, ECF 6, Plaintiffs' TRO Application, pp. 12-13; see also 18 U.S.C. §983.

This lengthy judicial procedure – which could take more than a year – does not even include the time it takes for the Court to file a scheduling order, or for discovery, motion practice, and a trial. Surely, this deprivation of Plaintiffs' use of their property constitutes an irreparable injury. The government argued that Plaintiffs cannot demonstrate irreparable injury if their property is not returned. Opposition at 9:9-11. The potential permanent loss of their property, however, is by definition irreparable injury. *See, e.g., Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011)(It is well-established that the loss of an interest in real property constitutes an irreparable injury.").[5]

Plaintiffs actually understand the government's motives very well. This is the crux of the matter: the government offers no means for plaintiff or class members to obtain their personal property without opening themselves up to a criminal investigation, in violation of the Fourth and Fifth Amendment. *United States v. Grey*, 959 F.3d 1166, 1183-85 (9th Cir. 2020)(if the person challenging the execution of the

_____

[5] The government failed to distinguish *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), which held that suspected undocumented immigrants would suffer an irreparable injury based on the real possibility that they could be detained again. Here, there is a deprivation of rights every day that Plaintiffs' money stays seized. Accordingly, the Court could order the government to photograph/make copies of the currency and other property and then return it to the owners while the case is pending. This is precisely what took place in *Ramsden v. United States*, 2 F. 3d 322 (9th Cir. 1993). There, US Marshals arrested Ramsden in his hotel and then seized documents from his hotel room without a search warrant. Ramsden moved pre-indictment for return of the documents pursuant to Rule 41(e). The government claimed it needed the documents for an investigation or prosecution. Ramsden claimed he needed the documents to run his business. The Ninth Circuit held that Ramsden could retain the original documents but afford copies to the Government. Likewise, here the government has no need to retain Plaintiffs' money. It can make copies of the currency and, if appropriate, use that information in its further investigations.

warrant shows that the officers' primary purpose was to gather evidence in support of an ongoing criminal investigation, the conduct does not satisfy the Fourth Amendment).[6]  Yet again, this is why anonymity and a special master are required instead of forcing class members to identify themselves to the FBI so they can claim their property.[7]

      3.    **The government's purported concern about false claims is nonsensical.**  The government argues that return of property to Plaintiffs may lead to false claims since "there is no way of knowing whether the anonymous plaintiffs actually have a property interest in anything," possession of a key by itself is not conclusive, and in fact keys can be duplicated.  Opposition at 9:19-26.   The government's claims here are patently absurd.

    USPV's use of palm prints and retinal scans eliminates any supposed government concern about false claims.  On occasions when box holders forgot their box numbers, the USPV representative would instruct them to provide their palm print and an eye scan, which allowed USPV to identify the box numbers through its database, so the box holders  could use their keys to access the contents in their

---

[6] For example, the government had no business using dogs to smell currency in the boxes if the sole purpose of the inventory search was merely to safeguard box holders' property.  *See, e.g., United States v. U.S. Currency*, $30,060.00, 39 F.3d 1039, 1042 (9th Cir. 1994)("this court has never held that the mere fact of a narcotics dog's positive alert to a large sum of money constitutes sufficient evidence to establish probable cause for forfeiture").  The use of a drug-sniffing dog would not be part of a legitimate inventory search that had already been completed. Even if officers saw the money in"plain view" during the inventory search, they were still exploiting it for an investigatory purpose.

[7] Similarly, requiring a defendant to fill out a financial affidavit may furnish a link in the chain of evidence needed to prosecute a claimant for a federal crime. *U.S. v. Hyde*, 208 F.Supp.2d 1052, 1054–1055 (N.D. Cal. 2002), citing *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980).  It is enough if the responses would merely provide a lead or clue to evidence having a tendency to incriminate. *Neff*, 615 F.2d at 1239.

boxes.  *See* Supplemental Declarations of Does 5 and 6, ¶4.  Thus, a class member who holds a key alone can verify his identity – assuming the FBI seized and took custody of the palm and retinal scanners.

Apparently it did.  The one instance cited in the Opposition, at 3:24-27, where the FBI says it successfully foiled an attempted false claim **actually weakens the government's argument**, since the FBI obviously had the ability to vet that claimant, perhaps because it co-opted USPV's verification system.  US Private Vaults apparently had no problem using keys and biometrics to verify ownership, so a special master similarly can use USPV's equipment to verify class members' identities, if necessary.  In most other cases, like the Plaintiff class representatives, property owners will know their box number, and thus can establish their claim to the contents of their particular box with just their key.

Simply put, any problems in demonstrating ownership can be more than capably monitored by the Court and/or a Special Master, and not by the government, which created this problem in the first place.

4.     **The Court should order the government not to alter, dispose of or destroy the boxes, the locks, the palm and retinal scanners, any U.S. currency found in the boxes, and any other evidence seized in the searches**.  The government says the FBI has "no plans" to dispose of or alter any of the items in its custody.  *Id.* at 14-16.  Although the government may not at the moment have such specific "plans," things change.  Nevertheless, the government says its so-called "inventory search" has been completed.  Opposition, 11:19-20.  This is an admission that it will suffer no prejudice from the Court granting the TRO to preserve the

current status quo.[8]

5.    **The Court should enjoin the government from conducting further investigation of the class member box holders' property pending a determination by the Court of the legality of its "inventory search."**    "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *U.S. v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012), citing *Florida v. Wells*, 495 U.S. 1, 4, 8 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990)(an inventory search is reasonable under the Fourth Amendment only if it is done in accordance with standard procedures that limit the discretion of the police).  As its title suggests, a purely "inventory search" presumes there was no warrant to search the container holding the inventory.

The warrant to search USPV did not allow for searches of class members' individual boxes.  "The government obtained a sealed criminal seizure warrant for, among other things, the **nests** of safe deposit boxes located at USPV." Opposition., 2:26-28 (emphasis added).  What the government has not made clear to this Court, and perhaps to the magistrate judge who issued the seizure warrant, is that a "nest" of safe deposit boxes consists only of a wall of boxes.[9]

Although the warrant may have allowed the government to seize from USPV the wall that held the individual locked boxes, the government admits that there was not probable cause to search each individual privately-held safe deposit box

---

[8]   Regarding Plaintiffs' spoliation request, the government faults plaintiffs for taking three weeks to seek a TRO.  *Id.* at 7:17-18.  Class actions are complex, and involve vetting and completing representation agreements with class plaintiffs and determining whether the Fed.R.Civ.P. 23 elements exist.  Investigating, researching, preparing and filing a class action and TRO request in three weeks is very fast.

[9]   *See, e.g.*, https://securitysafeusa.com/burglary-and-fire/safe-deposit-box-nests-preowned-variety-of-sizes.

9

belonging to each Doe Plaintiff or class member, but only to "inventory" the property. Opposition, ECF 16 (p. 22), Declaration of Andrew Brown, ¶3 ("The affidavit in support of the warrant and the warrant itself discussed the agents inventorying the property contained in the individual safe deposit boxes within the nests, in accordance with the written inventory policies of the seizing agency, here the FBI. They also discussed looking for contact information for the box holders to notify them of the seizure so that they could seek the return of their property.").

Since there was not probable cause to search the boxes, the government chose the most onerous procedure in its effort to purportedly "protect" class members' property – force open and dig through the individual boxes.  The government did not have to generally rummage through the boxes to try and discover incriminating evidence, but instead easily could have **immediately sealed each box without looking inside, and held the boxes for safekeeping until further order of the magistrate judge or this Court, who is handling the related criminal case**.

As shown above, the Opposition failed to produce a copy of any such inventory policy, particularly a clearly-stated one that allows the government to open and search a safe deposit box without probable cause and seize the personal property contained in each box.  *Wells*, 495 U.S. at 4–5 (where law enforcement agency had no policy with respect to the opening of closed containers encountered during *an inventory search, the search was not sufficiently regulated to satisfy the Fourth Amendment). Tellingly, the government also did not attach to its opposition a copy of the warrant affidavit, the warrant or the return, even under seal for the Court to see.

The government's alleged "inventory search" clearly was a pretext to conduct a search of the individual boxes.  *Grey*, 959 F.3d at 1183-85 (Fourth Amendment's reasonable requirement violated where the "primary purpose" was gathering evidence

for a criminal investigation).  Nowhere in its Opposition did it state that it had particularized probable cause to search any of the individual boxes.[10]  The government admits it obtained a seizure warrant for the nest of boxes, but nevertheless it then searched the contents of every single box.

Although the Opposition stated only that "no further examination of their contents will occur," *Id.* at 3:5-8, its criminal investigation relating to the contents clearly is continuing.  By "no further examination", the government is politely stating that no further Fourth Amendment violation will occur, however the poisonous tree has already been planted by the initial pretextual and warrantless search. Like its other tactics, the government's semantics are unavailing.  Accordingly, the Court should enjoin the government from conducting further investigation of the class members' property the government "inventoried" pending a determination by the Court as to the legality of its "inventory" search.

6.     **Since the government used the warrant to justify searching the class members' boxes and seizing their property, the Court should order Defendants to produce copies of the affidavit, warrant and inventories of the class members' property.**  The government steadfastly maintains that plaintiffs and class members are not entitled even to see the warrant.  In other words, it uses the warrant as both a sword (to justify its actions) and a shield (to protect that action from adversarial testing).  In the meantime, it is plaintiffs and class members who are continuing to be

---

[10]  The government's true intentions are revealed in its FBI agent's declaration: "No criminal investigation is undertaken absent **suspicion**. So boxes containing items normally stored in a safety deposit box – important papers and jewelry, for example – are not criminally investigated. Conversely, boxes containing **suspiciously** large sums of cash to which drug detecting dogs alert will be." Opposition, ECF 24, ¶5 (emphasis added).  Thus, mere suspicion of a crime is the government's standard for searching property owners' safe deposit boxes and seizing their property.

1    deprived of their property with no showing of particularized probable cause.

2    This turns the Constitution on its head.  The founders would recognize the

3    government's conduct here as exactly the type of general rummaging the Fourth

4    Amendment was designed to prevent.  *See United States v. Weber*, 915 F.2d 1282,

5    1285 (9th Cir. 1990) (the Fourth Amendment prohibits "'a general, exploratory

6    rummaging in a persons belongings'").

7    Moreover, the facts the government voluntarily disclosed as part of its

8    Opposition no longer support the affidavit and warrant staying sealed. Accordingly,

9    the Court should order the government to provide Plaintiffs with copies of the

10   warrant, affidavit and inventories of the property seized from the safe deposit boxes

11   of Plaintiffs and the class members.

12

13   **7.    The government waived opposition to Plaintiffs' request to suspend**

14   **deadlines and stay discovery in judicial civil forfeiture cases resulting from the**

15   **inventory searches.**   Plaintiffs also requested 1) a suspension of the claim filing

16   deadlines regarding any judicial civil forfeiture case the government may file against

17   property taken from their USPV safe deposit boxes, and 2) a stay of discovery in any

18   such judicial forfeiture case – until the Court determines the constitutionality of the

19   box searches and seizures.  Since the government made no argument opposing this

20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28

12

request, then the Court should find the government waived any opposition and grant
the requested TRO as to the filing deadlines and discovery stay.

Dated: April 18, 2021                Respectfully submitted,

                                     LAW OFFICE OF ERIC HONIG
                                     A Professional Law Corporation

                                     RICHARD M. BARNETT

                                     ERIC D. SHEVIN

                                     CHERNIS LAW GROUP P.C.

                                     PAUL L. GABBERT


                                     /s/   Eric Honig
                                     _____
                                     ERIC HONIG
                                     Attorneys for  Plaintiffs and the Class

13