UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03254-RGK-MAR | Date | April 22, 2021 |
|---|---|---|---|
| Title | *Does 1 et al v. United States of America et al* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:**  (IN CHAMBERS) Order Re: Plaintiffs' *Ex Parte* Application for Temporary Restraining Order [DE 6]

### I.  INTRODUCTION

On April 15, 2021, six Plaintiffs proceeding under the pseudonyms Doe 1, Doe 2, Doe 3, Doe 4, Doe 5, and Doe 6 ("Plaintiffs")[1] filed a complaint against the United States of America and Merrick Garland in his official capacity as U.S. Attorney General (together, "the Government"). Plaintiffs allege claims for Return of Property pursuant to Federal Rule of Criminal Procedure Rule 41(g) and for violation of Plaintiffs' rights under the Fourth and Fifth Amendments of the Constitution.

Plaintiffs' claims arise from the Government's seizure and search of Plaintiffs' personal property located in six safe deposit boxes on the premises of non-party US Private Vaults. Plaintiffs seek to represent a class of "All persons and/or entities who maintained a safe deposit box at US Private Vaults, located at 9182 West Olympic Boulevard, Beverly Hills, CA 90212 during the month of March 2021." (Compl. ¶ 14, ECF No. 1).

Presently before the Court is Plaintiffs' *Ex Parte* Application for Temporary Restraining Order, ("TRO Application") (ECF No. 6), whereby Plaintiffs request an order enjoining the Government from taking various actions with respect to property seized from US Private Vaults, among other relief. For the reasons that follow, the Court **DENIES** Plaintiffs' TRO Application.

---

[1] Plaintiffs filed this suit pseudonymously to protect themselves from the risk of criminal prosecution, and from injury, harassment, retaliation, and embarrassment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03254-RGK-MAR | Date | April 22, 2021 |
|---|---|---|---|
| Title | *Does 1 et al v. United States of America et al* | | |

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following factual background is drawn from Plaintiffs' complaint:

Since 2011, US Private Vaults ("USPV") has operated a facility offering private safe deposit boxes. USPV houses between 600 and 1000 safe deposit boxes and rents them to hundreds of customers. Prior to and during March 2021, Plaintiffs and the putative class members each leased and maintained one or more boxes at USPV in which they kept non-contraband property, including U.S. currency, gold, and jewelry.[2]

USPV's safe deposit boxes differ from those of a typical bank. USPV does not keep a key to any rented boxes, which means that the only person with the ability to open the box is the renter or the renter's designee. In addition, USPV provides other privacy and security features. For instance, boxholders are identified by encrypted biometric information; USPV's premises are under 24/7 video monitoring by a security company; and USPV maintains motion detectors, heat sensors, and other sophisticated security measures to detect intruders after regular business hours. USPV also offers insurance for its safe deposit boxes, up to $500,000 per box.

USPV's business attracted the Government's attention. A grand jury indicted USPV for conspiring with its customers to launder money, distribute drugs, and structure financial transactions to avoid currency reporting requirements. (Defs.' Opp. to Pls.' TRO Application at 1, ECF No. 16). From March 22, 2021 through March 26, 2021, federal law enforcement agents searched USPV and seized every safe deposit box in the facility. The Government maintains that it searched the contents of each box pursuant to a sealed criminal seizure warrant ("the warrant").[3] (TRO Application at 2). When inventorying the boxes, the Government found fentanyl, OxyContin, firearms, and stacks of $100 bills to which drug dogs alerted. (Defs.' Opp. to Pl.'s TRO Application at 17).

Plaintiffs maintain that their boxes do not contain any contraband. Yet the Government refuses to return Plaintiffs' property unless they identify themselves. To reclaim their property, the Government

---

[2] Doe 1 maintained Box Nos. 5006 and 4105; Doe 2 maintained Box Nos. 5006 and 4105; Doe 3 maintained Box No. 6710; Doe 4 maintained Box No. 4300; Doe 5 maintained Box No. 400, and; Doe 6 maintained Box No. 40.

[3] On April 20, 2021, five days after Plaintiffs filed their Complaint and TRO Application, the warrant was unsealed by order of United States Magistrate Judge Alexander F. MacKinnon. (*See* Pls.' Supp. Mem. ISO of TRO Application, ECF No. 20). Plaintiffs now have access to the warrant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03254-RGK-MAR | Date | April 22, 2021 |
|---|---|---|---|
| Title | *Does 1 et al v. United States of America et al* | | |

has informed box holders that they must visit www.forms.fbi.gov/uspvclaims and submit a form to the FBI containing their full name, address, e-mail address, and telephone number. (TRO Application at 3). Plaintiffs allege that the Government intends to criminally investigate every box holder that comes forward to claim his or her property. Only if Plaintiffs can convince the FBI that they legally obtained their property will the Government return it to them. Thus, for Plaintiffs to vindicate their Fourth Amendment right to be free from unreasonable searches and seizures, they must forfeit their Fifth Amendment right against self-incrimination

### III.  JUDICIAL STANDARD

While a preliminary injunction is intended to preserve the status quo pending a judgment on the merits, a TRO is intended to preserve the status quo only until a preliminary injunction hearing can be held. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). "Consequently, [TROs] are of limited duration, not—like preliminary injunctions—of indefinite duration." *Id.*

The standard for a TRO is "substantially identical" to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain a TRO or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The court may also apply a sliding scale test, whereby the elements of the *Winter* test are balanced "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

### IV.  DISCUSSION

The six Doe Plaintiffs request that the Court enter a TRO granting Plaintiffs and the putative class members with seven forms of injunctive relief. As an initial matter, the Court denies Plaintiffs' application for classwide injunctive relief. The scope of an injunctive "remedy must be no broader and no narrower than necessary to redress the injury shown by the [moving party]." *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). As no class has been certified, the Court limits its analysis of whether Plaintiffs are entitled to a TRO to the Plaintiffs' assertion of their individual rights. The Court considers the various forms of relief that Plaintiffs seek in turn, and for the reasons below, denies the TRO Application in its entirety.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03254-RGK-MAR | Date | April 22, 2021 |
|---|---|---|---|
| Title | *Does 1 et al v. United States of America et al* | | |

### A. Plaintiffs' Request for an Order Requiring the Government to Produce the Search Warrant and Inventory of Seized Property

Plaintiffs assert that they will suffer irreparable harm if the Court does not "order the government to produce a copy of the warrant, and all inventories taken of [] their individual boxes[.]" (*See* TRO Application at 7). Plaintiffs now have a copy of the warrant, so their request for the warrant is moot.

As for the box inventories, Plaintiffs assert that they have a right to obtain the Government's inventory of the property seized from USPV pursuant to Fed. R. Crim. P. 41(f)(1)(B) and (D). This aspect of Plaintiffs' TRO Application is also denied. Every boxholder has knowledge of the items they kept in their respective boxes—accordingly, Plaintiffs make no showing that they will likely suffer irreparable harm should the Government fail to immediately disclose information they already know.

### B. Plaintiffs' Request for an Order Enjoining the Government from Conducting Further Investigation of Class Members and Their Property

Next, Plaintiffs request that the Court enjoin the Government from engaging in "1) any additional search of Plaintiffs' . . . boxes, and 2) using any information already learned, until the Court can decide the merits of [Plaintiffs'] Fourth Amendment claim." (TRO Application at 8). In their Reply, however, Plaintiffs abandon the second aspect of this request. (*See* Pls.' Reply at 3, ECF No. 17) ("Plaintiffs are not seeking to enjoin the government from conducting any criminal investigations."). But Plaintiffs maintain that the Government should be enjoined from further searching Plaintiffs' boxes, "pending a determination by the Court as to the legality of [the Government's] 'inventory' search.'" (*Id.* at 11).

Plaintiffs' Supplemental Memorandum in Support of Their TRO Application, filed on April 20, 2021, further clarifies the scope of their TRO request. There, Plaintiffs argue that the Government violated their Fourth Amendment rights not by seizing the nests of boxes from USPV, but by searching the boxes in a manner that went beyond the scope of the inventory search permitted by the warrant.

The warrant authorized the seizure of "[t]he nests of safety deposit boxes and keys" from USPV. The warrant did not, however, "authorize a criminal search or seizure of the contents of the safety deposit boxes." (Pls.' Supp. Mem. ISO of TRO Application, App'x). The warrant further states that:

> In seizing the nests of safety deposit boxes, agents shall follow their written inventory policies to protect their agencies and the contents of the boxes. Also in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property[.]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03254-RGK-MAR | Date | April 22, 2021 |
|---|---|---|---|
| Title | *Does 1 et al v. United States of America et al* | | |

(*Id.*) Plaintiffs argue that the Government exceeded the scope of the inventory search authorized by the warrant in two ways: (1) by using "drug dogs in an effort to detect narcotics on the currency it found[,]" and (2) by unpackaging the boxes' contents and counting the money therein. (Pls.' Supp. Mem. ISO TRO Application at 3).

As an initial matter, Plaintiffs have not made the requisite showing of "extraordinary circumstances" that would justify judicial intervention in the executive function of conducting a criminal investigation. *See Olagues v. Russoniello*, 770 F.2d 791, 799 (9th Cir. 1985) ("[O]nly in extraordinary circumstances would we entertain an action to enjoin a prosecutor's investigatory activities."); *see also United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir. 1977) ("[A] court may not exercise its 'supervisory power' in a way which encroaches on the prerogatives of [prosecutors] unless there is a clear basis in fact and law for doing so.").

Further, Plaintiffs have failed to show a likelihood of success on the merits of their claim that the Government exceeded the scope of a permissible inventory search. The Ninth Circuit has found that the use of a drug dog during an inventory search is generally not unreasonable under the Fourth Amendment. *See United States v. Nieto-Rojas*, 470 F. App'x 674, 676 (9th Cir. 2012) (finding that "[a] search of the interior of a vehicle after a drug-sniffing canine ha[d] alerted to the odor of a controlled substance after walking around its exterior [was] not unreasonable under the Fourth Amendment" where the dog alerted to the odor of a controlled substance during the course of an "inventory search"). As to the Government's decision to count the money in the boxes, Plaintiffs cite no authority and raise no argument in support of their assertion that counting money as part of an inventory search violates any "written inventory policies."

  C. **Plaintiffs' Request for an Order Enjoining the Government from Informing Plaintiffs that They Must Provide Personal Information to Reclaim Their Property**

Next, Plaintiffs argue that "[t]he Court should restrain the government from insisting Plaintiffs . . . waive their Fifth Amendment right against self-incrimination to obtain return of their property." (TRO Application at 8–9). The Court denies this request because Plaintiffs have not shown that they are likely to suffer irreparable harm in the absence of such an injunction.

Plaintiffs note that the FBI's claims process requires boxholders to submit their full name, address, e-mail address, and telephone number. To engage in this claims process, Plaintiffs assert, would require them to forfeit their Fifth Amendment right to be free from self-incrimination. But Plaintiffs have another avenue to seek return of their property that does not involve engaging in the FBI's claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03254-RGK-MAR | Date | April 22, 2021 |
|---|---|---|---|
| Title | *Does 1 et al v. United States of America et al* | | |

process: they may bring a claim for return of property under Fed. R. Crim. P. Rule 41(g)—as they have done here. Accordingly, Plaintiffs will not suffer irreparable harm if their requested TRO does not issue.

### D. Plaintiffs' Request to Proceed Anonymously

In their TRO Application, the six Doe Plaintiffs request that the Court allow them to file claims for return of their property using a pseudonym. It is unclear whether Plaintiffs seek permission to file a claim for return of their property with the FBI under a pseudonym, or permission to pursue their legal claims in this case under a pseudonym. Either way, Plaintiffs have not shown that a TRO regarding their use of pseudonyms is warranted.

To the extent Plaintiffs seek an order instructing the FBI as to how it may process claims for return of property, as stated in subsection B, Plaintiffs have not made the requisite showing of "extraordinary circumstances" to justify judicial intervention in this executive function. And to the extent Plaintiffs wish to continue to prosecute this case anonymously, this issue is premature as the Government has not filed a motion to require Plaintiffs to identify themselves.

### E. Plaintiffs' Request for a TRO Related to Judicial Civil Forfeiture Proceedings

In their TRO Application, Plaintiffs also request an order suspending the "claim filing deadlines regarding any judicial civil forfeiture case the government may file against property taken from their USPV safe deposit boxes, and 2) . . . stay[ing] . . . discovery in any such judicial forfeiture case – until the Court determines the constitutionality of the box searches and seizures." (Reply at 12). Plaintiffs do not assert that any judicial civil forfeiture case has been filed, nor is the Court aware of any such proceeding. Accordingly, Plaintiffs make no showing that they are likely to be irreparably harmed if the Court declines to issue a TRO concerning deadlines in a hypothetical civil forfeiture case that may never be filed.

### F. Plaintiffs' Request for an Order Enjoining the Government from Destroying Evidence

Finally, Plaintiffs request an order enjoining the Government from "destroying and/or disposing of the safe deposit box nests and individual safe deposit boxes, so as to allow access to the boxes using the box holders' keys issued by USPV – which can help establish their ownership of the personal property therein." (TRO Application at 15). Plaintiffs fail to show that they will likely suffer irreparable harm absent such an order. Plaintiffs have not alleged any facts that would indicate a likelihood that the Government will destroy or dispose of evidence. Further, the law already provides sanctions to address spoliation of evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03254-RGK-MAR | Date | April 22, 2021 |
|---|---|---|---|
| Title | *Does 1 et al v. United States of America et al* | | |

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' TRO Application.

**IT IS SO ORDERED.**

                                                                                       : _____

Initials of Preparer