| | |
|---|---|
| Eric Honig (CSBN 140765)<br>LAW OFFICE OF ERIC HONIG<br>A Professional Law Corporation<br>P.O. Box 10327<br>Marina del Rey, CA 90295<br>erichonig@aol.com<br>Telephone:  (310) 699-8051<br>Fax:  (310) 943-2220 | ERIC D. SHEVIN (CSBN 160103)<br>Shevin Law Group<br>15260 Ventura Boulevard, Suite 1400<br>Sherman Oaks, California  91403<br>eric@shevinlaw.com<br>tel. 818-784-2700<br>fax 818-784-2411 |
| RICHARD M. BARNETT (CSBN 65132)<br>A Professional Law Corporation<br>105 West F Street, 4th Floor<br>San Diego, CA 92101<br>richardmbarnett@gmail.com<br>Telephone: (6l9) 231-1182<br>Facsimile: (619) 233-3221 | PAUL L. GABBERT (CSBN 74430)<br>2530 Wilshire Boulevard<br>Second Floor<br>Santa Monica, CA 90403<br>plgabbert@aol.com<br>Telephone: 424 272-9575<br>Facsimile: 310 829-2148 |
| Michael S. Chernis  (CSBN 259319)<br>CHERNIS LAW GROUP P.C.<br>Santa Monica Water Garden<br>2425 Olympic Blvd.<br>Suite 4000-W<br>Santa Monica, CA 90404<br>Michael@chernislaw.com<br>Tel: (310) 566-4388<br>Fax: (310) 382-2541 | Devin J. Burstein (CSBN 255389)<br>Warren & Burstein<br>501 West Broadway, Suite 240<br>San Diego, California 92101<br>db@wabulaw.com<br>Telephone: (619) 234-4433 |

Attorneys for Plaintiffs Does 1-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DOES 1-6, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA, and MERRICK GARLAND, in his official capacity as United States Attorney General,<br><br>        Defendants. | No.: 2:21-cv-03254-RGK-MAR<br><br>**REPLY TO GOVERNMENT'S OPPOSITON TO TEMPORARY RESTRAINING ORDER REGARDING THE FILING OF ADMINISTRATIVE CLAIMS** |

Plaintiffs hereby reply to the Defendant government's opposition to their request for a TRO ordering the FBI not to reject US Private Vault safe deposit box holders' administrative forfeiture claims if they use a pseudonym, as follows:

1. The Defendant government's promised rejection of pseudonymous administrative forfeiture claims violates the Fifth Amendment to the U.S. Constitution, because the government's conduct thus deprives the box holders' property without Due Process of law. If the FBI goes ahead and rejects these claims, hundreds of property owners will be forced to return to the district court after the fact to file an action seeking equitable relief. *See* ¶7, *infra*.

2. The government's opposition almost entirely missed the point of the Plaintiffs' requested order for simple, limited relief. It is totally irrelevant what can or could or might occur in judicial forfeiture proceedings, an argument the government kept repeating throughout its opposition. *See, e.g.*, ECF 27, pp. 10-12 It also is irrelevant to the administrative forfeiture proceedings whether forfeiture claimants will be able to remain anonymous in any judicial forfeiture proceedings. That issue is neither raised in the relief requested for the TRO nor ripe for consideration.

3. In that vein, the government has initiated only **administrativ**e forfeiture proceedings at this time. To Plaintiffs' knowledge, no judicial forfeiture proceedings have yet been filed against any property seized from USPV boxes. Thus, the government's argument regarding judicial standing also is completely irrelevant. *Se*e, ECF 27, pp. 11-16. Standing is not an issue in administrative proceedings, and Plaintiffs have not requested anonymity in judicial proceedings for this TRO.

4. Contrary to the government's opposition, the Court did not rule on Plaintiff's prior TRO request for anonymity in the **administrative** forfeiture proceedings based on the Fifth Amendment. In its opposition to that prior motion, the government

1

essentially denied such proceedings were contemplated. See ECF 16, 11:4-13 ("Further, the current procedure **has nothing to do with asset forfeiture**, but Plaintiffs have blurred the distinction between the claims procedure and asset forfeiture. While particular box items could be the subject of later asset forfeiture proceedings, **it is equally the case that items within the boxes may never be the subject of any asset forfeiture proceedings**. Put simply, the current claims procedure involves all items within a box (including, for example, paperwork) **while asset forfeiture does not involve such items and has not yet even commenced**.")(emphasis added).

5. In its Order denying the other TRO, the Court said it would not intervene in the executive function of conducting a **criminal** investigation. ECF, p. 5. But Plaintiffs are not asking the Court to intervene in a criminal investigation. Here, the government has finished its **forfeiture** investigation and has now decided it has probable cause to seek forfeiture of Plaintiffs' property. *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1169 (9th Cir.2008)(pursuant to 19 U.S.C. §1615, the government must show that probable cause existed when it institutes a forfeiture action); *U.S. v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 948–949 (9th Cir. 2010)(same).

Also, in response to Plaintiffs' Fifth Amendment self-incrimination argument, the Court in its denial of that TRO said Plaintiffs "have another avenue to seek return of their property that does not involve engaging in the FBI's claims process: they may bring a claim for return of property under Fed. R. Crim. P. 41(g)...." ECF 23, pp. 5-6. However, since the FBI has now initiated administrative proceedings, that remedy is no longer available to Plaintiffs. *Braddy v. Drug Enforcement Agency*, 2018 WL 1870402, at *3 (C.D. Cal., Jan. 31, 2018); *United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988). Thus, Plaintiffs agree with the government's opposition that once the FBI initiates an administrative proceeding, a Rule 41(g) motion can not be used

2

to seek return of property. ECF 27, p. 6. But Plaintiffs are not seeking relief under Rule 41.

6. The remedy offered in administrative forfeiture proceedings is not adequate if the FBI will not accept pseudonymous claims, since it would violate property owners' Fifth Amendment rights of due process and against self-incrimination. For that reason, the federal courts have universally upheld jurisdiction to review whether an administrative forfeiture proceeding satisfied statutory and due process requirements. *See* ECF 26, p. 3. Therefore, it is of no moment that the cases Plaintiffs cited involved only post-judgment appellant challenges to Constitutional violations ( as the government argued in section III.A of its opposition). Should the Court allow Constitutional violations to occur now so that Plaintiffs must return to the district court after the fact to validate their rights and reverse the irreparable harm caused by the improper forfeiture of their property?

7. The government's argument that Plaintiffs can challenge the government's Fourth Amendment violation in a judicial forfeiture case (ECF 27, p. 6) also is irrelevant, because Plaintiff's TRO request pertains only to the FBI's administrative forfeiture proceedings – and does not raise any Fourth Amendment claim. The FBI's administrative proceeding, on the other hand, does not protect and will violate Fifth Amendment rights.[1]

Specifically, identification of a box holder's name, where the government already has alleged that only a criminal would have rented a box at USPV, that a drug dog has alerted on the currency in his box, and it is seeking to forfeit that money because of this

---

[1] The government's attempt to distinguish the Constitutional rights of factory workers in the *Advanced Textile* case with the safe deposit workers is nonsense on its face. ECF 27, p. 10. All persons are entitled to protection under the Fifth Amendment, rich or poor.

3

alleged drug connection – and thus a potential violation of federal criminal controlled substances statutes – indisputably places the box holder at the immediate risk of criminal prosecution if he is forced to identify himself to protect his property interests. Thus, Plaintiffs are not gratuitously alleging that they may violate the law; the government already asserted through its forfeiture notice that it has probable cause that the currency is connected to a violation of federal criminal law.

8. Most important, contrary to the government's argument, neither 18 USC §983, nor 28 C.F.R. §8.10, nor the government's weblink, nor the FBI's notice require a claimant to provide his **given** name. ECF 27, pp. 6-7. The **plain meaning of the statutes and regulations** does not include such a requirement. Thus, to "identify the claimant" under §8.10, a claim need only identify the claimant in any way he wishes, e.g., "John Doe (a pseudonym), owner of Box #400," which is all that is necessary in these administrative proceedings. This is sufficient to trigger the government's statutory requirement to file a judicial complaint within 90 days (since it already made the decision to seek forfeiture) or return the seized property.

9. As the Court stated in its prior Order, the government has not filed a motion in this Class Action challenging Plaintiffs' use of pseudonyms. ECF 23, p. 6. Thus, it cannot complain about this TRO request to use pseudonyms administratively, and its arguments against litigating a **judicial** claim anonymously are irrelevant. *See supra*.

10. The FBI's **administrativ**e forfeiture proceedings are not public court proceedings, so there is no public interest. ECF 27, pp. 10, 18.[2]

---

[2] The government contradicted itself again, ostensibly admitting in its "public interest" argument that the box holders' Fifth Amendment rights **are implicated** if they **are forced to provide their given name** in an administrative claim to protect their property: "The inventory of the contents of the USPV boxes revealed, among other items, firearms, illegal drugs, and stacks of $100 bills to which drug-detecting dogs alerted. It is not in the public interest to allow plaintiffs to anonymously request the

4

11. The government's statement that it knows the identity of three of the Plaintiff box holders (ECF 27, p. 14) once again contradicts its complaints about a need to know those box holders' identities. The government's entire opposition thus borders on the frivolous.

12. As made clear in Plaintiffs' TRO request, the government does not need to know the name of the safe deposit box holder to file an *in rem* judicial forfeiture complaint. Thus, regarding the *U.S. v. $599,600* case cited in Plaintiffs' moving papers, when the government chose to file that **verified** complaint, it did so **relying upon a statement** from the person from whom the currency was seized that he did not know the name of the currency's owner. Thus, the government believed it had probable cause to file **that complaint** while acknowledging facts reflecting that the currency owner's name was anonymous. Therefore, the government's decision to amend the complaint at a later time also is irrelevant.

13. The government already admitted that it is capable of handling alleged "bogus" ownership assertions to boxes, so it need not fear that Plaintiffs or other box holders will file false administrative forfeiture claims. First, according to the FBI, only one such attempt was made, and the FBI handily determined it was fraudulent, presumably with the biometric iris scanner (which the FBI seized) used by USPV to ensure only box holders could enter the vault. See ECF 16, p. 24, ¶6. Second, Plaintiffs already submitted declarations under penalty of perjury as to their ownership of specific boxes. See ECF 6-2, 6-3, 6-4, 6-5, 6-6, and 6-7.

14. The requested TRO will in no way hinder the government from its purported

---

return of items stored at USPV, a company indicted for conspiring to launder money, distribute drugs, and structure financial transactions to avoid currency-reporting requirements." ECF 27, 18:15-21.

5

ongoing efforts to return property to some box holders. The TRO would apply only to those box holders and the property in the boxes **that the government is seeking to forfeit based on an alleged federal criminal violation**, and not to boxes the government is not seeking to forfeit. The government clearly is not attempting to return any of the former property to the box holders, but intends to try to forfeit it to the government. In addition, as stated above, the biometic scanners can determine true ownership of the boxes (if operated by a third party such as a special master, obviously not by the FBI).

Dated: June 4, 2021          Respectfully submitted,

LAW OFFICE OF ERIC HONIG
A Professional Law Corporation
RICHARD M. BARNETT
ERIC D. SHEVIN
CHERNIS LAW GROUP P.C.
PAUL L. GABBERT

/s/ Eric Honig
_____
ERIC HONIG
Attorneys for Plaintiffs and the Class

6