TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture/
General Crimes Sections
    1100/1400/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0102/2569/1785
    Facsimile: (213) 894-6269/0142/0141
    E-mail: Andrew.Brown@usdoj.gov
           Victor.Rodgers@usdoj.gov
           Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA and
MERRICK GARLAND, in his official
capacity as United States Attorney General

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DOES 1-6, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA and MERRICK GARLAND, in his official capacity as United States Attorney General,<br><br>        Defendants. | Case No. 2:21-cv-03254-RGK-MAR<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF JUSTIN PALMERTON, JESSIE MURRAY STEPHEN JOBE AND VICTOR A. RODGERS; [PROPOSED] ORDER GRANTING MOTION LODGED UNDER SEPARATE COVER**<br><br>Date:       September 13, 2021<br>Time:       9:00 a.m.<br>Courtroom: 850, the Honorable<br>                R. Gary Klausner |

1

## NOTICE OF MOTION

2    PLEASE TAKE NOTICE that on September 13, 2021 at 9:00 a.m., or as soon

3    thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary

4    Klausner, United States District Court, Courtroom 850, Roybal Federal Building and

5    U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, defendants

6    United States of America and Merrick Garland, in his official capacity as United States

7    Attorney General (collectively, "the government") will and hereby do move, pursuant to

8    Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss the complaint for lack of subject matter

9    jurisdiction and for failure to state a claim upon which relief can be granted.  This

10   Motion is made following the conference of counsel pursuant to Local Rule 7-3 which

11   took place on July 16, 2021 (see Rodgers Decl. ¶ 2), and is made on the grounds that

12   there is no subject matter jurisdiction over this action and plaintiffs' complaint fails to

13   state a claim upon which relief can be granted.

14    This motion is based upon this notice of motion and motion; the attached

15   memorandum of points and authorities and declarations of Justin Palmerton, Jessie

16   Murray, Stephen Jobe and Victor A. Rodgers; the proposed order granting the motion

17   (lodged under separate cover); all pleadings and papers on file in this action; and such

18   further matters as may be presented at any hearing on this Motion, and matters of which

19   the Court may take notice.

20   Dated: July 26, 2021                     Respectfully submitted,

21                                            TRACY L. WILKISON
                                             Acting United States Attorney
22                                            SCOTT M. GARRINGER
                                             Assistant United States Attorney
23                                            Chief, Criminal Division

24                                            _____/s/_____

25                                            ANDREW BROWN
                                             VICTOR A. RODGERS
26                                            MAXWELL COLL
                                             Assistant United States Attorneys
27
                                             Attorneys for Defendants
28                                            UNITED STATES OF AMERICA, et al.

2

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.    INTRODUCTION ......................................................................................................1

II.   STATEMENT OF FACTS ........................................................................................2

III.  ARGUMENT ..............................................................................................................3

    A.    The Standards For Fed. R. Civ. P. 12 (b)(1) and (6) Motions To
        Dismiss ...............................................................................................................3

    B.    Plaintiffs Cannot Discharge Their Burden Of Showing That Subject
        Matter Jurisdiction (Either Equitable or Under the APA) Exists Here .........5

        1.    The FBI's Administrative Forfeiture Proceedings And Any
               Future Judicial Forfeiture Proceedings Provide Plaintiffs With
               An Adequate Remedy At Law And Divest District Courts of
               Equitable Jurisdiction To Hear Motions To Return Property .............5

        2.    Requiring Plaintiffs To Submit Claims In The Administrative
               Forfeiture Proceedings In Their Real Names, As Required By
               The Regulations, Does Not Make The Legal Remedy
               Inadequate .............................................................................................9

        3.    Plaintiffs Claims Are Barred For The Additional Reason That
               Subject Matter Jursidiction Does Not Exist Under The APA............10

    C.    Plaintiffs' Cannot Satisfy Article III's Case Or Controversy
        Requirement Because Their Request For Relief In Future Judicial
        Actions Is Unripe And To Extend Already-Expired Deadlines Is
        Moot ................................................................................................................12

    D.    Plaintiffs Should Not Be Allowed To Litigate Here Using
        Pseudonyms.....................................................................................................15

        1.  Plaintiff's Need For Anonymity ...........................................................16

             a.    Severity of The Threatened Injury And
                  Reasonableness Of Plaintiff's Fear...............................................16

             b.    Plaintiff's Vulnerability To Retaliation .....................................18

        2.  The Prejudice To The Government and the Public's Interest................19

i

## TABLE OF CONTENTS CONTINUED

IV.   CONCLUSION........................................................................................20

DECLARATION OF JUSTIN PALMERTON  ..............................................21

DECLARATION OF JESSIE MURRAY  ......................................................23

DECLARATION OF STEPHEN J. JOBE  ....................................................34

DECLARATION OF VICTOR A. RODGERS ..............................................37

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Federal Cases**

A.G. v. Unum Life Ins. Co. of America,
  2018 WL 903463 (D. Or. Feb. 14, 2018) ....................................................... 16

Abernathy v. Kral,
  305 F. Supp. 3d 795 (N.D. Ohio 2018) .............................................................7

Aguirre v. S.S. Sohio Intrepid,
  801 F.2d 1185 (9th Cir. 1986) ......................................................................... 15

America Unites for Kids v. Rousseau,
  985 F.3d 1075 (9th Cir. 2021) ......................................................................... 14

Auer v. Robbins,
  519 U.S. 452 (1997) ......................................................................................... 10

Baranski v. Fifteen Unknown Agents of ATF,
  195 F. Supp. 2d 862 (W.D. Ky. 2002) ..............................................................9

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007) .......................................................................................4, 5

Bender v. Williamsport Area School Dist.,
  475 U.S. 534 (1986) ...........................................................................................3

Billingsley v. C.I.R.,
  868 F.2d 1081 (9th Cir. 1989) ...........................................................................4

Caltex Plastics, Inc. v. Lockheed Martin Corp.,
  824 F.3d 1156 (9th Cir. 2016) ...........................................................................4

Cardenas v. Anzai,
  311 F.3d 929 (9th Cir.2002) ............................................................................ 13

CFK, LLC v. United States,
  324 F.R.D. 236 (D. Ut. 2018) ............................................................................7

Chevron, U.S.A., Inc. v. NRDC,
  467 U.S. 837 (1984) ......................................................................................... 10

1

## <u>TABLE OF AUTHORITIES CONTINUED</u>

City of Oakland v. Lynch,
   798 F.3d 1159 (9th Cir. 2015) ............................................................... 11, 12

DaimlerChrysler Corp. v. Cuno,
   547 U.S. 332 (2006) ................................................................................ 4

Doe v. John F. Kennedy Univ.,
   2013 WL 4565061 (N.D. Cal. Aug. 27, 2013) ....................................... 20

Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate,
   596 F.3d 1036 (9th Cir. 2010) ...................................................... 15, 16, 20

Does I thru XXIII v. Advanced Textile Corp.,
   214 F.3d 1058 (9th Cir. 2000) .......................................................... passim

Faith Action For Community Equity v. Hawaii,
   2014 WL 320587 (D. Haw. Jan. 29, 2014) ............................................ 17

Haltiwanger v. United States,
   494 F. Supp. 2d 927 (N.D. Ill. 2007) ..................................................... 7

Headwaters Inv. v. Bureau of Land Management,
   893 F.2d 1012 (9th Cir. 1989) ................................................................ 15

Hyatt v. Office of Management and Budget,
   908 F.3d 1165 (9th Cir. 2018) ................................................................ 11

Ibarra v. United States,
   120 F.3d 472 (4th Cir. 1997) .................................................................. 8

In Re Return of Seized Prop. (Jordan),
   625 F. Supp. 2d 949 (C.D. Cal. 2009) ................................................... 7

In Re The Return of Seized Property, Specifically All Funds Seized from BoundlessRise,
LLC,
   2017 WL 4180149 (C.D. Cal. Aug. 30, 2017) ...................................... 7

Jessica K. v. Eureka City Schools Dist.,
   2014 WL 689029 (N.D. Cal. Feb. 21, 2014) .......................................... 20

## <u>TABLE OF AUTHORITIES CONTINUED</u>

<u>Laub v. United States Dep't of the Interior,</u>
   342 F.3d 1080 (9th Cir. 2003) ...................................................................14

<u>Lujan v. Defenders of Wildlife,</u>
   504 U.S. 555 (1992) ....................................................................................13

<u>Martin v. Occup. Safety & Health Rev. Com'n,</u>
   499 U.S. 144 (1991) ....................................................................................10

<u>Massey v. Ojaniit,</u>
   759 F.3d 343 (4th Cir. 2014).........................................................................5

<u>Railway Mail Ass'n v. Corsi,</u>
   326 U.S. 88 (1945) ......................................................................................12

<u>Ramsden v. United States,</u>
   2 F.3d 322 (9th Cir. 1993).............................................................................5

<u>Roberts v. Corrothers,</u>
   812 F.2d 1173 (9th Cir. 1987).......................................................................4

<u>Safe Air for Everyone v. Meyer,</u>
   373 F.3d 1035 (9th Cir. 2004).......................................................................4

<u>Seismic Reservoir 2020, Inc. v. Paulsson,</u>
   785 F.3d 330 (9th Cir. 2015).........................................................................4

<u>Stormans, Inc. v. Selecky,</u>
   586 F.3d 1109 (9th Cir. 2009).....................................................................13

<u>Thomas Jefferson Univ. v. Shalala,</u>
   512 U.S. 504 (1994) ....................................................................................10

<u>Thomas v. Anchorage Equal Rights Com'n,</u>
   220 F.3d 1134 (9th Cir. 2000).....................................................................13

<u>Thornhill Pub. v. Gen. Tel. and Elec. Corp.,</u>
   594 F.2d 730 (9th Cir. 1979).........................................................................4

1

## <u>TABLE OF AUTHORITIES CONTINUED</u>

2

<u>United States v. $22,474.00 in U.S. Currency</u>,
3
   246 F.3d 1212 (9th Cir. 2001) ........................................................................ 19

4

<u>United States v. 2nd Amendment Guns, LLC</u>,
5
   917 F. Supp. 2d 1120 (D. Or. 2012) ................................................................ 9

6

<u>United States v. 1982 Yukon Delta Houseboat</u>,
7
   774 F.2d 1432 (9th Cir. 1985) ........................................................................ 19

8

<u>United States v. $8,850</u>,
9
   461 U.S. 555 (1983) .......................................................................................... 5

10

<u>United States v. Daccarett</u>,
11
   6 F.3d 37 (2d Cir. 1993) ................................................................................. 19

12

<u>United States v. Elias</u>,
13
   921 F.2d 870 (9th Cir. 1990) ...................................................................... 6, 8

14

<u>United States v. Ibrahim</u>,
15
   522 F.3d 1003 (9th Cir. 2008) ......................................................................... 5

16

<u>United States v. Lazarenko</u>,
17
   476 F.3d 642 (9th Cir. 2007) ................................................................... 13, 14

18

<u>United States v. Linares</u>,
19
   921 F.2d 841 (9th Cir. 1990) ......................................................................... 14

20

<u>United States v. Martinson</u>,
21
   809 F.2d 1364 (9th Cir. 1987) ......................................................................... 5

22

<u>United States v. Naovalath</u>,
23
   2008 WL 2885965 (D. Minn. Jul. 22, 2008) .................................................. 8

24

<u>United States v. One 1974 Learjet</u>,
25
   191 F.3d 668 (6th Cir. 1999) ........................................................................... 8

26

<u>United States v. One 1987 Jeep Wrangler</u>,
27
   972 F.2d 472 (2d Cir. 1992) ............................................................................ 8

28

## <u>TABLE OF AUTHORITIES CONTINUED</u>

<u>United States v. Ritchie</u>,
   342 F.3d 903 (9th Cir. 2003)......................................................................5

<u>United States v. Stoterau</u>,
   524 F.3d 988 (9th Cir. 2008).............................................................17, 20

<u>United States v. Streich</u>,
   560 F.3d 926 (9th Cir. 2009)....................................................................13

<u>United States v. Thomas</u>,
   913 F.2d 1111 (4th Cir. 1990)..................................................................19

<u>United States v. U.S. Currency in the Amount of $146,800</u>,
   1997 WL 269583 (E.D.N.Y. Apr. 28, 1997).............................................9

<u>United States v. U.S. Currency, $42,500.00</u>,
   283 F.3d 977 (9th Cir. 2002)....................................................................19

<u>United States v. U.S. Currency, $83,170.78</u>,
   851 F.2d 1231 (9th Cir. 1988)............................................................6, 7, 8

<u>United States v. Voraveth</u>,
   2008 WL 4287293 (D. Minn. Jul. 1, 2008)...............................................8

<u>Warren v. Fox Family Worldwide, Inc.</u>,
   328 F.3d 1136 (9th Cir. 2003)....................................................................5

<u>Western Oil & Gas Ass'n v. Sonoma County</u>,
   905 F.2d 1287 (9th Cir. 1990).............................................................13, 14

<u>White v. Lee</u>,
   227 F.3d 1214 (9th Cir. 2000)....................................................................4

<u>Winter v. Cal. Med. Review Bd., Inc.</u>,
   900 F.2d 1322 (9th Cir.1990)...................................................................14

<u>$8,050.00 in U.S. Currency v. United States</u>,
   307 F. Supp. 2d 922 (N.D. Ohio 2004).....................................................8

1

## <u>TABLE OF AUTHORITIES CONTINUED</u>

2

**Federal Statutes**

3

5 U.S.C. § 701(a)(1) ................................................................................11

4

5 U.S.C. § 701(a)(2) ................................................................................11

5

5 U.S.C. § 702 ........................................................................................11

5 U.S.C. § 703 ....................................................................................11, 12

6

5 U.S.C. § 704 ....................................................................................11, 12

7

18 U.S.C. § 981 .......................................................................................11

18 U.S.C. § 982 .......................................................................................11

8

18 U.S.C. § 983 ...................................................................................8, 11

9

18 U.S.C. § 983(a)(3)(A) ...........................................................................6

18 U.S.C. § 983(a)(3)(B) ...........................................................................6

10

19 U.S.C. § 1608 ......................................................................................6

11

**Federal Rules**

12

Fed. R. Civ. P.10(a) ................................................................................15

13

Fed. R. Civ. P. 12 ......................................................................................i

14

Fed. R. Civ. P. 12(b)(1) ....................................................................passim

Fed. R. Civ. P. 12(b)(6) ....................................................................1, 3, 4

15

Fed. R. Crim. P. 41(g) ......................................................................passim

16

Fed. R. Crim. P. 41(e) ...............................................................................8

Supplemental Rule G(5)(a)(ii) of the Supplemental Rules for Admiralty or Maritime

17

Claims and Asset Forfeiture Actions ....................................................11

18

Supplemental Rule G(8)(a) of the Supplemental Rules for Admiralty or Maritime

Claims and Asset Forfeiture Actions ......................................................9

19

**Federal Regulations**

20

21

28 C.F.R. § 8.2 .......................................................................................10

22

28 C.F.R. § 8.10(b)(1) ............................................................................10

28 C.F.R. § 8.10(b)(2) ............................................................................10

23

28 C.F.R. § 8.10(b)(3) ............................................................................10

24

28 C.F.R. § 8.10(a) ................................................................................10

28 C.F.R. § 8.10(e) ..................................................................................6

25

28 C.F.R. § 8.10(g) ................................................................................10

28 C.F.R. § 8.12 ......................................................................................6

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs' action should be dismissed under Fed. R. Civ. P. 12(b)(1) and (6). First, plaintiffs seek to invoke the Court's equitable jurisdiction, but relief in equity is unavailable because plaintiffs can raise all the claims they assert here in any judicial forfeiture proceeding the government may file and they therefore have an adequate legal remedy.  Second, subject matter jurisdiction is lacking for plaintiffs' Administrative Procedures Act ("APA") claims for three reasons: the government's decision to proceed with forfeiture proceedings is committed to agency discretion, the decision is not final agency action and the forfeiture proceedings provide plaintiffs with an adequate court remedy, and the forfeiture statute precludes judicial review.  Third, plaintiffs cannot satisfy Article III's case or controversy requirement because their request for relief in future judicial forfeiture cases is unripe and in the administrative proceedings is moot. Finally, plaintiffs have not shown their need for anonymity outweighs the prejudice to the government and the public's interest in knowing all parties' identities in this case.

## II.   STATEMENT OF FACTS

Plaintiffs Does 1 through 6 seek return of property seized from their safety deposit boxes at U.S. Private Vaults, Inc. ("USPV") because the seizures allegedly violated the Fourth and Fifth Amendments.  Their first cause of action seeks the return under the APA, while their  second requests the return under Fed. R. Crim. P. 41(g) and the right to proceed herein using pseudonyms.  The third and fourth causes of action pursuant to the APA seek orders (i) permitting plaintiffs to file claims to contest forfeiture using pseudonyms in the already-initiated administrative forfeiture proceedings and in future judicial forfeiture proceedings (third cause of action); and  (ii) staying the deadlines to file claims in the administrative forfeiture proceedings and future judicial forfeiture proceedings and staying civil discovery in future judicial forfeiture proceedings until plaintiffs' constitutional challenges are decided (fourth cause of action).  Plaintiffs' fifth cause of action under the APA seeks an order to enjoin the spoliation of evidence.

In March 2021, a grand jury indicted USPV for conspiring with its customers to launder money, distribute drugs, and structure financial transactions to avoid currency reporting requirements. Rodgers Decl. ¶ 3 and Ex. A. The indictment provides that USPV's business is predicated on "attract[ing] customers in possession of proceeds from criminal offenses, including drug trafficking[.]" Id. (Ex. A [indictment at 3:21]). USPV allegedly did so by "touting the anonymity of the safety deposit rentals . . . including by advertising 'we don't even want to know your name' " and "boasting that, unlike banks, [USPV's] anonymous safety deposit box rentals did not require customer information that 'can be easily accessed by government agencies (such as the IRS)[.]' " Id. (Ex. A [indictment at 3:23-28]). In addition, the indictment provides that, as part of USPV's business model of anonymity, USPV would "mak[e] arrangements for the payment of the [safety deposit box] rental fees in cash and other ways that would be untraceable;" "issu[e] safety deposit box keys that were unmarked and unnumbered so that law enforcement could not determine that the keys unlocked safety deposit boxes at USPV;" and "charg[e] safety deposit box rental rates several times higher than those at banks." Id. (Ex. A [indictment at 3:28-4:5]). See also Complaint ¶¶ 23 and 26.

The government obtained a sealed criminal seizure warrant for "[t]he nests of safety deposit boxes and keys" located at USPV, and the warrant provides it "does not authorize a criminal search or seizure of the contents of the safety boxes[,]" that "agents shall follow their written inventory policies to protect their agencies and the contents of the boxes" and that "agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property[.]" Rodgers Decl. ¶ 4 and Ex. B. Between March 22 and 26, 2021, agents executed the warrant and removed the nests of safe deposit boxes, inventorying their contents in the process, as the warrant authorized. Id.; Palmerton Decl. ¶ 2; complaint ¶¶ 9 and 29.

Plaintiffs have sued using pseudonyms to protect themselves from the risk of criminal prosecution, and from injury, harassment, retaliation and embarrassment, because they claim the government has asserted it will initiate a criminal investigation if

they disclose their identity.  Complaint ¶¶ 10, 19 (at n.1), 32 and 33.  However, the government does not investigate each box holder who identifies himself; it has no practice or policy of conducting a criminal investigation on each box but instead treats each box individually, and no criminal investigation is undertaken absent suspicion. Palmerton Decl. ¶ 3.  Boxes containing large sums of cash to which a narcotic detection canine alerted are likely to be criminally investigated, while boxes containing items normally stored in a safety deposit box likely will not.  Id.  Plaintiffs allege generally that Doe 1 and 2 had currency and gold in box numbers 4105 and 5006, Doe 3 had currency, gold and jewelry in box number 6710, and the remaining plaintiffs boxes had currency (Doe 4 in box 4300, Doe 5 in box 400 and Doe 6 in box 40).  Complaint ¶ 11.

On May 20, 2021, the FBI sent notice letters to persons with an interest in the contents of the aforementioned boxes (except for box number 4105, which had no assets), advising of the FBI's commencement of administrative forfeiture proceedings regarding the box contents.  Murray Decl. ¶ 2.  The notice letters included May 20, 2021 letters to the individual who may be Doe 1 or Doe 2 for the $274,030 the seized from box 5006, and to the individual who may be Doe 4 for the $330,020 seized from box 4300.  Id. at ¶ 2 and Exs. A and B.  In addition, the government sent a notice letter on May 20, 2021 to USPV for the $199,950 seized from Doe 3's box 6710, the $570,000 seized from Doe 5's box 400 and the $1,194,750 seized from Doe 6's box 40.  Id. at ¶ 3. On June 16, 2021, the FBI received claims to contest forfeiture as to the $274,030 in Doe 1 and Doe 2's box number 5006, and on June 21, 2021 as to the remaining boxes, but those claims were filed using pseudonyms and not in claimants' true names.  Id. at ¶ 4.

III.   ARGUMENT

A.     The Standards For Fed. R. Civ. P. 12(b)(1) and (6) Motions To Dismiss.

Federal courts should not adjudicate controversies where subject matter jurisdiction is lacking because they "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."  Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986) (citation omitted).  The

presumption is that a court is "without jurisdiction unless the contrary appears affirmatively from the record." Id. at 546 (internal quotes omitted).  The burden of establishing subject matter jurisdiction rests upon the party invoking it [DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006)] and "the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction." Billingsley v. C.I.R., 868 F.2d 1081, 1085 (9th Cir. 1989) (internal quotes omitted).

Fed. R. Civ. P. 12(b)(1) subject matter jurisdiction attacks can be either facial or factual.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  In "a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  Conversely, in a factual attack "[n]o presumptive truthfulness attaches to plaintiff's allegations" [Thornhill Pub. v. Gen. Tel. and Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979) (internal quotes omitted)], "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" [Safe Air for Everyone, 373 F.3d at 1039 (citation omitted)], and courts may weigh the extrinsic evidence in determining whether the facts show that a plaintiff has discharged plaintiff's burden of demonstrating that subject matter jurisdiction exists [Roberts v. Corrothers, 812 F.2d 1173, 1177-78 (9th Cir. 1987)].

Courts should grant a Fed. R. Civ. P. 12(b)(6) motion when a complaint fails to allege a cognizable legal theory or sufficient factual support for a legal theory.  Caltex Plastics, Inc. v. Lockheed Martin Corp., 824 F.3d 1156, 1159 (9th Cir. 2016).  Fed. R. Civ. P. 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Seismic Reservoir 2020, Inc. v. Paulsson, 785 F.3d 330, 335 (9th Cir. 2015) (internal quotes omitted).  A complaint must set forth "enough facts to state a claim for relief that is plausible on its face" to defeat the motion.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Courts accept as true the well-pleaded material factual allegations of a complaint but not conclusory allegations, unwarranted factual deductions, unreasonable inferences or legal characterizations [Bell Atlantic Corp., 550

U.S. at 555; Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)], and may consider documents attached to or mentioned in a complaint and matters subject to judicial notice without converting the motion into a summary judgment motion.  Massey v. Ojaniit, 759 F.3d 343, 347-48 (4th Cir. 2014).

**B.    Plaintiffs' Cannot Discharge Their Burden Of Showing That Subject Matter Jurisdiction (Either Equitable Or Under The APA) Exists Here.**

**1.    The FBI's Administrative Forfeiture Proceedings And Any Future Judicial Forfeiture Proceedings Provide Plaintiffs With An Adequate Remedy At Law And Divest District Courts Of Equitable Jurisdiction To Hear Motions To Return Property.**

Because plaintiffs seek the return of property pursuant to Fed. R. Crim. P. 41(g) (hereinafter sometimes referred to "Rule 41(g)"), plaintiffs' complaint (or for that matter a motion, which is treated as a complaint)[1] seeks to invoke the Court's equitable jurisdiction.  Rule 41(g) motions/complaints are only appropriate where property return is sought and no criminal or civil judicial action seeking forfeiture of the property is pending.  See United States v. $8,850, 461 U.S. 555, 569-70 (1983) (recognizing such motions under former Fed. R. Crim. P. 41(e)).  Because such a movant has no other available forum to address the grievance, Fed. R. Crim. P. 41(g) motions are treated as equitable civil actions.  United States v. Martinson, 809 F.2d 1364, 1367 (9th Cir. 1987).

The Ninth Circuit has recognized that a district court's invocation of equitable jurisdiction to hear a Rule 41(g) request for return of property should be exercised with caution and restraint.  Ramsden v. United States, 2 F.3d 322, 324 (9th Cir. 1993).  It is a fundamental principle of equitable jurisdiction that if an adequate remedy at law exists,

---

[1] Ninth Circuit cases require Rule 41(g) motions be treated as civil complaints governed by the Federal Rules of Civil Procedure.  United States v. Ibrahim, 522 F.3d 1003, 1007 (9th Cir. 2008) ("[b]ecause there were no criminal proceedings pending at the time of filing, the District Court properly treated the motion as a civil complaint governed by the Federal Rules of Civil Procedure") (citation omitted); United States v. Ritchie, 342 F.3d 903, 906-07 (9th Cir. 2003).  Once district courts treat the motion "as a civil complaint, . . . it [is] required to apply the Federal Rules of Civil Procedure.  These rules apply to each stage of the proceedings, the same way they would in the civil context."  Ibrahim, 522 F.3d at 1008 (citation omitted and emphasis in original).

equitable relief is unavailable. <u>United States v. Elias</u>, 921 F.2d 870, 875 (9th Cir. 1990) (affirming district court's refusal to exercise equitable jurisdiction "because Elias had an adequate remedy at law"); <u>United States v. U.S. Currency, $83,310.78</u>, 851 F.2d 1231, 1235 (9th Cir. 1988) (affirming denial of motion for return of property where adequate remedies at law existed; there was "no need to fashion an equitable remedy").

Plaintiffs' first and second causes of action request their property be returned, while plaintiffs' fourth cause of action requests to stay the deadline to file claims and civil discovery in any future civil forfeiture action until plaintiffs Fourth and Fifth Amendment arguments are resolved in the future cases. The government has commenced administrative forfeiture proceedings as to plaintiffs' property, and must file a judicial forfeiture action within 90 days after the FBI receives a valid claim to contest the forfeiture thereof or else release the property.[2] Because the forfeiture proceedings, in which plaintiffs can raise all the arguments against forfeiture they raises in their complaint, provide an adequate remedy at law, equitable jurisdiction does not lie.

In <u>Elias</u>, the Ninth Circuit held that administrative forfeiture proceedings provide an adequate remedy at law and preclude a district court from exercising equitable jurisdiction to hear a Rule 41(g) motion. There, the government had seized assets and initiated administrative forfeiture proceedings. In affirming the district court's dismissal of Elias' motion, the court concluded that "Elias had a remedy at law pursuant to the administrative forfeiture scheme set forth in 19 U.S.C. § 1608." 921 F.2d at 872. The court rejected the argument that only pending judicial forfeiture proceedings precluded Rule 41(g) relief, and held that administrative forfeiture proceedings "provided Elias

---

[2] Once a seizing agency receives a <u>valid</u> claim to contest the administrative forfeiture of an asset, the seizing agency must suspend the administrative forfeiture proceeding as to the asset (28 C.F.R. § 8.10(e)), the seizing agency cannot issue a judgment or final decision that forfeits the asset to the government via what is known as a "declaration of administrative forfeiture" and is the equivalent of a court judgment of forfeiture in a judicial case (28 C.F.R. § 8.12), the seizing agency must refer the matter to the USAO for the filing of an <u>in rem</u> judicial civil forfeiture action that names the asset as a defendant (28 C.F.R. § 8.10(e)), and the government must release the property if the USAO does not file the judicial complaint within 90 days after the seizing agency received the claim (18 U.S.C. § 983(a)(3)(A) & (B)).

with the procedural tools to seek judicial review of the lawfulness of the seizure of his property" and that "both [the administrative and judicial forfeiture] procedures give the claimant an adequate remedy at law." Id. at 873.

Numerous Ninth Circuit and district court cases within the Circuit have dismissed Rule 41(g) motions and complaints where forfeiture proceedings are pending, reasoning that the forfeiture proceedings provide an adequate remedy at law and divest courts from hearing Rule 41(g) requests to return property. U.S. Currency, $83,310.78, 851 F.2d at 1235 ("when a civil forfeiture proceeding is pending, there is no need to fashion an equitable remedy to secure justice for the claimant"); In Re Return of Seized Prop. (Jordan), 625 F. Supp. 2d 949, 955 (C.D. Cal. 2009) (granting government's motion to dismiss a Rule 41(g) motion: "the Ninth Circuit has held that a Rule 41(g) motion is properly denied once a civil forfeiture action has been filed") (citation omitted); In Re The Return of Seized Property, Specifically All Funds Seized from BoundlessRise, LLC, 2017 WL 4180149 (C.D. Cal. Aug. 30, 2017) (in granting government's motion to dismiss for lack of subject matter jurisdiction, the district court noted "if a related civil forfeiture proceeding is filed - - either before or after the Rule 41(g) motion was brought - - the court no longer has jurisdiction to entertain the Rule 41(g) motion.  A civil forfeiture proceeding gives the claimant an adequate remedy at law, precluding exercise of the district court's equitable powers") (internal quotes omitted).

Cases outside the Ninth Circuit are in accord. Abernathy v. Kral, 305 F. Supp. 3d 795 (N.D. Ohio 2018) (where the government has begun civil forfeiture proceedings, a motion for return should be denied because plaintiff has an adequate remedy at law in the civil forfeiture case to seek return of seized property); CFK, LLC v. United States, 324 F.R.D. 236 (D. Ut. 2018) (where government has begun civil forfeiture proceedings, Rule 41(g) motion should be dismissed because claimant can no longer show that claimant lacked a legal remedy as required to obtain equitable relief); Haltiwanger v. United States, 494 F. Supp. 2d 927 (N.D. Ill. 2007) (granting government's motion to dismiss for lack of jurisdiction because the district court lacked equitable jurisdiction to

7

hear Rule 41(g) motion once administrative forfeiture proceedings were commenced); United States v. Voraveth, 2008 WL 4287293, *13 (D. Minn. Jul. 1, 2008), r.& r adopted, United States v. Naovalath, 2008 WL 2885965 (D. Minn. Jul. 22, 2008) (equitable relief under Rule 41(g) is not available once administrative forfeiture proceedings commenced because those proceedings provide an adequate legal remedy); $8,050.00 in U.S. Currency v. United States, 307 F. Supp. 2d 922, 926-27 (N.D. Ohio 2004) (comprehensive provisions in 18 U.S.C. § 983, governing the procedural aspects of civil forfeiture proceedings, give claimant an adequate remedy at law for contesting civil forfeiture; once the Government commences administrative forfeiture proceedings, a Rule 41(g) motion must be dismissed).[3]

Indeed, in dismissing Rule 41(g) actions, courts specifically hold that forfeiture proceedings provide an adequate remedy at law to raise any claim, like plaintiffs' claim here, that the seizure violated the Fourth and Fifth Amendments. Elias, 921 F.2d at 873 (administrative forfeiture proceedings "provided Elias with the procedural tools to seek judicial review of the lawfulness of the seizure of his property" and "an adequate remedy at law"); U.S. Currency, $83,310.78, 851 F.2d at 1235 ("when a civil forfeiture proceeding has been filed, the claimant has adequate remedies to challenge any fourth amendment violation. Accordingly, when a civil forfeiture proceeding is pending, there is no need to fashion an equitable remedy to secure justice for the claimant. The district court did not err in denying the Rule 41(e) motion"); United States v. One 1987 Jeep Wrangler, 972 F.2d 472, 479 (2d Cir. 1992) ("the claimant is afforded the opportunity to test the legality of the seizure in the forfeiture proceeding. Consequently, once the administrative process has begun, the district court loses subject matter jurisdiction to adjudicate the matter in a peripheral setting such as a Rule 41(e) motion") (citations

---

[3] United States v. One 1974 Learjet, 191 F.3d 668, 673 (6th Cir. 1999) ("After the government initiates forfeiture proceedings and notifies a claimant of the proceedings, a claimant may no longer use Rule 41(e), but instead must submit to the statutory procedures governing civil forfeiture proceedings") (citation omitted); Ibarra v. United States, 120 F.3d 472, 475-76 (4th Cir. 1997) ("once the Government initiates forfeiture proceedings, the district court is divested of jurisdiction" to hear Rule 41 motion).

1   omitted); <u>see also</u> Supplemental Rule G(8)(a) of the Supplemental Rules for Admiralty

2   or Maritime Claims and Asset Forfeiture Actions (suppression motions authorized);

3   <u>United States v. 2nd Amendment Guns, LLC</u>, 917 F. Supp. 2d 1120 (D. Or. 2012) (once

4   government commences administrative forfeiture proceeding, claimant has an adequate

5   remedy at law to raise claimant's Fourth Amendment unlawful search arguments);

6   <u>Baranski v. Fifteen Unknown Agents of ATF</u>, 195 F. Supp. 2d 862, 868 (W.D. Ky.

7   2002) (no jurisdiction to consider Rule 41 motion raising Fourth and Fifth Amendment

8   issues because forfeiture proceedings provide an adequate remedy at law and therefore

9   shows that the movant cannot establish equitable jurisdiction); <u>United States v. U.S.</u>

10  <u>Currency in the Amount of $146,800</u>, 1997 WL 269583, *5 (E.D.N.Y. Apr. 28, 1997)

11  (Rule 41 motion is not appropriate vehicle to challenge a seizure's legality because

12  claimant has adequate legal remedy by contesting forfeiture in the civil forfeiture case).

13          Therefore, plaintiffs' complaint should be dismissed for lack of subject matter

14  jurisdiction.  The administrative forfeiture proceedings and any future judicial forfeiture

15  provide an adequate remedy at law and reflects that equitable jurisdiction does not lie.

16          **2.      Requiring Plaintiffs To Submit Claims In The Administrative**

17          **Forfeiture Proceedings In Their Real Names, As Required By**

18          **The Regulations, Does Not Make The Legal Remedy Inadequate.**

19          Plaintiffs' third cause of action seeks permission to file claims in the

20  administrative forfeiture proceedings and future judicial proceedings using a pseudonym.

21  The pseudonym claims plaintiffs submitted to the FBI are invalid.  In opposing one of

22  the multiple TROs in this matter, the government made confusing arguments, and

23  sincerely apologizes for doing so, with regard to the laws and regulations governing the

24  required contents of a claim submitted in administrative forfeiture proceedings.  The

25  government's confusing argument may have caused the Court to conclude that the

26  government had not cited any statute or regulation requiring claimants in an

27  administrative forfeiture proceeding to identify themselves by their legal names.  In fact,

28  however, the regulations do contain this requirement.

A person "must file a claim with the appropriate official" (28 C.F.R. § 8.10(a)), which is "the Unit Chief, Legal Forfeiture Unit, Office of the General Counsel, FBI" (28 C.F.R. § 8.2 [Definitions] and whose declaration (Stephen J. Jobe) is submitted herewith. As to the contents of the claim, the regulations provide that "[a] claim shall (1) Identify the specific property being claimed; Identify the claimant and state the claimant's interest in the property; and Be made under oath by the claimant . . . and recite that it is made under penalty of perjury, consistent with the requirements of 28 U.S.C. [sic] 1746." 28 C.F.R. 8.10(b)(1)-(3) (emphasis added); Jobe Decl. ¶ 4.  Because the regulation provides that claims must identify and be signed by claimants, plaintiffs' claims are invalid.  Nonetheless, because plaintiffs' claims were timely submitted, the government can extend their deadline, as permitted by 28 C.F.R. § 8.10(g) (see Jobe Decl. ¶ 5), to allow plaintiffs to file valid claims in their actual names.

Where, as here, an agency is interpreting its own regulations, courts give "substantial deference" to the agency interpretation.  Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994).  In fact, an agency's interpretation of its own regulations is of controlling weight unless it is plainly erroneous or inconsistent with the regulation.  Auer v. Robbins, 519 U.S. 452, 461 (1997).  As to the deference given an agency, Chevron, U.S.A., Inc. v. NRDC, 467 U.S. 837, 842-43 (1984), the underlying basis for deference to an agency's interpretation of its own regulation is a delegation of interpretive authority by Congress to administrative agencies: "Because applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives, we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers."  Martin v. Occup. Safety & Health Rev. Com'n, 499 U.S. 144, 151 (1991).

### 3.    Plaintiffs' Claims Are Barred For The Additional Reason That Subject Matter Jurisdiction Does Not Exist Under The APA.

Except for plaintiffs' second cause of action under Rule 41(g), plaintiffs' claims are brought pursuant to the APA.  However, "no cause of action under the APA exists if

(1) 'statutes preclude judicial review,' 5 U.S.C. § 701(a)(1); (2) the relevant agency action is not a 'final agency action for which there is no other adequate remedy in a court,' 5 U.S.C. § 704; or (3) the 'agency action is committed to agency discretion by law,' 5 U.S.C. § 701(a)(2)." Hyatt v. Office of Management and Budget, 908 F.3d 1165, 1170 (9th Cir. 2018) (citing City of Oakland v. Lynch, 798 F.3d 1159, 1165 (9th Cir. 2015)). In City of Oakland, the Ninth Circuit affirmed the dismissal for lack of subject matter jurisdiction the City of Oakland's lawsuit under the APA to prevent the federal government from seeking civil forfeiture of real property where a retail marijuana store was operating in violation of federal marijuana laws, and held that civil forfeiture proceedings could not be challenged under the APA for three separate reasons: the decision to proceed with forfeiture proceedings is committed to agency discretion, the decision to proceed with a civil forfeiture proceeding is not a final agency action, and the existing civil forfeiture statutes provided an adequate remedy in court. Id. at 1165-67.

The Ninth Circuit noted "the APA does not apply if the 'agency action is committed to agency discretion by law' or if 'statutes preclude judicial review[ ]' (citing 5 U.S.C. § 701(a)(1) and (2)), and "[t]he APA does not 'confer [ ] authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought[]' " (citing 5 U.S.C. § 702). City of Oakland, 789 F.3d at 1165. The Court concluded "[b]ecause the Government's decision to file the forfeiture action is committed to agency discretion, and because Oakland's suit is impliedly forbidden by the existence of the forfeiture statute, judicial review is precluded" under the APA. Id.

As to agency discretion under 5 U.S.C. § 701(a)(2), the Court noted "[L]itigation decisions are generally committed to agency discretion by law, and are not subject to judicial review under the APA. . . . The Government's decision relied on the exercise of the equivalent of prosecutorial discretion and is thus immune from judicial review under the APA." Id. at 1165 (internal quotes omitted). As to statutory preclusion (i.e., 5 U.S.C. §§ 701(a)(1) and 702), the Ninth Circuit held that because the forfeiture statute, 18 U.S.C. §§ 981-983 and Supplemental Rule G(5)(a)(ii) of the Supplemental Rules for

Admiralty or Maritime Claims and Asset Forfeiture Actions, which allows persons to file claims contesting forfeiture and provides a standard to review whether property is subject to forfeiture, is a "precisely drawn, detailed statute [and therefore] pre-empts more general remedies" under the APA, "[t]he existing forfeiture framework . . . impliedly forbids review of Oakland's [APA] claims." Id. at 1165.

Finally, the Court noted 5 U.S.C. § 704 also "bar[red] [Oakland's] claims" because that statute permits judicial review only for "<u>final agency action</u> for which there is <u>no other adequate remedy in a court</u>." City of Oakland, 789 F.3d at 1166 (emphasis in original and citing 5 U.S.C. § 704). The Court held the government's "decision to file the forfeiture action is not 'final,' because it is not an action by which rights or obligations have been determined, or from which legal consequences will flow." Id. (internal quotes omitted). In addition, the Court noted "[a] forfeiture action simply makes evident the Government's intention to challenge the status quo; any rights, obligations, and legal consequences are to be determined later by a judge." Id. at 1166-67. Further, the court noted "there is another adequate remedy-the forfeiture action." Id. at 1167.

For each of these three reasons, subject matter jurisdiction does not exist over plaintiffs' APA claims. They should therefore be dismissed.

**C.    Plaintiffs' Cannot Satisfy Article III's Case Or Controversy Requirement Because Their Request For Relief In Future Judicial Actions Is Unripe And To Extend Already-Expired Deadlines Is Moot.**

Plaintiffs' fourth cause of action requests that the deadline to file a claim be stayed and that civil discovery be stayed in any future civil forfeiture action the government files, until such time the Fourth and Fifth Amendment issues are resolved in those future cases. This request for relief based on future events that may or may not occur runs afoul of Article III standing and ripeness requirements.

The "case or controversy" requirement in Article III mandates that issues be "definite and concrete, not hypothetical or abstract," before federal courts may exercise jurisdiction over them. Railway Mail Ass'n v. Corsi, 326 U.S. 88, 93 (1945). In

applying this jurisdictional limitation, courts have, under the rubric of ripeness or standing, refused to consider issues that are hypothetical. Thomas v. Anchorage Equal Rights Com'n, 220 F.3d 1134, 1138-39 (9th Cir. 2000). An issue or action is deemed to be unripe when the claims that it presents have either not yet occurred or not become sufficiently "concrete" for judicial resolution. Western Oil & Gas Ass'n v. Sonoma County, 905 F.2d 1287, 1290 (9th Cir. 1990).

Because ripeness is a constitutional prerequisite for jurisdiction, courts lack jurisdiction to review claims unless they are ripe. United States v. Streich, 560 F.3d 926, 931 (9th Cir. 2009). The role of the judiciary is "neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." Thomas, 220 F.3d at 1138 (citation omitted). Ripeness is therefore "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1122 (9th Cir. 2009) (internal quotes omitted).

To determine whether a case is ripe for review, the Ninth Circuit has held that the proper analysis is (1) whether the issue is fit for judicial decision, and (2) whether the parties will suffer a hardship if the court withholds decision. United States v. Lazarenko, 476 F.3d 642, 652 (9th Cir. 2007). A question is fit for decision when it can be decided without considering "contingent future events that may not occur as anticipated, or indeed may not occur at all." Cardenas v. Anzai, 311 F.3d 929, 934 (9th Cir.2002) (internal quotes omitted); see also Streich, 560 F.3d at 931. That is, the injury complained of must be "real and concrete rather than speculative and hypothetical." Stormans, Inc., 586 F.3d at 1122 (internal quotes omitted). Accord, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (in order to have standing to sue, Article III requires that plaintiff "suffer[] an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical") (internal quotes omitted). Courts should consider "whether

1   the controversy generated is essentially legal in nature or whether further factual

2   amplification is necessary." Lazarenko, 476 F.3d at 652.  (internal quotes omitted).

3   Where the case is "too speculative for resolution by a federal court" and "[f]urther

4   delineation of the facts is necessary to shape the issues for review," courts have declined

5   to review the case on ripeness grounds.  Western Oil & Gas Ass'n, 905 F.2d at 1291.

6       The second prong requires determining whether postponing review would impose

7   a "direct and immediate hardship." Lazarenko, 476 F.3d at 652.  "To meet the hardship

8   requirement, a litigant must show that withholding review would result in 'direct and

9   immediate' hardship and would entail more than possible financial loss." Winter v. Cal.

10  Med. Review Bd., Inc., 900 F.2d 1322, 1325 (9th Cir.1990) (citations omitted).  As the

11  party asserting jurisdiction, plaintiffs bear the burden of establishing that they have

12  "suffered an injury in fact -- an invasion of a legally protected interest which is (a)

13  concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."

14  Laub v. United States Dep't of the Interior, 342 F.3d 1080, 1085 (9th Cir. 2003).

15      Plaintiffs' fourth cause of action requesting that the deadlines for filing claims in

16  future judicial proceedings be stayed and that civil discovery be stayed in those future

17  proceedings pending a determination in those proceedings of the viability of their Fourth

18  and Fifth Amendment defenses are clear examples of contingent future events that have

19  not yet occurred, or may not occur at all.  The government may not file judicial forfeiture

20  actions, and even if it does, no one knows what events may occur in those future cases.

21  See United States v. Linares, 921 F.2d 841, 843-44 (9th Cir. 1990) (where a claim is

22  based on a series of events that may never come to pass, the case is not ripe).  Nor does

23  this case present a scenario that warrants immediate review.  If plaintiffs believe stays in

24  future judicial cases are appropriate, they can so apply in those cases before the courts

25  assigned to adjudicate those cases as those courts possess the inherent power to manage

26  their own affairs so as to achieve the orderly and expeditious disposition of their cases.

27  America Unites for Kids v. Rousseau, 985 F.3d 1075, 1088 (9th Cir. 2021).

28

14

1   Similarly, to the extent that plaintiffs' fourth cause of action seeks to stay

2   deadlines to file administrative claims, those claims are moot as plaintiffs have already

3   filed claims in the administrative forfeiture proceeding.  Article III of the Constitution

4   limits the jurisdiction of federal courts to actual cases and controversies, and an action is

5   rendered moot when the issues are no longer live or the party lacks a legally cognizable

6   interest in the outcome.  Headwaters Inv. v. Bureau of Land Management, 893 F.2d

7   1012, 1015 (9th Cir. 1989).  Courts lack jurisdiction over claims for which no effective

8   relief can be granted.  Aguirre v. S.S. Sohio Intrepid, 801 F.2d 1185, 1189 (9th Cir.

9   1986).  "Where the question sought to be adjudicated has been mooted by developments

10   subsequent to the filing of the complaint, no justiciable controversy is presented."  Id.

11   (citation omitted).  Accordingly, plaintiffs' fourth cause of action should be dismissed.

12   **D.     Plaintiffs Should Not Be Allowed To Litigate Here Using Pseudonyms.**

13   While the lack of subject matter jurisdiction is sufficient to grant this motion,

14   dismissal is also appropriate because plaintiffs have not shown they are entitled to

15   proceed with fictitious names.  Moreover, in this case plaintiffs seek to proceed in an

16   extraordinary and unprecedented manner - - not as in the usual case where anonymity is

17   sought and a litigant's identity is shielded from the public, but instead with total and

18   complete anonymity so that not even the government or the Court knows who they are.

19   A plaintiff's "use of fictitious names runs afoul of the public's common law right

20   of access to judicial proceedings . . . and [Fed. R. Civ. P.] 10(a)'s command that the title

21   of every complaint include the names of all the parties."  Does I thru XXIII v. Advanced

22   Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000) (internal quotes omitted).  The

23   presumption is that parties "must use their real names," which "is loosely related to the

24   public's right to open courts, and the right of private individuals to confront their

25   accusers."  Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 596 F.3d 1036,

26   1042 (9th Cir. 2010) (citations omitted).

27   The Ninth Circuit has carved out an exception in the "unusual case" and in

28   "special circumstances" when non-disclosure of the plaintiff's actual name "is necessary

15

. . . to protect a person from harassment, injury, ridicule or personal embarrassment." Advanced Textile Corp., 214 F.3d at 1067-68 (internal quotes omitted).  To invoke the exception, the "party seeking anonymity has the burden of proving it should be allowed to proceed anonymously."  A.G. v. Unum Life Ins. Co. of America, 2018 WL 903463, *1 (D. Or. Feb. 14, 2018).  In order to discharge the burden, a plaintiff must show that the "need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity."  Advanced Textile Corp., 214 F.3d at 1068.  As to a plaintiff's need for anonymity where, as here, a plaintiff alleges he needs to shield himself from retaliation, courts consider "(1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation."  Id. (citations omitted).

### 1.   Plaintiffs' Need For Anonymity.

#### a.   Severity Of The Threatened Injury And Reasonableness Of Plaintiffs' Fear.

The severity of the threatened harm and the reasonableness of the plaintiff's fears "are intricately related and should be addressed together.  In order to proceed anonymously, a plaintiff must show both (1) fear of severe harm and (2) that the fear of sever harm is reasonable."  Kamehameha Schools, 596 F.3d at 1043 (emphasis in original).  Plaintiffs have offered no facts to show either in this fear-of retaliation case.

Plaintiffs allege in conclusory fashion that they sue using pseudonymous "to protect themselves from the risk of criminal prosecution, and from injury, harassment, retaliation and embarrassment" and "are informed and believe the . . . government intends to criminally investigate each of them if their identities are revealed."  Complaint ¶¶ 10 and 32.  However, the government is not criminally investigating every boxholder.

The government's investigation is merely an attempt to learn the facts.  Of course the government intends to vet every ownership assertion to anonymously stored valuables.  The FBI has already received bogus ownership assertions to boxes, and knows of instances in which stolen valuables were stored there.  Palmerton Decl. ¶ 4.

16

But it is nonsensical to label such investigations as "criminal" at the outset. Doubtless many law-abiding citizens stored items at USPV not because USPV promised anonymity or they stored criminal proceeds there, but because USPV was near their homes. The government will return that property without a criminal inquiry. Id. at ¶¶ 3 and 5. By contrast, if the facts of the investigation indicate criminality, then naturally the government would investigate whatever offense was indicated. Plaintiffs suggest that such an investigation would be an injury. But an investigation is merely an attempt to learn the truth, and attempting to do so is not an "injury" at all, let alone a severe one.

In fact, the Ninth Circuit has held that even the risk of physical violence may be insufficient to justify proceeding under a pseudonym. In United States v. Stoterau, 524 F.3d 988, 1013 (9th Cir. 2008), the Ninth Circuit denied a convicted child sex offender's request to use a pseudonym in its published opinion even though he argued his was an unusual case where he needed anonymity because sex offenders faced an elevated risk of violent abuse in prison. The court rejected his argument, noting that it would apply equally to other sex offenders, so his case was not "unusual." Id. at 1012-13. Similarly, plaintiffs' request for anonymity would apply equally to the other hundreds of USPV boxholders or any person who sought the return of property but worried that the government would as a result investigate their assertion that they owned the property.

Plaintiffs' also offer nothing to show their fear of harm is reasonable (i.e., that revealing their identity will cause the government to retaliate against them). They do not show they are at risk of any sort of retaliatory harm as a result of filing this lawsuit. Indeed, plaintiffs have offered no evidence that they (or anyone who sued in his real name) has been subject to any actual threats as a result of their lawsuit. In Faith Action For Community Equity v. Hawaii, 2014 WL 320587 (D. Haw. Jan. 29, 2014), the court denied non-English speaking plaintiffs, who failed driver license tests, the right to sue using pseudonyms to challenge Hawaii's policy of offering driver license examinations only in English. The court noted that plaintiffs' allegations that they had been stopped by the police for driving without a license "provide no support for the proposition that

the Does risk criminal prosecution <u>by participating in this litigation</u>" and the prior stops could be for "a traffic inspection, random alcohol check, or other matters, and that, by driving without a license, the Does risk prosecution for reasons wholly independent of whether they are litigants." <u>Id.</u> at *4 (emphasis in original).

The same reasoning applies here.  There is no evidence that the government is conducting criminal investigations because a plaintiff has sued the government.  Instead, what is critical to the government's decision to conduct a criminal investigation is what is in a specific box, not whether the box's owner has sued the government.

Plaintiffs rely upon <u>Advanced Textile Corp.</u>, but the risk of unfair retaliation was clear in that case because plaintiffs had shown that laborers who complained of unfair working conditions were fired, blackballed by employers, and deported to China where they faced imprisonment for failing to make good on debts they incurred to labor recruiters.  No comparable evidence exists here.

### b.    Plaintiffs vulnerability to retaliation.

Plaintiffs are not unusually or uniquely vulnerable to retaliation.  In <u>Advanced Textile Corp.</u>, non-resident garment workers living and working in the U.S. Commonwealth of the Northern Marina Islands sued under the Fair Labor Standards Act, alleging that they "fear that if their true identity is revealed, they will face actual physical violence, the threat of physical violence, immediate deportation to China or their country of origin, likely arrest upon arrival in China or their country of origin . . . and economic retaliation." <u>Id.</u> at 1063.  The economic retaliation included factory managers' actual threats of "termination, blacklisting, deportation, and closing the factory." <u>Id.</u> at 1065. Plaintiffs resided in company housing, and "at least some employers attempt to prevent their employees from leaving the 'barracks' without permission." <u>Id.</u> at 1072.  Plaintiffs in <u>Advanced Textile Corp.</u> were among the most powerless: indebted factory workers dependent on their employers for wages and housing, and who could be deported if their defendant employer chose to retaliate against them, and they were permitted to begin their litigation anonymously because of "their highly vulnerable status." <u>Id.</u> at 1069.

Plaintiffs here are the opposite: wealthy persons living in the United States who have stored from $199,950 to $1,194,750 in safe deposit boxes.  Far from a downtrodden factory worker toiling thousands of miles from his home in substandard conditions, plaintiffs are members of the economically elite whose personal circumstances bear little resemblance to those of Advanced Textile Corp.'s vulnerable plaintiffs.

### 2.   The Prejudice To The Government And the Public's Interest.

The government will suffer severe prejudice if plaintiffs are allowed to proceed using pseudonyms in seeking the return of property, as the government needs to show that the property is subject to forfeiture, in order to defeat plaintiffs' action.  In doing so, the government must rely upon the applicable aggregate of the facts test to show that the combination of facts indicating illegal activity, taken together, establish circumstantially that an asset is sufficiently linked to illegal activity (such as a drug crime) to support the asset's forfeiture.  United States v. U.S. Currency, $42,500.00, 283 F.3d 977, 980-82 (9th Cir. 2002).[4]  Because plaintiffs will not reveal their identity, the government cannot obtain discovery as to relevant facts, including whether plaintiffs have a criminal history or sufficient sources of legal income to justify their possession of the hundreds of thousands of dollars in their boxes.[5]  Also, assuming plaintiffs identify the persons who provided the seized funds to them, the government must depose those persons to verify the information, but those parties are unlikely to maintain plaintiffs' confidentiality. Courts have found prejudice if anonymity interferes with the defendant's ability to

---

[4] Because the government is entitled to prove forfeitability circumstantially, it is not required to trace assets to particular drug transactions.  United States v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1435 n.4 (9th Cir. 1985).  Courts recognize that the clandestine nature of drug activity typically makes direct evidence of the drug activity (e.g., records reflecting dates, parties and monies paid for drug activity) unavailable.  Proof linking assets to illegal activity "is likely to be circumstantial, revealing unexplained wealth in conjunction with evidence of drug trafficking." United States v. Daccarett, 6 F.3d 37, 56 (2d Cir. 1993) (internal quotation marks and citation omitted).

[5] See, e.g., United States v. $22,474.00 in U.S. Currency, 246 F.3d 1212, 1217 (9th Cir. 2001) (prior drug conviction is probative to establish the link); United States v. Thomas, 913 F.2d 1111, 1116 (4th Cir. 1990) ("history of illegal drug activity," including drug arrests and convictions are probative of asset-drug trafficking link).

address specific allegations or is logically impracticable.[6]

Finally, this case is a matter of public interest, and articles about it have appeared in the press.  The public interest is served by open court actions where the litigants' identities and claims are known .  Allowing a party to sue using a pseudonym obstructs "the common law rights of access to the courts and judicial records."  Kamehameha Schools, 596 F.3d at 1042; Advanced Textile Corp., 214 F.3d at 1067 ("[p]laintiffs' use of fictitious names runs afoul of the public's common law right of access to judicial proceedings") (citations omitted); Stoterau, 524 F.3d at 1018 ("[i]dentifying the parties to a proceeding is an important dimension of publicness.  The people have a right to know who is using their courts") (internal quotes omitted).

## IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that its motion be granted and plaintiffs' complaint be dismissed without leave to amend.

Dated: July 26, 2021                    Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
ANDREW BROWN
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys
Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

---

[6] See Advanced Textile Corp., 214 F.3d at 1072 ("[w]e recognize that at some later point in the proceedings it may be necessary to reveal plaintiffs' identities to defendants so that defendants may refute individualized accusations of FLSA violations"); Jessica K. v. Eureka City Schools Dist., 2014 WL 689029, *5 (N.D. Cal. Feb. 21, 2014) (defendants prejudiced because "the matter likely involves extensive discovery directed at third parties, such as school children," and "[i]t would be most impracticable to expect deponents or interviewees-such as classmates who alleged harassed plaintiffs or witnessed such claimed events-to attend depositions and then keep the contents of such depositions secret . . . or to keep mum about who they think is accusing them"); Doe v. John F. Kennedy Univ., 2013 WL 4565061, *4 (N.D. Cal. Aug. 27, 2013) ("it is unclear how Defendants would interview potential witnesses to gather facts or to assess Plaintiff's credibility if they could not disclose her name.  Third party discovery would be similarly awkward and difficult").