Eric Honig (CSBN 140765)
LAW OFFICE OF ERIC HONIG
A Professional Law Corporation
P.O. Box 10327
Marina del Rey, CA 90295
erichonig@aol.com
Telephone:  (310) 699-8051
Fax:  (310) 943-2220

ERIC D. SHEVIN (CSBN 160103)
Shevin Law Group
15260 Ventura Boulevard, Suite 1400
Sherman Oaks, California  91403
eric@shevinlaw.com
tel. 818-784-2700
fax 818-784-2411

RICHARD M. BARNETT (CSBN 65132)
A Professional Law Corporation
105 West F Street, 4th Floor
San Diego, CA 92101
richardmbarnett@gmail.com
Telephone: (619) 231-1182
Facsimile: (619) 233-3221

PAUL L. GABBERT (CSBN 74430)
2530 Wilshire Boulevard
Second Floor
Santa Monica, CA 90403
plgabbert@aol.com
Telephone: 424 272-9575
Facsimile: 310 829-2148

Michael S. Chernis  (CSBN 259319)
CHERNIS LAW GROUP P.C.
Santa Monica Water Garden
2425 Olympic Blvd.
Suite 4000-W
Santa Monica, CA 90404
Michael@chernislaw.com
Tel:  (310) 566-4388
Fax: (310) 382-2541

Devin J. Burstein (CSBN 255389)
Warren & Burstein
501 West Broadway, Suite 240
San Diego, California 92101
db@wabulaw.com
Telephone: (619) 234-4433

Attorneys for Plaintiffs Does 1-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DOES 1-6, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,  and MERRICK GARLAND, in his official capacity as United States Attorney General,<br><br>Defendants. | No.: 2:21-cv-03254-MCS-SK<br><br>PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE COMPLAINT;  DECLARATION; EXHIBITS<br><br>HRG DATE:      9/7/21<br>TIME:              9:00 a.m.<br>CTRM:            850 Roybal Fed. Bldg. |

# TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   COMPLAINT ALLEGATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

III.  ADDITIONAL FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

IV.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      A.   Judicial Standard for Fed.R.Civ.P. 12(b)(1) and 12(b)(6) motions.. . . .  7

      B.   The Court has subject matter jurisdiction over Plaintiffs' claims.. . . . .  8

           1.   The Court has jurisdiction over Plaintiffs' Constitutional
                claims.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

           2.   The Court also has jurisdiction over claims seeking APA
                relief... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

           3.   The Court has jurisdiction over Plaintiffs' Rule 41(g)
                equitable claims as to the gold, jewelry and currency for
                which no seizure notice was served or published... . . . . . . . .  11

           4.   The Court also has jurisdiction over Plaintiffs' Rule 41(g)
                equitable claims as to the currency, because a) administrative
                forfeiture proceedings have been suspended, and b)
                Defendants never provided Constitutionally adequate seizure
                notices within 60 days, thereby requiring the seized property
                to be returned.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

      C.   Plaintiffs have stated a claim upon which relief can be granted in their
           cause of action to stay discovery until their Fourth Amendment claims
           are determined. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

      D.   Defendants are collaterally estopped from opposing Plaintffs'
           request to litigate using pseudonyms, which the Court nevertheless
           should allow.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

V.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

i

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). . . . . . . . 17

*Autotel v. New Bell. Co.*, 697 F.3d 846, 840 (9ᵗʰ Cir. 2012). . . . . . . . . . . . . . . . . . . 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). . . . . . . . . . . . . . . . . . . . . . . . 8

*Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281
(1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*,
402 U.S. 313 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). . . . . . . . . . . . . . . . . . . . 17

*Carr v. District of Columbia*, 646 F.2d 599, 608 (D.C.Cir.1980). . . . . . . . . . . . . . 17

*Charles Coe v. United States of America*, 2:21-cv-3019-RGK-MAR
(C.D. Cal. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 16, 17, 18, 19

*City of Oakland v. Lynch,* 798 F.3d 1159, 1162, 1165, 1166-67
(9ᵗʰ Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Does I thru XXIII v. Advanced Textime Corp.*, 214 F.3d 1058, 1068
(9ᵗʰ Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hinkle N.W., Inc. v. S.E.C.*, 641 F.2d 1304, 1308–09 (9th Cir. 1981). . . . . . . . . . . . 17

*Kidd v. Mayorkas*, WL 1612087, at *8 (C.D. Cal. Apr. 26, 2021). . . . . . . . . . . . . . 10

*Kingman Reef Atoll Investments, L.L.C., v United States*, 541 F.3d 1189, 1197
(9ᵗʰ Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9ᵗʰ Cir. 2008). . . . . 8

*Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). . . . 17

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552
(1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ii

*Snitko v. United States*, No. 2:21-cv-4405-RGK-MAR (C.D. Cal. 2021). . . . . . .   5, 20

*Starker v. U.S.*, 602 F.2d 1341, 1350 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . .   17

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221,
        1225 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*United States v. Assorted Jewelry with an Approximate Value of $219,860.00*,
        386 F.Supp.2d 9 (D.Puerto Rico 2005).  . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*U.S. v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*,
        461 U.S. 555, 569 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*United States v. $10,000.00 in U.S. Currency,* 2007 WL 23303181
        (S.D.Cal. Aug. 13, 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1016
        (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

*United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 948–949
        (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*United States v. $200,255.00 in U.S. Currency,* 2006 WL 1687774
        (M.D.Ga. June 16, 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1169
        (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

**FEDERAL STATUTES AND RULES**

Administrative Procedures Act ("APA"), 5 U.S.C. §701 et seq.. . . . . . . . .   1, 9, 10, 11

Fed.R.Civ.P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 8

Fed.R.Civ.P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7, 8, 18

Fed.R.Crim.P. 41(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

United States Constitution, Fourth Amendment. . . . . . . . . . . . . . . . . . . . . . .   *passim*

United States Constitution, Fifth Amendment. . . . . . . . . . . . . . . . . . . . . . . . .   *passim*

5 U.S.C. §551(10)(B), (D); (13). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

iii

5 U.S.C. §704.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

18 U.S.C. §983(a)(1)(A)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

18 U.S.C. §983(a)(1)(F). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9, 10, 12

18 U.S.C. §983(a)(3)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 16

18 U.S.C. §983(a)(3)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14, 16

19 U.S.C. §1607(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

28 U.S.C. §1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 7

28 C.F.R. §8.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

iv

# I.  INTRODUCTION

Defendants move to dismiss the complaint, arguing the Court lacks subject matter jurisdiction to hear either their (and the putative class members'[1]) equitable claims under Fed.R.Crim.P. 41(g) or their claims under the Administrative Procedures Act ("APA").  They also argue that Plaintiffs (and the putative class members) should not be allowed to proceed using a pseudonym in this case or in the government's potential judicial civil forfeiture cases against their seized property, and that the Court should not stay civil discovery in this case and in potential civil forfeiture cases against box holders' property until their Fourth Amendment challenge to the USPV search is heard and determined.

Defendants' motion should be denied, since the Court has subject matter jurisdiction over all of the Complaint's claims. Also, Plaintiffs have stated a cause of action both for them and those class members who wish to contest forfeiture pseudonymously, and for a stay of discovery in this and all related civil forfeiture cases until the Court first determines the classes' Fourth Amendment motion.

# II.  COMPLAINT ALLEGATIONS

Plaintiffs' class action complaint invokes federal question jurisdiction under 28 U.S.C. §1331 for violations of the United States Constitution Fourth Amendment and Fifth Amendment Due Process Clause and the laws of the United States.  ECF 1, ¶¶1,

---

[1]  Plaintiffs, concurrently with Defendants' instant motion to dismiss, have filed a motion for certification of classes of USPV safe deposit box holders seeking the same relief requested in their complaint, and also a motion for a preliminary injunction and for the return of the contents of the seized boxes, pending further judicial forfeiture proceedings.  All motions are set for hearing on the same date. *See* ECF 37 and 38.

2.  They seek declaratory and injunctive relief as a result of the unlawful search and seizure of their property and deprivation of their Constitutional rights, and seek return of their property pursuant to Fed.R.Crim.P. 41(g), *inter alia*.  *Id.*, ¶¶3,4, 5.

Plaintiffs Does 1-6 stored non-contraband property in safe deposit boxes at US Private Vaults ("USPV"), which the defendant government seized and still holds.  *Id.*, ¶8.  Defendants are unaware of the Doe Plaintiffs' identities and have stated their intent to initiate a criminal investigation of Plaintiffs if Plaintiffs disclose their identities. Plaintiffs therefore bring this claim pseudonymously to protect themselves from the risk of criminal prosecution, *inter alia*.  *Id.*, ¶10.

Plaintiffs each maintained a key to their individual boxes in which they stored property, as follows: 1)  Does1 and 2 – Box Nos. 5006 and 4105 (currency and gold); 2)  Doe 3 – Box No. 6710 (currency, gold and jewelry); 3) Doe 4 – Box No. 4300 (currency); 4) Doe 5 – Box No. 400 (currency); 5)  Doe 6 – Box No. 40 (currency, gold and jewelry).  *Id.*, ¶11.

USPV leases these boxes on an annual basis and provides security and insurance for their contents. USPV did not keep a key to any rented boxes, so the only one who can open the box is the renter or their authorized designee.  *Id.*, ¶23.  USPV provides several enhanced privacy and security features, including: a) customers are identified by encrypted biometric information in the form of an iris scan; b) box holders access their boxes through iris scan or biometric hand geometry scan; and c) 24/7 video monitoring at ADT's central station, and motion detectors, heat sensors, and other sophisticated security measures to detect the presence of intruders after

2

regular business hours.  *Id.*, ¶26.

In March 2021, Defendants searched the premises of USPV along with all of the individual boxes and seized Plaintiffs' and class members' property without particularized probable cause.  Defendants intend to criminally investigate each of them if their identities are revealed to the government. *Id.*, ¶¶29-33.

Plaintiffs seek return of their property pursuant to the U.S. Constitution for violations of their Fourth and Fifth Amendment rights, Fed.R.Crim.P. 41(g) and 5 U.S.C. §701 et seq.  They also seek declaratory and/or injunctive relief allowing them to use a pseudonym to seek return of their property. Alternatively, they ask the Court to appoint a special master to administer their claims and/or to allow them to file their claims under seal so they may remain anonymous to law enforcement, thereby preserving their Fifth Amendment rights.  *Id.*, ¶¶35-45, 52-55.

Plaintiffs also seek an order that civil discovery be stayed until the Court first determines whether the government violated Plaintiffs' Fourth Amendment rights, e.g., until after Plaintiffs file and the Court decides Plaintiffs' motion to suppress the evidence seized from the search of their USPV boxes. *Id.*, ¶¶46-48.[2]  Finally, Plaintiffs seek an order enjoining Defendants from spoliation of evidence (and they intend to ask the Court to order sanctions against Defendants if evidence is destroyed or lost).  *Id.*, ¶¶49-51.[3]

---

[2]  The Complaint also sought to stay the deadlines for filing administrative and judicial forfeiture claims, but Plaintiffs are waiving that part of their Fourth Cause of Action.

[3]  Defendants have not moved to dismiss this, the Fifth Cause of Action.

3

# III. ADDITIONAL FACTS

Defendants represented in the USPV search warrant affidavit that it would only "authorize the seizure of the nests of the boxes themselves, <u>not</u> their contents;" thus, the warrant specifically disallowed agents from conducting a criminal search or seizure of the contents of the safe deposit boxes. Instead, the warrant allowed only that government agents "shall follow their written inventory policies to protect their agencies and the contents of the boxes," and "shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property." *See* Appendix to ECF 20 (underlined emphasis in original).[4]

Defendants, however, have refused to return Plaintiffs' property unless they identify themselves. ECF 23, Order denying TRO, p. 2. Defendants confirmed they intend to criminally investigate Plaintiffs and other box holders if they identify themselves, and that the burden has been placed on them to convince the FBI that they obtained their property legally. "Thus, for Plaintiffs to vindicate their Fourth Amendment right to be free from unreasonable searches and seizures, they must forfeit their Fifth Amendment right against self-incrimination." *Id.*, p. 3.

In a TRO in a related case, this Court held that the FBI's Notice of Seizure did

---

[4]  Paragraph 108 of the redacted warrant affidavit further states that agents "will follow their written inventory policies **to protect their agencies from claims of theft or damage to the contents of the boxes**, and to ensure that no hazardous items are unknowingly stored in a dangerous manner. *Id.* (emphasis added). Footnote 40 to the affidavit states that "[t]he FBI policy regarding taking custody of an unknown person's property provides, in part, that agents 'inspect the property as necessary to identify the owner and preserve the property for safekeeping.' **The inspection 'should extend no further than necessary to determine ownership**.'" *Id.* (emphasis added). Thus, the warrant made it clear that the government was allowed to inspect and seize the contents of the individual boxes for the limited purpose of identifying the rightful owners of the box contents and to ensure the safety of those contents.

not comply with due process or controlling case law, because it did not provide either 1) the factual basis, or 2) the specific statutory provisions that the government maintained justified forfeiture of the property seized from each USPV box. *Snitko v. United States*, No. 2:21-cv-4405-RGK-MAR, ECF 52, p. 4. Based on the FBI's May 20, 2021 inadequate forfeiture notice, the Court thus preliminarily enjoined the government from civilly forfeiting the property of the USPV box holders "without first sending forfeiture notices that identify the specific factual and legal basis for the Government's determination to commence civil forfeiture proceeding." *Snitko*, ECF 58, p. 5. Plaintiffs and their attorneys are not aware of Defendants serving any USPV box holders with or publishing a revised seizure notice that comports with due process and the Court's order. Declaration of Eric Honig, ¶3.

Plaintiff Does 1-6 requested a TRO prohibiting the FBI from rejecting administrative forfeiture claims filed by box holders using a pseudonym. In its Order, the Court explicitly stated that the government "cite[d] no federal statute, regulation, or procedural rule that requires claimants in an administrative forfeiture proceeding to identify themselves by their **legal names**, nor is the Court aware of such legal authority." ECF 29, p. 3 (emphasis added). The Court further stated that it "presumes that the Government will conduct the administrative forfeiture proceedings in a manner consistent with law." *Id*.

Plaintiff DOES 1-6 each filed pseudonymous administrative forfeiture claims to the currency in their USPV safe deposit boxes for which notice was served on USPV and/or published, and the FBI accepted these claims. ECF 33, 13:20-22; ECF

38, 10:27-11:5;[5] *see also, e.g.*, ECF 37-3.  As of the filing of this Opposition, Defendants have not notified Plaintiffs of the filing of any judicial forfeiture action against their currency.  Declaration of Eric Honig, ¶4.

The FBI has not published notice or served a written notice of seizure for other property contained in Plaintiffs' boxes: 1) the gold contained in Box 5006, 2) the currency in Box 4105,[6] 3) the gold and jewelry in Box 6710, and 4) the gold and jewelry in Box 40.  See ECF 39-1, ¶¶4-5; ECF 39-2, ¶¶4-5; ECF 39-3, ¶4; ECF 39-6, ¶4. In addition, although the FBI's global notice listed 10 pages showing 115 boxes containing personal property such as gold and jewelry, its published notices do not include any of that personal property seized from those USPV boxes – only currency. Exhibit A, pp. 11-20 (Asset ID ## 21-FBI-003330 to 3444; Exhibit B, FBI "Official Notification" of seizures on the government's forfeiture.gov website (June 28, 2021).

In a July 23, 20211 Order denying Defendants' motion to dismiss in another related case – which is on point with the issues in the instant case – this Court held that the government's argument that the plaintiff there could not establish the Court's equitable jurisdiction over their Rule 41(g) claim for return of property "ignores the fact that Plaintiff asserts a claim for violations of the Fourth and Fifth Amendment, over which it appears the Court has federal question jurisdiction pursuant to 18

---

[5] "ECF 33, 13:20-22" is a citation to the Court's CM/ECF filing number (33), the ECF page number (13), and the line numbers on the page, a format Plaintiffs have used throughout this Opposition.

[6] Defendants' Statement of Facts alleged that Box 4105 contained no assets, citing to its Murray Declaration, ¶2. ECF 33, 13:11-14.  Nowhere in that declaration, however, does Murray make that statement. See ECF 33-2.  Accordingly, Plaintiffs request the Court to strike that erroneous statement from Defendants' motion to dismiss.

U.S.C. §1331.  Because the Government does not challenge this Court's exercise of federal question jurisdiction over Plaintiff's Fourth and Fifth Amendment claim, the Government's Motion is denied as to that claim."  *See Charles Coe v. United States of America*, 2:21-cv-3019-RGK-MAR, ECF 49, p. 4.

Moreover, since that plaintiff identified the box rented and the government continues to seize the contents, then those allegations stated plausible claims (upon which relief could be granted) for violation of the Fourth and Fifth Amendments and for return of property.  *Id.*, p. 5. This Court further held that the plaintiff's asserted need for anonymity outweighed any prejudice to Defendants and the public's interest in knowing their identity, and thus it denied the government's motion to dismiss based on the plaintiff's use of a pseudonym.  *Id.*, pp. 5-8.

IV.  ARGUMENT

A.   Judicial Standard for Fed.R.Civ.P. 12(b)(1) and 12(b)(6) motions.

Federal courts are courts of limited jurisdiction and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).  A party may move to dismiss a claim for lack of subject matter jurisdiction.  Fed.R.Civ.P. 12(b)(1).  When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of establishing jurisdiction.  *Kingman Reef Atoll Investments, L.L.C., v United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  "To survive a motion to

7

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable.  *Iqbal*, 556 U.S. at 678.  A plaintiff need not provide detailed factual allegations, but must provide more than mere legal conclusions.  *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, the Court must accept well-plead factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *See Autotel v. New Bell. Co.*, 697 F.3d 846, 840 (9th Cir. 2012).  Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

B.   The Court has subject matter jurisdiction over Plaintiffs' claims.

**1.   The Court has jurisdiction over Plaintiffs' Constitutional claims**.

As in the *Charles Coe* case, Defendants' motion to dismiss here does not challenge this Court's exercise of federal question jurisdiction over Plaintiffs' Fourth and Fifth Amendment claims raised in each of the complaint's five causes of action. *See Coe*, 2:21-cv-3019, ECF 49, p. 4, ¶IV.A; *see also* ECF 1, pp. 10-14.[7]  The Court

---

[7]  The Complaints' First, Third, Fourth and Fifth Causes of Action sought relief pursuant to **both** the U.S. Constitution and the APA. If the Court believes it is necessary to clarify, Plaintiffs hereby request leave to amend to separate their Constitutional and statutory claims more distinctly.  *See infra*.

has subject matter jurisdiction over those Causes of Action and the Constitutional claims raised therein, and should deny Defendants' motion to dismiss.

**2.     The Court also has jurisdiction over claims seeking APA relief.**

Plaintiffs also have sought relief pursuant to the APA, which provides that a plaintiff must be seeking non-monetary relief for legal wrongs resulting from a final action undertaken by an agency, and show a lack of another adequate judicial remedy. 5 U.S.C. §704.  As for Plaintiff Does 1, 2, 3 and 6, the defendant government has failed to serve or publish notice of its seizure of the gold and jewelry (and the currency in Box 4105) from their USPV safe deposit boxes, and thus is still holding their property without providing a remedy.  Since 60 days have passed without service of notice, a final action has been taken by the seizing agency, the FBI, in violation of the forfeiture statute, 18 U.S.C. §983(a)(1)(A)(i) and (F).  That final action is the decision to not provide notice of the seizure within the statute of limitations.  *See infra*.

Since the government has not served notice while still holding Plaintiffs' property, and has not filed a civil judicial forfeiture complaint, Plaintiffs do not have an adequate legal remedy with which to challenge the seizure.  The *City of Oakland v. Lynch* case primarily relied upon in Defendant's motion is inapposite, since the government there **had** commenced civil judicial forfeiture proceedings, providing the plaintiffs with a forum to contest forfeiture of their property.  798 F.3d 1159, 1162, 1165, 1166-67  (9th Cir. 2015)(filing of a judicial forfeiture action simply makes evident the Government's intention to challenge the status quo; any rights,

9

obligations, and legal consequences are to be determined later by a judge).  Since in the instant case no forfeiture action has been filed, there is **not** another adequate remedy, making the *City of Oakland* case inapplicable.

The government's decisions to search and seize Plaintiffs' property, and not to serve a notice of seizure or to file a judicial forfeiture action is "final," because they are acts "by which rights or obligations have been determined, or from which legal consequences will flow," i.e., the search, seizure and continued possession of Plaintiffs' property without providing them a legal remedy to seek return of their property.  *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997); *see also* 5 U.S.C. §551(10)(B), (D); (13); *Kidd v. Mayorkas*, WL 1612087, at *8 (C.D. Cal. Apr. 26, 2021)(ruses to gain entry to people's homes, thereby violating the Fourth Amendment, constituted "final agency action").  Accordingly, this Court has subject matter jurisdiction under the APA to determine Plaintiffs' claims pursuant to the Fourth and Fifth Amendment and 18 U.S.C. §983(a)(1)(F) contesting the government's continued possession of their gold, jewelry and currency.

Similarly, regarding the currency seized from Plaintiffs' other USPV boxes, this Court held that Defendants' seizure notices were not Constitutionally adequate, and barred the government from civilly forfeiting property for which such defective notice was provided.  Despite the Court's order, the FBI apparently has refused to revise its notices so as to comport with due process – another final agency action.

This refusal by Defendants to revise their inadequate seizure notices – coupled with the non-existence of any judicial forfeiture actions against Plaintiffs' currency,

10

gold and jewelry – leaves Plaintiffs with no adequate legal remedy to contest this due

process violation.  Accordingly, this Court has subject matter jurisdiction under the

APA to determine Plaintiffs' claims.

**3.**     **The Court has jurisdiction over Plaintiffs' Rule 41(g) equitable claims as to the gold, jewelry and currency for which no seizure notice was served or published.**

Defendants' motion argued that the Court does not have equitable jurisdiction

over Plaintiffs' claims pursuant to Fed.R.Crim.P. 41(g) because Plaintiffs purportedly

have an adequate remedy in judicial civil forfeiture proceedings.  As Defendants

admit, however, Rule 41(g) complaints for return of property are appropriate "where

property return is sought **and no criminal or civil judicial action seeking forfeiture**

**of the property is pending**."  ECF 33, 15:14-16 (emphasis added).   No such action,

however, is pending as to a large amount of the contents seized from the USPV

boxes.  Defendants have not provided written or published[8] notice as to the property

and $20,000 in currency contained in the boxes maintained by Does 1, 2, 3 and 6, or

the gold, jewelry, coins and other property in the other putative class members'

boxes.  *See* Exhibits A[9] and B, *supra*.

If the government does not serve or publish notice of a seizure, **it shall return**

**the property to that person**, without prejudice to the right of the government to

---

[8]  Before forfeiting property, the seizing agency must publish notice for at least three weeks and must also send "[w]ritten notice of seizure together with information on the applicable procedures ... to each party who appears to have an interest in the seized article." 19 U.S.C. §1607(a)

[9]  Exhibit A did not list either Doe 1's and Doe 6's gold contained in Box 5006 or their currency in Box 4105; Doe 3's gold and jewelry in Box 6710; or Doe 6's gold and jewelry in Box 40.

11

commence a forfeiture proceeding at a later time. 18 U.S.C. §983(a)(1)(F); *see also United States v. $10,000.00 in U.S. Currency,* 2007 WL 2330318, at *1 (S.D.Cal. Aug. 13, 2007)(granting summary judgment and return of property due to government's failure to provide timely notice after seizure); *United States v. $200,255.00 in U.S. Currency,* 2006 WL 1687774 (M.D.Ga. June 16, 2006)("in the absence of timely notice, the seizing agency must return the seized property"); *United States v. Assorted Jewelry with an Approximate Value of $219,860.00,* 386 F.Supp.2d 9 (D.Puerto Rico 2005)(dismissing judicial forfeiture action and returning property to claimant where the government failed to provide timely notice after seizure).

Accordingly, the Court has equitable jurisdiction pursuant to Rule 41(g) over the claims of Does 1, 2, 3 and 6 (and the claims of the other putative class members) requesting return of their property for which the FBI failed to serve them with written or published notice of seizure.  *See also*, ECF 38, Plaintiff's Motion for a Preliminary Injunction and for Return of Property.

**4.  The Court also has jurisdiction over Plaintiffs' Rule 41(g) equitable claims as to the currency, because a) administrative forfeiture proceedings have been suspended, and b) Defendants never provided Constitutionally adequate seizure notices within 60 days, thereby requiring the seized property to be returned.**

Defendants also argue that since it commenced administrative forfeiture proceedings as to Plaintiffs' **currency**, and must file a judicial forfeiture action within 90 days after the FBI received their "valid" claim or else release the property, then Plaintiffs have an adequate remedy in a yet-to-be-filed forfeiture proceeding and thus equitable jurisdiction does not lie.  ECF 33, pp. 15-19.  However, there currently is no

adequate remedy for Plaintiffs other than the claims in their Complaint.

First, Defendants' motion admitted that by accepting Plaintiffs' valid administrative claims, the FBI has **suspende**d its administrative forfeiture proceedings against Plaintiffs' currency. *See* ECF 33, p. 16, fn. 2.[10]  As of the filing of this Opposition, no judicial forfeiture proceedings have been filed against their property.  Accordingly, there currently are no administrative or judicial forfeiture proceedings pending against Plaintiffs' property, and thus no other remedy exists to seek return of their property. *U.S. v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 569 (1983)(if the claimant believes the initial seizure was improper, he could file a motion under Fed.R.Crim.P. 41).

None of the cases cited in Defendants' motion address this lack of a remedy after the FBI suspends its administrative proceedings and when no judicial forfeiture proceeding has been filed.  The cases state only that the court no longer has jurisdiction to entertain a Rule 41(g) action "once a civil forfeiture action has been filed" and "if a related civil forfeiture proceeding is filed" before or after a Rule 41(g) motion is brought, because "[a] civil forfeiture proceeding gives the claimant an adequate remedy at law."  See ECF 33, 17:4-19.  Since the FBI's administrative proceedings have been suspended and no judicial forfeiture action has been filed

---

[10] Defendants' motion suggested that although the FBI accepted Plaintiffs' timely-filed administrative forfeiture claims, the claims were improper because they used pseudonyms. Defendants tried to "apologize" for making "confusing" arguments against the use of pseudonyms. ECF 33, pp. 19-20. Nevertheless, the Court should not give any stock to Defendants' transparent request for reconsideration of the Court's prior order, which stated that there was no requirement for property owners to use their given names when filing those claims. The regulation Defendants "forgot" to cite previously (28 C.F.R. §8.10) similarly does not require claimants to use their given names when identifying themselves in their administrative claim.

against Plaintiffs' property, Rule 41(g) provides an equitable remedy at this time.[1]

Second, as this Court held, *supra*, the seizure notices provided to box holders were both Constitutionally and statutorily defective, because they did not provide either the factual basis or the specific statutory provisions to justify any forfeiture proceedings in the first place.  Merely by filing a timely administrative claim to avoid the FBI issuing a "declaration of administrative forfeiture" by default (the equivalent of a court judgment of forfeiture in a judicial case), *see* ECF 33, p. 16, fn. 2, Plaintiffs did not waive their objections to this defective notice. Unless and until the FBI complies with due process by informing a property owner of the factual and legal basis for the seizure, Defendants' administrative forfeiture proceedings are defective and thus may not civilly forfeit Plaintiffs' property.

As shown above, if the government does not send notice of a seizure of property in accordance with the statute (i.e., notice comporting with due process) to the person from whom the property was seized, and no extension of time is granted, it shall return the property to that person. The forfeiture statute, *supra*, thus requires the Court to order return of Plaintiffs' property pursuant to Rule 41(g) based on the Defendants' failure to timely initiate Constitutionally-adequate administrative forfeiture proceedings.

Therefore, federal forfeiture law in no uncertain terms requires that if the government does not provide a property owner with due process notice of seizure

---

[1] The fact that the government is allowed an additional 90 days – and potentially longer – to either file judicial proceedings against the currency or return it (see 18 U.S.C. §983(a)(3)(A) and (B)) does not change the fact that there currently are no forfeiture proceedings pending against Plaintiffs' property.

14

within 60 days after the seizure date, then it must return the property to its owner, notwithstanding any potential judicial forfeiture proceedings. *See United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1016 (9th Cir. 2013)(failure to provide timely notice does not require the government to return the property **if it has subsequently commenced** a forfeiture proceeding). Thus, this Court also has jurisdiction over Plaintiffs' Rule 41(g) claims for return of their currency.

C.   <u>Plaintiffs have stated a claim upon which relief can be granted in their cause of action to stay discovery until their Fourth Amendment claims are determined</u>.

The Complaint seeks a stay of discovery by Defendants until the Court determines box holders' motion to suppress evidence seized in the FBI's illegal search of the USPV boxes.  As shown herein, Plaintiffs have pled plausible claims seeking relief based on the government's violation of their Fourth Amendment rights. *See*, Section B.1, *supra*, and fn. 14, *infra*.  Thus, their claims for a stay of discovery are ripe now.

Concurrently with Defendants' motion, Plaintiffs have filed a motion for class certification seeking to represent all putative class members in one action.  For the sake of judicial economy, Plaintiffs in this action wish to file one joint motion to suppress evidence on behalf of the six of them and the class members (assuming the classes are certified).  The bench in this District should not have to face several hundred motions to stay discovery and several hundred motions to suppress evidence in several hundred related cases based on the one simultaneous search of 800 boxes at USPV.

In addition, Defendants do not need discovery from Plaintiffs and the other box

15

1
2       holders to determine whether the initial search and seizures were legal, so there is no

3       prejudice to Defendants if a stay of discovery were ordered.  Plaintiffs and the class

4       member box holders, on the other hand, would suffer hardship if they must incur the

5       costs of conducting discovery before their Fourth Amendment motion is heard.  *See*

6       ECF 33, 23:16-19.[12]  Thus, this issue is "fit for judicial decision" now.

7       D.    <u>Defendants are collaterally estopped from opposing Plaintffs' request to litigate
             using pseudonyms, which the Court nevertheless should allow</u>.

8
9              Defendants oppose Plaintiffs' request that the Court allow them to seek return

10      of their property using a pseudonym instead of their given names, arguing,

11      erroneously, that Plaintiffs seek to proceed anonymously  "so that not even the

12      government or the Court knows who they are."  ECF 25:15-18.  That statement is not

13      true. Defendants' motion **did not raise any opposition** to Plaintiffs' alternative

14      request that the Court 1) appoint a special master to administer their judicial claims,

15      and/or 2) allow Plaintiffs to file **under seal** any pleadings to remain anonymous to

16      law enforcement, **not to the Court.**  Thus, the Complaint specifically requests in the

17      alternative that the Court know who they are.[13]

18
19             Defendants here raised the identical arguments they raised in their motion to

20      dismiss the anonymity request by the plaintiff in the *Charles Coe* case, *supra*.

21

22
23             [12] Although no judicial forfeiture cases have been filed as yet against their
        property, by the time the Court decides the parties' cross motions, Defendants will be
24      required to either file judicial forfeiture cases or return Plaintiffs' property. 18 U.S.C.
        §983(a)(3)(A), (B)(90-day filing deadline).  Thus, in the alternative, the Court can defer
25      ruling or deny without prejudice this portion of Defendants' motion to dismiss until it
        determines the number of judicial civil forfeiture cases Defendants have filed.

26             [13] Accordingly, even if the Court decides Plaintiffs may not seek return of their
        property pseudonymously, their alternative request in that Cause of Action for
27      appointment of a special master or to file pleadings under seal still remains viable.

28                                                16

Compare *Charles Coe*, 2:21-cv-3019-RGK-MAR, ECF 33, pp. 21-28, with the instant motion, ECF 33, pp. 25-30.  In *Coe*, this Court denied the government's motion to dismiss the plaintiff's request to use a pseudonym.  Consequently, Defendants should be collaterally estopped from raising that identical argument here.

Collateral estoppel, like the related doctrine of res judicata, serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).  Courts have abandoned the requirement of mutuality of parties, conditionally approving the non-mutual "offensive" use of collateral estoppel by a non-party to a prior lawsuit.  *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

Collateral estoppel may be invoked against the government, and may be invoked not only on issues of fact, but on mixed issues of law and fact or pure issues of law.  *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Carr v. District of Columbia*, 646 F.2d 599, 608 (D.C.Cir.1980).  The Ninth Circuit also has approved the use of collateral estoppel offensively against the government.  *Starker v. U.S.*, 602 F.2d 1341, 1350 (9th Cir. 1979); *Hinkle N.W., Inc. v. S.E.C.*, 641 F.2d 1304, 1308–09 (9th Cir. 1981)(the court was not troubled that petitioners wished to import the finding of a criminal case into civil litigation and sought to estop the United States rather than a private litigant, or that the petitioners

17

were not parties to the previous litigation).

Both the *Coe* case and the instant putative class action arise from the same FBI investigation and seizures from USPV box holders, and the Fourth and Fifth Amendment issues raised in both lawsuits are identical.  In fact, the *Coe* plaintiff ostensibly would be a member of one or more of the putative classes proposed in Plaintiff's concurrent motion for class certification.  *See* ECF 37.  Accordingly, the Court should apply non-mutual offensive collateral estoppel against Defendants here to allow Plaintiffs Does 1-6 to litigate for return of their property using a pseudonym.

Even if the Court does not apply collateral estoppel (although it should), the government reiterated that it intends to criminally investigate anyone who maintained a safe deposit box at USPV that contained a large sum of currency, and stated that the boxes claimed by Plaintiffs each contained large sums of currency.  ECF 33, 13:5-22.  Thus, the government made it clear that it intends to criminally investigate Plaintiffs, implicating their Fifth Amendment rights against self-incrimination if they contest forfeiture of their money.[14]

Where plaintiffs sue anonymously to shield themselves from retaliation, courts determine the need for anonymity by evaluating: 1) the severity of the threatened harm, 2) the reasonableness of the party's fears, and 3) the party's vulnerability to such retaliation.  The Court also must determine the precise prejudice to the

---

[14] As in the *Coe* case, *supra*, ECF 49 at p. 5, since Plaintiffs here allege they rented their respective USPV boxes, and the government seized and continues to seize the contents of their boxes in violation of their Constitutional rights, then they state plausible claims for violation of the Fourth and Fifth Amendment and for the return of property, and Defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) should be denied.

18

government and whether proceedings may be structured to mitigate such prejudice, and the public's interest.  *Does I thru XXIII v. Advanced Textime Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

Similar to this Court's findings in its order denying dismissal in *Coe*, first, the threatened harm to Plaintiffs is severe, since they allege the government seized their non-contraband property without particularized probable cause, and the government continues to hold their property without justification. "Assuming these allegations are true, requiring Plaintiff[s] to reveal [their] identity to the government for no good reason would be an unjustified invasion of Plaintiff[s'] right to be free from unreasonable seizures and from self-incrimination." *Coe*, 2:21-cv-3019, ECF 49, p. 6.

Second, Plaintiffs' fear "that the Government will subject Plaintiff[s] to an investigation if Plaintiff[s are] not allowed to proceed under a pseudonym is not only reasonable but confirmed by the Government's own briefing." *Id.*  Third, Plaintiffs are vulnerable to retaliation in the form of a criminal investigation (*see supra*).  *Id.*

Fourth, the government does not need to know Plaintiffs' names to file a civil forfeiture complaint, since it must first show probable cause for forfeiture of the seized property at the time it institutes any judicial proceedings. *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1169 (9th Cir.2008); *United States v. $186,416.00 in U.S. Currency*, 590 F.3d 942, 948–949 (9th Cir. 2010).  Plaintiffs also can establish their box ownership (and thus standing) through USPV's biometric

19

scans seized by the government and by producing their keys to the boxes.[15] Moreover, Plaintiffs have requested, alternatively, that the Court appoint a special master to administer claims and/or allow them to litigate under seal.  Thus, anonymity would not prejudice Defendants.

Finally, Plaintiffs allege the government seized their property without particularized probable cause and it has not alleged there is anything illicit about the property in their boxes but wants to criminally investigate them anyway.  Any interest in their using their given names thus does not outweigh the public interest in Fourth and Fifth Amendment issues.  *See* 2:21-cv-3019, ECF 49, p. 8. Accordingly, the Court should deny dismissal of Plaintiffs' request to use pseudonyms.

## V.  CONCLUSION

Plaintiffs respectfully request the Court to deny Defendants' motion to dismiss.

Dated: August 13, 2021                    Respectfully submitted,


                                          /s/   Eric Honig
                                          _____
                                          ERIC HONIG
                                          Attorneys for  Plaintiffs and the Class

_____

[15]  This assumes the government has not inadvertently disabled or broken these biometric scanners and thus its ability to confirm ownership (which would be subject to Plaintffs' currently unopposed spoliation cause of action, *supra*). *See Snitko*, 2:21-4405-RGK-MAR, ECF 51, Declaration of SA Lynne Zellhart, ¶5 (explaining that the FBI has been unable to "duplicate USPV's iris-scan access system despite considerable effort from our technically trained agents and computer team."). Also, it should be noted that Defendants' motion alleged only one false request to claim a box – and that was several months ago.  *See* ECF 33-1, ¶4.

20

## DECLARATION OF ERIC HONIG

I, Eric Honig, declare as follows:

1.     I am an individual over the age of 18.  I am one of the attorneys of record for Plaintiffs in this action.  I have personal knowledge of the facts set forth below and if called to testify I could and would do so competently.

2.     I am lead counsel in this class action case, *DOES 1-6 v. United States*, et al, 2:21-cv-03254-RGK-MAR.  This declaration is being filed in support of Plaintiffs' opposition to the Defendants' motion to dismiss.

3.     Plaintiffs and their attorneys are not aware of Defendants serving any US Private Vault ("USPV") safe deposit box holders with or publishing a revised seizure notice that comports with due process and the Court's order in *Snitko v. United States*, No. 2:21-cv-4405-RGK-MAR, ECF 52.

4.      Plaintiff DOES 1-6 each filed pseudonymous administrative forfeiture claims to the currency contained in the USPV safe deposit boxes they maintained for which notice was served on USPV and/or published, and the FBI accepted these claims.  As of the filing of this Opposition, Defendants have served Plaintiffs or their attorneys nor notified them of the filing of any judicial forfeiture action against their currency.

5.     Exhibit A is a true and correct copy of the Federal Bureau of Investigation's May 20, 2021 "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings" regarding property seized from individual safe deposit boxes held at US Private Vaults ("USPV").  This Notice includes boxes

maintained by Plaintiffs, who I presume and believe remain anonymous to the FBI. Plaintiffs only learned of this Notice indirectly; the notice was not served on them or their counsel by the government.

6.      Exhibit B is a true and correct copy of the FBI's "Official Notification" of seizures (also only currency and no personal property) posted on the government's forfeiture.gov website on June 28, 2021.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 12, 2021 at Marina Del Rey, California.

/s/ Eric Honig

_____
ERIC HONIG

22