TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture/
General Crimes Sections
    1100/1400/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0102/2569/1785
    Facsimile: (213) 894-6269/0142/0141
    E-mail: Andrew.Brown@usdoj.gov
          Victor.Rodgers@usdoj.gov
          Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DOES 1-6, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES OF AMERICA, and MERRICK GARLAND, in his official capacity as United States Attorney General,<br><br>        Defendants. | Case No. 2:21-CV-03254-RGK-MAR<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND DECLARATION OF LYNNE ZELLHART**<br><br>Date:        September 7, 2021<br>Time:        9:00 a.m.<br>Courtroom:  850, the Honorable<br>            R. Gary Klausner |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.    INTRODUCTION ......................................................................................... 1

II.   ARGUMENT ................................................................................................ 3

    A.   Plaintiffs Are Not Entitled To A Preliminary Injunction Or The Return Of Their Property, Pending The Government's Filing Of Judicial Forfeiture Proceedings Against Plaintiffs' Property, Based Upon The FBI's Forfeiture Notices That Commenced Administrative Forfeiture Proceedings ................................................................. 3

        1.   The Court Denied The Request For A Preliminary Injunction In The Related Snitko Case To Boxholders, Like Plaintiffs, Who Have Filed A Claim To Contest The Forfeiture Of Their Property Because Those Boxholders Face No Immediate Threat Of Forfeiture .................................................................................... 3

        2.   Even Assuming The FBI's Forfeiture Notices Standing Alone Are Void. Plaintiffs Are Not Entitled To Return Of Their Property Under 18 U.S.C. § 983(a)(1)(F) Because The Failure To Send A Valid Forfeiture Notice Within 60 Days From The Seizure Of Property Does Not Require That The Government Actually Return The Property Before Filing A Judicial Forfeiture Complaint Against The Property .......................................... 4

        3.   Plaintiffs' Cannot Satisfy Article III's Case Or Controversy Requirement And Their Case Is Not Ripe For Resolution Because The Government Cannot Civilly Forfeit Their Property Without Filing A Judicial Civil Forfeiture Complaint That Complies With Due Process By Setting Forth The Factual And Legal Bases For The Commencement Of Forfeiture Proceedings .................................................................................... 8

        4.   Plaintiffs' Cannot Discharge Their Burden Of Showing That Subject Matter Jurisdiction (Either Equitable or Under The Administrative Procedures Act) Exists Here ...................................... 12

        5.   The Cases Do Not Hold That A Single Notice, Such As The FBI Forfeiture Notice, Standing Alone, Must Include The Factual And Legal Bases That Justify The Forfeiture But Instead Require That The Information Must Be Provided Before A Final Decision Is Made To Conclude The Forfeiture Of An Asset .................................................................................................... 12

    B.   Plaintiffs' Vague And Unclear Request For An Injunction Requiring The Government To Return Personal Property, Which Plaintiffs Describe Only Generally As "Gold And Jewelry" And Assert That Neither FBI Notice Letter Nor FBI Internet Notification Has Been Provided, Should Be Denied ................................................................ 16

        1.   The Government Is Unable To Determine The "Gold And Jewelry" Property Plaintiffs Seek To Have Returned From Their

Boxes, But Is Nevertheless Returning The Few Items From Plaintiffs' Boxes That Might Conceivably Fall Within That Category ............................................................................... 16

2.  Plaintiffs' Request For The Return Of Anyone Else's Personal Property Should Be Denied Because Plaintiffs Have Not Identified The Property They Are Referencing In Any Detail, And Incorrectly Assume That Forfeiture Notice And Internet Publication Regarding That Property Has Not Occurred Or Will Not Occur In The Future ......................................................... 17

III.  PLAINTIFFS  HAVE NOT SATISFIED THE STANDARDS FOR PRELIMINARY INJUNCTIVE RELIEF, AND PARTICULARLY THE IRREPARABLE INJURY REQUIREMENT ....................................... 18

IV.  CONCLUSION .................................................................. 20

DECLARATION OF SPECIAL AGENT LYNNE ZELLHART ................................ 22

ii

# TABLE OF AUTHORITIES

**Federal Cases**

Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of Treasury,
  686 F.3d 965 (9th Cir. 2012) ........................................................... 13

Alliance for Wild Rockies v. Cottrell,
  632 F.3d 1127 (9th Cir. 2011) .................................................... 18, 19

America Unites for Kids v. Rousseau,
  985 F.3d 1075 (9th Cir. 2021) ......................................................... 12

Campbell Soup Co. v. ConAgra, Inc.,
  977 F.2d 86 (3d Cir. 1992) ............................................................... 20

Cardenas v. Anzai,
  311 F.3d 929 (9th Cir.2002) ............................................................ 10

Caribbean Marine Services Co., Inc. v. Baldridge,
  844 F.2d 668 (9th Cir. 1988) ........................................................... 19

Church v. City of Huntsville,
  30 F.3d 1332 (11th Cir. 1994) ......................................................... 20

City of West Covina v. Perkins,
  525 U.S. 234 (1999) .................................................................. 14, 15

D.T. v. Sumner County Schools,
  942 F.3d 324 (6th Cir. 2019) ........................................................... 19

Dahl v. HEM Pharms. Corp.,
  7 F.3d 1399 (9th Cir. 1993) ............................................................. 19

Garcia v. Google, Inc.,
  786 F.3d 733 (9th Cir. 2015) ........................................................... 19

Gete v. I.N.S.,
  121 F.3d 1285 (9th Cir. 1997) ................................................ 12, 13, 14

In re Search Warrants for 27867 Orchard Lake Rd.,
  553 F. Supp. 2d 879 (E.D. Mich. 2008) ........................................... 15

## <u>TABLE OF AUTHORITIES CONTINUED</u>

Juda v. Nerney,
  149 F.3d 1190, 1998 WL 317474 (10th Cir. 1998)......................................... 14

Karnoski v. Trump,
  926 F.3d 1180 (9th Cir. 2019) ........................................................................ 18

Laub v. United States Dep't of the Interior,
  342 F.3d 1080 (9th Cir. 2003) ........................................................................ 11

Lujan v. Defenders of Wildlife,
  504 U.S. 555 (1992) ........................................................................................ 10

Manjarrez v. United States,
  2002 WL 31870533 (N.D. Ill. 2002)................................................................. 6

Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,
  571 F.3d 873 (9th Cir. 2009) .......................................................................... 19

Mazurek v. Armstrong,
  520 U.S. 968 (1997) ........................................................................................ 18

Midgett v. Tri-County Metropolitan Transp. Dist. Of Oregon,
  254 F.3d 846 (9th Cir. 2001) .......................................................................... 20

Mohammad v. U.S.,
  169 Fed. Appx. 475 (7th Cir 2006) ................................................................. 15

Padilla v. Immigration & Custom,Enf't,
2020 WL 1482393 (9th Cir. 2020) ................................................................... 18

Railway Mail Ass'n v. Corsi,
  326 U.S. 88 (1945) .......................................................................................... 10

Regents of Univ. of California v. Am. Broad. Companies, Inc.,
  747 F.2d 511 (9th Cir. 1984)............................................................................. 3

Stormans, Inc. v. Selecky,
  586 F.3d 1109 (9th Cir. 2009)................................................................... 10, 18

1

## <u>TABLE OF AUTHORITIES CONTINUED</u>

2

3  Thomas v. Anchorage Equal Rights Com'n,
    220 F.3d 1134 (9th Cir. 2000)........................................................................10
4

5  United States v. 24 Firearms From Various Manufacturers,
    2018 WL 4935453 (E.D. Wash. Oct. 11, 2018)............................................13
6

7  United States v. $8,850.00 in U.S. Currency,
    461 U.S. 555 (1983) .........................................................................................8
8

9  United States v. $11,500.00 in U.S. Currency,
    710 F.3d 1006 (9th Cir. 2013)..........................................................................7
10

11  United States v. $1,111,120.00 in U.S. Currency,
    2014 WL 619436 (S.D. Ohio Feb. 18, 2014) ...................................................8
12

13  United States v. $114,031.00,
    2007 WL 2904154 (S.D. Fla. 2007)..................................................................7
14

15  United States v. $203,508.00 in U.S. Currency,
    2012 WL 7959757 (C.D. Cal. May 18, 2012) ..................................................7
16

17  United States v. $448,163.00,
    2007 WL 4178508 (D. Conn. 2007)..................................................................7
18

19  United States v. Approximately $1.67 Million U.S. Currency, Stock & Other Valuable
    Assets,
20    513 F.3d 991 (9th Cir. 2008)............................................................................8
21

22  United States v. Lazarenko,
    476 F.3d 642 (9th Cir. 2007) .....................................................................10, 11
23

24  United States v. Linares,
    921 F.2d 841 (9th Cir. 1990)...........................................................................11
25

26  United States v. Ninety-Three (93) Firearms,
    330 F.3d 414 (6th Cir. 2003)............................................................................8

27

28

1

## <u>TABLE OF AUTHORITIES CONTINUED</u>

2

3
<u>United States v. Salmo,</u>
    2006 WL 2975503 (E.D. Mich. 2006) ........................................................... 7

4

5
<u>United States v. Streich,</u>
    560 F.3d 926 (9th Cir. 2009) ..................................................................... 10

6

7
<u>U.S. v. Pickett,</u>
    2012 WL 694712 (E.D.N.Y. Mar. 1, 2012) ................................................ 15

8

9
<u>Western Oil & Gas Ass'n v. Sonoma County,</u>
    905 F.2d 1287 (9th Cir. 1990) ............................................................. 10, 11

10

11
<u>Winter v. Cal. Med. Review Bd., Inc.,</u>
    900 F.2d 1322 (9th Cir.1990) ..................................................................... 11

12

13
<u>Winter v. Nat. Res. Def. Council, Inc.,</u>
    555 U.S. 7 (2008) ................................................................................ 18, 19

14

**Federal Statutes**

15

16
18 U.S.C. § 922(g)(3) .................................................................................. 14

17
18 U.S.C. § 924(d) ...................................................................................... 14

18
18 U.S.C. § 983 ........................................................................................... 14

19

20
18 U.S.C. § 983(a)(1)(A) ............................................................................... 1

21
18 U.S.C. § 983(a)(1)(A)(i) .................................................................. 4, 5, 7

22
18 U.S.C. § 983(a)(1)(A)(v) ..................................................................... 4, 5

23

24
18 U.S.C. § 983(a)(1)(F) ..................................................................... passim

25
18 U.S.C. § 983(a)(3)(A) ..................................................................... passim

26
18 U.S.C. § 983(a)(3)(B) ..................................................................... passim

27

28

1

## <u>TABLE OF AUTHORITIES CONTINUED</u>

2

3

**Federal Rules**

4

Fed. R. Civ. P. 12(b)(1) ........................................................................ 12

5

Fed. R. Civ. P. 12(b)(6) ........................................................................ 12

6

Fed. R. Crim. P. 41(g) ................................................................... 1, 3, 12

7

**Federal Regulations**

8

9

19 C.F.R. §1602 ..................................................................................... 13

10

19 C.F.R. §1603 ..................................................................................... 13

11

12

19 C.F.R. §1604 ..................................................................................... 13

13

19 C.F.R. §1605 ..................................................................................... 13

14

15

19 C.F.R. §1606 ..................................................................................... 13

16

19 C.F.R. §1607 ..................................................................................... 13

17

19 C.F.R. §1608 ..................................................................................... 13

18

19

19 C.F.R. §1609 ..................................................................................... 13

20

19 C.F.R. §1610 ..................................................................................... 13

21

19 C.F.R. §1611 ..................................................................................... 13

22

19 C.F.R. §1612 ..................................................................................... 13

23

24

19 C.F.R. §1613 ..................................................................................... 13

25

19 C.F.R. §1614 ..................................................................................... 13

26

19 C.F.R. §1615 ..................................................................................... 13

27

28

19 C.F.R. §1615 ..................................................................................... 13

1

## <u>TABLE OF AUTHORITIES CONTINUED</u>

2

3

19 C.F.R. §1616 ...................................................................................13

19 C.F.R. §1617 ...................................................................................13

19 C.F.R. §1618 ...................................................................................13

19 C.F.R. §1619 ...................................................................................13

28 C.F.R. § 8 .......................................................................................14

28 C.F.R. § 9 .......................................................................................14

28 C.F.R. § 8.10(e) ...............................................................................8

28 C.F.R. § 8.12 ...................................................................................8

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiffs Does 1-6 have filed a vague and confusing motion for preliminary injunction, pursuant to Fed. R. Crim. P. 41(g) and 18 U.S.C. § 983(a)(1)(F), which makes it almost impossible to understand the relief they seek. As best the government can tell, plaintiffs seek to enjoin the government from civilly forfeiting property seized from U.S. Private Vaults ("USPV") for which (i) the government has provided allegedly inadequate and unconstitutional seizure notices and requiring the government to return that property (which apparently applies to currency and personal property seizures), pending the government's filing of judicial forfeiture proceedings against the property [docket nos. 38 (moving papers at 1:3-12) and 38-1 (proposed order ¶¶ 1-3); and (ii) the government has not provided direct written notice or notice by internet publication, which forfeitures plaintiffs allege consist of seizures of personal property such as gold and jewelry, pending the government's filing of judicial forfeiture proceedings against the property [docket nos. 38 (moving papers at 1:3-12) and 38-1 (proposed order ¶¶ 4 and 5)].

Assuming that is the relief being sought, plaintiffs' motion as to (i) should be denied for the following reasons, any one of which standing alone is sufficient for the denial. First, the Court previously denied an injunction in the related <u>Snitko</u> case to boxholders, like plaintiff here, who filed a claim to contest the forfeiture of their property and thereby stopped the administrative forfeiture proceedings, because those boxholders were in no imminent danger of the government concluding the forfeiture of their property; in that circumstance, the government can only conclude the forfeiture by filing a complaint for forfeiture within the 90 day deadline set forth in 18 U.S.C. § 983(a)(3)(A) & (B) and thereafter obtaining a judgment of forfeiture.

Second, even assuming no constitutionally valid FBI forfeiture notice was sent pursuant to 18 U.S.C. § 983(a)(1)(A) within 60 days after plaintiffs' property was seized,

18 U.S.C. § 983(a)(1)(F) does not require that property be returned before the government files a civil forfeiture complaint within 18 U.S.C. § 983(a)(3)(A) & (B)'s 90 day deadline (which deadline for plaintiffs is about one month away). Caselaw recognizes that neither the statute nor the practicalities of the situation require that the government return the property (which here is mostly cash and will certainly be dissipated) and then re-seize it before filing the judicial action. Third, plaintiffs cannot satisfy Article III's case or controversy requirement and their request is unripe for resolution because they are seeking relief that is dependent upon future events that have not yet occurred, namely, the government filing a judicial forfeiture complaint and obtaining a judgment of forfeiture without providing the factual details and the legal bases for the forfeiture in the complaint and future judicial proceedings. Finally, plaintiffs have not shown that subject matter jurisdiction (either equitable or under the Administrative Procedures Act) lies, or that the FBI's single forfeiture notice is determinative standing alone of whether a due process violation has occurred.

As to plaintiffs other request for injunctive relief (i.e., item (ii) above), that request should be denied because the government is unable to tell what property the plaintiffs are seeking, but have nevertheless returned the personal property that could conceivably be the items plaintiffs vaguely describe as "gold and jewelry" (and thus the matter is moot). In addition, plaintiffs request relief based on their incorrect assumption that internet publication for personal property items seized from USPV will not take place, but plaintiffs assumption is simply not true.

Accordingly, plaintiffs cannot show that they meet the standards for injunction relief - - they will not suffer irreparable injury if the injunction is denied, they are not likely to succeed on the merits and the balance of the equities and the public interest factors to not weigh in plaintiffs' favor.[1]

---

[1] On July 27, 2021, plaintiffs filed a separate motion for class certification (docket no. 37), and the government will file an opposition thereto today which addresses the class certification issues. Accordingly, the instant opposition primarily addresses plaintiffs' individual claims and only slightly references class action issues.

## II.

## ARGUMENT

**A.     Plaintiffs Are Not Entitled To A Preliminary Injunction Or The Return Of Their Property, Pending The Government's Filing Of Judicial Forfeiture Proceedings Against Plaintiffs' Property, Based Upon The FBI's Forfeiture Notices That Commenced Administrative Forfeiture Proceedings.**

Plaintiffs seek an injunction, pursuant to Fed. R. Crim. P. 41(g) and 18 U.S.C. § 983(a)(1)(F), requiring the government to return their property, until such time as the government files a judicial civil forfeiture action against Plaintiffs' property that is the subject of the FBI administrative forfeiture proceedings.  For any of the reasons set forth below, the motion should be denied.

**1.     The Court Denied The Request For A Preliminary Injunction In The Related <u>Snitko</u> Case To Boxholders, Like Plaintiffs, Who Have Filed A Claim To Contest The Forfeiture Of Their Property Because Those Boxholders Face No Immediate Threat Of Forfeiture.**

Plaintiffs cite the Court's July 16, 2021 ruling in <u>Paul Snitko, et al. v. United States of America, et al.</u>, Case No. 2:21-cv-04405-RGK-MAR (docket no. 58), where the Court entered a preliminary injunction enjoining the government from civilly forfeiting the property of two moving plaintiffs (Joseph Ruiz and Travis May) without sending a notice the identifies the factual and legal basis for the government's commencement of forfeiture proceedings.  However, the Court denied the preliminary injunction as to the other two moving plaintiffs (Jeni Verdon-Pearsons and Michael Storc) who, like plaintiffs here, had filed claims to contest the forfeiture of their property, because those plaintiffs faced no imminent threat of forfeiture.  The Court's order provides:

> However, the Court is convinced that Verdon-Pearsons and Storc are not
> entitled to entry of a preliminary injunction at this time.  It is undisputed
> that on June 9, 2021, Verdon-Pearsons and Storc submitted a claim to the
> FBI which stopped the administrative forfeiture proceeding as to their

property.  (Response at 5); (Reply at 4).  The function of a preliminary
injunction is to preserve the status quo pending a judgment on the merits.
Am. Broad. Companies, Inc., 747 F.2d at 514.  Here, by submitting a claim
to the FBI, Verdon-Pearsons and Storc halted the administrative forfeiture
proceedings as to their property and triggered the Government's 90-day
clock to either (1) file a judicial forfeiture proceeding, or (2) return the
property to Verdon-Pearsons and Storc.  See 18 U.S.C. § 983(a)(3)(A) &
(B).  Accordingly, the status quo with respect to Verdon-Pearsons and
Storc's property will now be maintained until the Government returns the
property or files a judicial forfeiture action and prosecutes that action to
completion.  Because Verdon-Pearsons and Storc make no showing that
their property faces any imminent threat of forfeiture, the Court declines to
preliminarily enjoin the Government from forfeiting Verdon-Pearsons and
Storc's property at this juncture.

Docket 58 in Snitko, et al. v. United States, et al., Case No. 2:21-cv-04405-RGK-MAR
[July 16, 2021 (In Chambers) Order Re: Request for Preliminary Injunction) at 3-4].

As reflected in footnote 4 below, plaintiffs have filed claims to contest the
forfeiture, and the government is faced with the 90 day deadlines expiring in September
2021 to file a judicial forfeiture action.  Accordingly, plaintiffs face no imminent threat
of forfeiture and plaintiffs' motion can properly be denied for this reason alone.

**2.     Even Assuming The FBI's Forfeiture Notices Standing Alone Are Void,
Plaintiffs Are Not Entitled To Return Of Their Property Under 18
U.S.C. § 983(a)(1)(F) Because The Failure To Send A Valid Forfeiture
Notice Within 60 Days From The Seizure Of Property Does Not
Require That The Government Actually Return The Property Before
Filing A Judicial Forfeiture Complaint Against The Property.**

On May 20, 2021, or within 18 U.S.C. § 983(a)(1)(A)(i)'s 60-day deadline for the
government to commence administrative forfeiture proceedings following the seizure of

4

property,[2] the FBI sent individual forfeiture notices announcing the commencement of the FBI's administrative forfeiture proceedings to persons who are likely Doe 1 or Doe 2 ($274,000 in box 5006) and Doe 4 ($330,020 in box 4300), and a global notice to USPV for the property claimed by remaining plaintiffs Does 3 ($199,950 in box 6710), 5 ($570,000 in box 400) and 6 ($1,194,750 in box 40).  Docket No. 33-2 (Murray Decl. ¶¶ 2 and 3).  Citing no authority plaintiffs argue that the notices are void because they violate due process, in that they fail to disclose the factual and legal bases for the government's decision to commence civil forfeiture proceedings.[3]  Based on this argument, plaintiffs contend 18 U.S.C. § 983(a)(1)(F) requires that the property must be returned "pending any potential judicial forfeiture proceedings involving the property," because no valid notices were sent during the 60 day deadline.  Moving papers 1:7-8.

Even assuming the FBI forfeiture notices are void, failing to provide a forfeiture notice within 60 days from the seizure of property does not require that the property be returned.  Unlike 18 U.S.C. § 983(a)(3)(B), which provides that if a civil forfeiture complaint is not filed within 90 days from the date a claim is submitted to a seizing agency the government must release the property "and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense," 18 U.S.C. § 983(a)(1)(F) provides that if notice is not timely sent within 60 days after property is seized the government shall return the property "without prejudice to the right of the Government to commence a forfeiture proceeding at a later time."

Accordingly, unlike the 90 day deadline in 18 U.S.C. § 983(a)(3)(A) & (B), the government may proceed with judicial forfeiture based on the same underlying offense

---

[2] 18 U.S.C. § 983(a)(1)(A)(i) provides that notice of the commencement of an administrative forfeiture proceeding must be sent by the seizing agency no later than 60 days after an asset is seized.  In addition, 18 U.S.C. § 983(a)(1)(A)(v) provides that if the identity or interest of a party is not determined until after the asset is seized, the notice must be sent within 60 days after the seizing agency determines the identity of the party or that party's interest in an asset.

[3] However, the government notes that the FBI forfeiture notices do not stand alone because the government cannot forfeit plaintiffs' property without filing a complaint that sets forth the factual and legal basis to forfeit plaintiffs' property.

that gave rise to seizure of the property even if the 60 day notice is untimely.  And the cases discussed below show that the government need not actually return the property before filing a complaint within the 90-day deadline.  The 90-day deadline for the government to file a judicial civil forfeiture complaint has not yet expired as to plaintiffs: the deadline expires September 14, 2021 as to Does 1 and 2 and September 20, 2021 as to Does 3, 4, 5 and 6.[4]  Therefore, the government is still entitled to file a judicial action to forfeit plaintiffs' property, as 18 U.S.C. § 983(a)(1)(F) plainly provides that the government can commence a forfeiture proceeding "at a later time."

In Manjarrez v. United States, 2002 WL 31870533 (N.D. Ill. 2002), Manjarrez argued that 18 U.S.C. § 983(a)(1)(F) required the government to return property it had seized, before the government filed its forfeiture complaint against the property because the government had sent notice after the 60 day deadline had expired.  In denying Manjarrez's motion to dismiss the complaint for lack of jurisdiction, the court stated:

> [W]e see no reason to give 18 U.S.C. § 983(a)(1)(F) the restrictive interpretation that Manjarrez does.  Saying that returning the property does not prevent the later filing of a forfeiture action is very different from saying that returning the property is a jurisdictional prerequisite to the later filing of a forfeiture action.  Had Congress intended to bar a forfeiture action in the event the government should fail to return the property, we believe it would have done so explicitly.

Id. at *1.  The court further noted "any return we would order would be a technical one, such as ordering the deposit of the money with the Clerk of the Court.  We

---

[4] Does 1 and 2 filed claims with the FBI to contest the administrative forfeiture on June 16, 2021 for the $274,030 (Asset ID No. 21-FBI-002956) seized from Box 5006 (Docket No. 33-2 [Murray Decl. ¶ 4]), which means that the 90 day deadline to file a judicial forfeiture action or else release the property set forth in 18 U.S.C. § 983(a)(3)(A) & (B) expires September 14, 2021.  As to the remaining plaintiffs Does 3-6, the ninety day deadline expires September 20, 2021 as they filed claims on June 21, 2021, with Doe 3 filing a claim for the $199,950 (Asset ID No. 21-FBI-002922) seized from Box 6710; Doe 4 for the $330,020 (Asset ID No. 21-FBI-003183) seized from Box 4300; Doe 5 for the $570,000 (Asset ID No. 21-FBI-003154) seized from Box 400; and Doe 6 for the $1,194,750 (Asset ID No. 21-FBI-002965) seized from Box 40.  Docket No. 33-2 (Murray Decl. ¶ 4).

1    agree with the government that it would be imprudent to turn the money over to

2    Manjarrez [pending trial]" as it would obviously be dissipated.  Id. at *2 n. 2.

3        Numerous other courts have reached the same result.  See United States v.

4    $11,500.00 in U.S. Currency, 710 F.3d 1006, 1016 (9th Cir. 2013) ("the better and more

5    practical interpretation of the statutory framework is that a failure to provide timely

6    notice does not require the government to return the property if it has subsequently

7    commenced a forfeiture proceeding . . . Requiring the return of the property and then

8    permitting the government to immediately re-seize it would impose a meaningless

9    exercise"); United States v. Salmo, 2006 WL 2975503, *3 (E.D. Mich. 2006) (the court

10   noted that the "without prejudice" language in 18 U.S.C. § 983(a)(1)(F) made it

11   "abundantly clear that inadequate notice does not immunize property from forfeiture");

12   United States v. $114,031.00, 2007 WL 2904154, *3 (S.D. Fla. 2007) ("[t]he plain

13   language of the statute says that returning the property would not prevent the

14   government from later bringing a forfeiture proceeding.  It does not say that the

15   Government is required to return the property before it can bring a forfeiture

16   proceeding"); United States v. $448,163.00, 2007 WL 4178508, *3 (D. Conn. 2007)

17   ("[t]he government's untimely notice of its intent to subject the defendant property to

18   administrative forfeiture does not require dismissal in this case"); United States v.

19   $203,508.00 in U.S. Currency, 2012 WL 7959757 (C.D. Cal. May 18, 2012)

20   ("[a]lthough the Court finds that timely notice was provided as required by 18 U.S.C.

21   § 983(a)(1)(A)(i), the Court additionally notes that Claimant would not be entitled to the

22   return of property under 18 U.S.C. § 983(a)(1)(F) in the event that notice had been

23   untimely").

24       The fact that a complaint for forfeiture has not been filed at the time this

25   opposition is filed does not change the result.  The statute provides that if notice is not

26   sent within 60 days after property is seized the government shall return the property

27   "without prejudice to the right of the Government to commence a forfeiture proceeding

28   at a later time."  (Emphasis added).  It does not state that the "later time" is determined

7

by the filing date of a motion for a preliminary injunction or for the return of property, or the date when an opposition is filed thereto. Instead, 18 U.S.C. § 983(a)(3)(A) places the deadline on the judicial filing at 90 days after the claim is filed with the seizing agency.[5] Accordingly, assuming no valid administrative notice was sent in this case within 60 days after seizure, the government is still entitled to file a judicial forfeiture complaint by the September 14, 2021 (Doe 1 and Doe 2) and September 20, 2021 (Does 3-6) deadlines. Plaintiffs' motion can therefore be properly denied on this ground alone.

       **3.**    **Plaintiffs' Cannot Satisfy Article III's Case Or Controversy Requirement And Their Case Is Not Ripe For Resolution Because The Government Cannot Civilly Forfeit Their Property Without Filing A Judicial Civil Forfeiture Complaint That Complies With Due Process By Setting Forth The Factual And Legal Bases For The Commencement Of Forfeiture Proceedings.**

      The Court issued a temporary restraining order and preliminary injunction in the related <u>Snitko</u> case, enjoining the government from civilly forfeiting the property of those moving <u>Snitko</u> plaintiffs who had <u>not</u> filed a claim to contest forfeiture based on the forfeiture notices sent to those plaintiffs, without first sending forfeiture notices to them that identified the specific factual and legal basis for the Government's decision to commence forfeiture proceedings. Docket Nos. 52 and 58 in <u>Snitko</u> (June 22 2021 order re plaintiffs' <u>ex parte</u> application for a temporary restraining order at page 7 and June 28, 2021 order re: request for preliminary injunction at page 5). In moving for the

---

     [5] Further, the period of time between the seizure of property and the sending of notices and filing of a complaint here does not run afoul of due process requirements. See <u>United States v. $8,850.00 in U.S. Currency</u>, 461 U.S. 555, 565 (1983) (18 month delay between the seizure of property and commencement of administrative forfeiture proceedings did not violate due process); <u>United States v. Approximately $1.67 Million in U.S. Currency, Stock & Other Valuable Assets</u>, 513 F.3d 991, 998, 1001 (9th Cir. 2008) (five year delay between seizure of property and filing of judicial civil forfeiture complaint did not violate due process); <u>United States v. Ninety-Three (93) Firearms</u>, 330 F.3d 414, 426 (6th Cir. 2003) (three year delay between seizure of property and filing of complaint did not violate due process); cf. <u>United States v. $1,111,120.00 in U.S. Currency</u>, 2014 WL 619436 (S.D. Ohio Feb. 18, 2014) (stay of civil forfeiture action for three years while criminal investigation was ongoing did not violate due process).

temporary restraining order, the moving <u>Snitko</u> plaintiffs stated "[t]o be clear, the requested temporary restraining order would not necessarily bar the government from forfeiting the contents of <u>any</u> USPV box.  The order would simply bar the government from forfeiting the contents of USPV boxes based on civil forfeiture notices that fail to state the factual or legal basis for the forfeiture."  Docket No. 44 in <u>Snitko</u> (plaintiffs' June 15, 2021 TRO application 11:3-6) (emphasis in original).

Accordingly, the Court's rulings provide that the government cannot conclude a civil forfeiture, as to those moving <u>Snitko</u> plaintiffs who had not yet filed claims, without providing notice of the factual and legal basis for forfeiture.   As set forth above, the Court denied the preliminary injunction as to the moving <u>Snitko</u> plaintiffs who had filed claims, because there was no imminent danger of the government concluding the forfeiture of their property based solely on the FBI's forfeiture notice, for the reason that the government had to file a judicial forfeiture action in order to forfeit their property.[6]

As to plaintiffs in the instant case, all of whom have filed claims with the FBI, the deadline to file a forfeiture complaint has not yet expired.  The government has not filed a complaint for forfeiture against plaintiffs' property, let alone a complaint that fails to detail the factual and legal basis for the forfeiture.  In addition, the government has not (and cannot) obtain a court judgment of forfeiture, without first filing a complaint for forfeiture.   Plaintiffs' request for relief based on future events that may or may not occur (namely, the government filing a complaint for forfeiture devoid of the factual and legal details required by due process and obtaining a court judgment of forfeiture based on a deficient complaint) runs afoul of Article III case or controversy standing and ripeness requirements.  Plaintiffs' request for relief is therefore not ripe for resolution.

---

[6] By law, the filing of a claim stops the administrative forfeiture proceeding as to the property (28 C.F.R. § 8.10(e)) which means that the agency cannot enter a final decision declaring the asset administratively forfeited under 28 C.F.R. § 8.12 (<u>i.e.</u>, the equivalent of a court judgment of forfeiture in a judicial case), and requires the seizing agency to refer the matter to the United States Attorney's Office for the filing of a complaint for forfeiture in Court, and the government must "promptly release" the property if the complaint for forfeiture is not filed within 90 days after the claim contesting forfeiture is filed with the seizing agency (<u>see</u> 18 U.S.C. § 983(a)(3)(A) & (B)).

The "case or controversy" requirement in Article III mandates that issues be "definite and concrete, not hypothetical or abstract," before federal courts may exercise jurisdiction over them.  <u>Railway Mail Ass'n v. Corsi</u>, 326 U.S. 88, 93 (1945).  In applying this jurisdictional limitation, courts have, under the rubric of ripeness or standing, refused to consider issues that are hypothetical.  <u>Thomas v. Anchorage Equal Rights Com'n</u>, 220 F.3d 1134, 1138-39 (9th Cir. 2000).  An issue or action is deemed to be unripe when the claims that it presents have either not yet occurred or not become sufficiently "concrete" for judicial resolution.  <u>Western Oil & Gas Ass'n v. Sonoma County</u>, 905 F.2d 1287, 1290 (9th Cir. 1990).

Because ripeness is a constitutional prerequisite for jurisdiction, courts lack jurisdiction to review claims unless they are ripe.  <u>United States v. Streich</u>, 560 F.3d 926, 931 (9th Cir. 2009).  The role of the judiciary is "neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."  <u>Thomas</u>, 220 F.3d at 1138 (citation omitted).  Ripeness is therefore "designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1122 (9th Cir. 2009) (internal quotes omitted).

To determine whether a case is ripe for review, the Ninth Circuit has held that the proper analysis is (1) whether the issue is fit for judicial decision, and (2) whether the parties will suffer a hardship if the court withholds decision.  <u>United States v. Lazarenko</u>, 476 F.3d 642, 652 (9th Cir. 2007).  A question is fit for decision when it can be decided without considering "contingent future events that may not occur as anticipated, or indeed may not occur at all."  <u>Cardenas v. Anzai</u>, 311 F.3d 929, 934 (9th Cir.2002) (internal quotes omitted); <u>see also</u> <u>Streich</u>, 560 F.3d at 931.  That is, the injury complained of must be "real and concrete rather than speculative and hypothetical."  <u>Stormans, Inc.</u>, 586 F.3d at 1122 (internal quotes omitted).  <u>Accord</u>, <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (in order to have standing to sue, Article III

1   requires that a plaintiff "suffer[] an injury in fact – an invasion of a legally protected

2   interest which is (a) concrete and particularized . . . and (b) actual or imminent, not

3   conjectural or hypothetical") (internal quotes omitted).  Courts should consider "whether

4   the controversy generated is essentially legal in nature or whether further factual

5   amplification is necessary." Lazarenko, 476 F.3d at 652.  (internal quotes omitted).

6   Where the case is "too speculative for resolution by a federal court" and "[f]urther

7   delineation of the facts is necessary to shape the issues for review," courts have declined

8   to review the case on ripeness grounds.  Western Oil & Gas Ass'n, 905 F.2d at 1291.

9       The second prong requires determining whether postponing review would impose

10  a "direct and immediate hardship." Lazarenko, 476 F.3d at 652.  "To meet the hardship

11  requirement, a litigant must show that withholding review would result in 'direct and

12  immediate' hardship and would entail more than possible financial loss." Winter v. Cal.

13  Med. Review Bd., Inc., 900 F.2d 1322, 1325 (9th Cir.1990) (citations omitted).  As the

14  party asserting jurisdiction, plaintiffs bear the burden of establishing that they have

15  "suffered an injury in fact -- an invasion of a legally protected interest which is (a)

16  concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."

17  Laub v. United States Dep't of the Interior, 342 F.3d 1080, 1085 (9th Cir. 2003).

18      Plaintiffs' request for relief is a clear example of contingent future events that

19  have not yet occurred, or may not occur at all.  The government may not file judicial

20  forfeiture actions against their property, and even if it does file a judicial forfeiture

21  action, no one yet knows whether the complaint will outline the factual and legal

22  grounds for the forfeiture, nor is anyone aware of other events that may occur in those

23  future cases.  See United States v. Linares, 921 F.2d 841, 843-44 (9th Cir. 1990) (where

24  a claim is based on a series of events that may never come to pass, the case is not ripe).

25  Furthermore, should plaintiffs believe that the forfeiture notice standing alone is all that

26  is considered in the due process analysis, plaintiffs can raise that argument as an

27  affirmative defense in any future judicial forfeiture action the government may file.  In

28  addition, the courts assigned to adjudicate those future cases can resolve those issues by

using their inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of their cases.  America Unites for Kids v. Rousseau, 985 F.3d 1075, 1088 (9th Cir. 2021).

Plaintiffs' motion runs afoul of Article III standing and ripeness requirements. Accordingly, the motion can properly be denied for this reason alone.

**4.    Plaintiffs Cannot Discharge Their Burden Of Showing That Subject Matter Jurisdiction (Either Equitable or Under The Administrative Procedures Act) Exists Here.**

On July 26, 2021, the government filed a motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing among other things that the FBI's administrative forfeiture proceedings provide plaintiffs with an adequate remedy at law and divests district courts of jurisdiction to hear Rule 41(g) motions, and plaintiffs' claims are also barred because subject matter jurisdiction does not exist under the Administrative Procedures Act.  Docket No. 33.  The government incorporates by reference here those arguments from its motion to dismiss.  Id. at 5:15-15:11.  These additional reasons, standing alone, are proper bases to deny plaintiffs' motion.

**5.    The Cases Do Not Hold That A Single Notice, Such As The FBI Forfeiture Notice, Standing Alone, Must Include The Factual And Legal Bases That Justify The Forfeiture But Instead Require That The Information Must Be Provided Before A Final Decision Is Made To Conclude The Forfeiture Of An Asset.**

Plaintiffs' motion can also properly be denied for the reason that the FBI's notice standing alone does not determine whether due process has been satisfied.  Citing the Court's decision on a temporary restraining order in Snitko, plaintiffs argue that the FBI's forfeiture notice did not comply with due process.  Moving papers at 5:2-13.  The holding in Gete v. I.N.S., 121 F.3d 1285 (9th Cir. 1997) is not directed solely to a forfeiture notice, as the Ninth Circuit did not hold that the factual bases for seizure and

the statute identifying the specific crime violated must be included in a forfeiture notice that standing alone merely commences the administrative forfeiture proceeding and informs the recipients of their options for seeking return of their property, in order to comport with due process. Instead, Gete was considering "administrative review of forfeitures under procedures lacking all semblance of due process" (id. at 1287), which included the multiple events as described in the opinion and not just a single notice.

Likewise, cases after Gete do not suggest a forfeiture notice standing alone is the key document that determines whether a due process violation has occurred. Al Haramain Islamic Foundation, Inc. v. U.S. Dept. of Treasury, 686 F.3d 965 (9th Cir. 2012), involved OFAC making final decisions in 2004 to designate and then in 2008 to redesignate plaintiff as a terrorist organization and block plaintiff's assets, without providing any information during the four year period, resulting in plaintiff being "unable to respond adequately to the agency's unknown suspicions" [id. at 984-85] and the Ninth Circuit in Al Haramain to decide Gete's reasoning was applicable. Id. at 987. The Ninth Circuit stated "the seven-month period of the original investigation, and certainly the four-year period of the entire redesignation determination, gave OFAC ample time to provide [plaintiff] with, at a minimum, a terse and complete statement of reasons for the investigation. There is no reason why OFAC could not have given notice in this particular case." Al Haramain at 986 (footnote omitted).

It is the totality of the events from beginning to end, and not a discrete step along the way, that determines whether a due process violation has occurred. The complaint will detail all that is required to satisfy due process.

In United States v. 24 Firearms From Various Manufacturers, 2018 WL 4935453 (E.D. Wash. Oct. 11, 2018), a claimant filed a motion to dismiss the government's judicial forfeiture complaint because the notice of the commencement of administrative forfeiture sent by the federal Bureau of Alcohol, Tobacco and Firearms and Explosives ("ATF"), like the FBI Forfeiture Commencement Proceeding Notice here, only stated the date of seizure (December 13, 2017), the place of seizure (Spokane, Washington), the

13

statutory basis (18 U.S.C. § 924(d) [which is the forfeiture trigger statute] and cited 19 C.F.R. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R. Part 8 and 9.  After the ATF notice was sent, the government filed within the statutory deadline a judicial forfeiture complaint, which alleged that forfeiture was being sought because of a violation of 18 U.S.C. § 922(g)(3) (i.e., drug user in possession of firearms and possession), and thus permitted forfeiture under the forfeiture trigger statute 18 U.S.C. § 924(d).

Like here, claimant relied on Gete and argued that the ATF's forfeiture notice violated due process because it did not list the underlying criminal statute violated (18 U.S.C. § 922(g)(3)) .  Id. at *3.  Like here, the forfeiture trigger statute in the ATF notice (18 U.S.C. § 924(d)) allowed for forfeiture based on a long laundry list and broad variety of crimes.  Id.  The court discussed Gete, rejected claimant's argument that Gete required additional disclosures in the ATF notice to comply with due process, and denied claimant's motion to dismiss the government's judicial forfeiture complaint.  The court held "that the absence of an explicit reference to § 922(g)(3) does not render the notice constitutionally deficient. . . . In sum, the Court finds that . . . the notice of administrative forfeiture proceedings was constitutionally sufficient."  Id.

Other decisions stand for the general proposition that due process does not require a notice commencing administrative forfeiture proceedings to include the underlying facts and legal grounds for the forfeiture.  In Juda v. Nerney, 149 F.3d 1190, 1998 WL 317474 (10th Cir. 1998), the U.S. Customs Service sent notices of commencement of administrative forfeiture (id. at *3), and the Tenth Circuit stated "we have found no case law supporting Juda's suggestion that we require a particularized narrative of allegedly illegal acts [in the notice] .  After a review of the record, we agree with the magistrate judge's finding that Juda received constitutionally adequate notice."  Id. at *5.

The facts regarding an administrative forfeiture commencement notice are more closely aligned with those in City of West Covina v. Perkins, 525 U.S. 234 (1999), where the Supreme Court rejected plaintiffs' argument that the City of West Covina's notice of the procedure for retrieving their seized property violated due process.

14

Although the City had "notified [plaintiffs] of the initial seizure and gave them an inventory of the property taken[,]" plaintiffs argued "the City deprived them of due process by failing to provide them notice of the remedies and the factual information necessary to invoke the remedies under California law." Id. at 240.  Rejecting that argument, the Supreme Court cited Mullane and held that due process does not require "individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law.  Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him.  The City need not take other steps to inform him of his options." Id. at 240 (citations omitted).

Multiple courts dealing with administrative forfeiture proceedings like the proceedings here have followed City of West Covina's rationale that the recipient need only be advised of their remedies to seek return of the property, and have concluded that the administrative forfeiture notices comply with due process.  See U.S. v. Pickett, 2012 WL 694712 (E.D.N.Y. Mar. 1, 2012) (agency's notice of commencement of administrative forfeiture was lawful because it informed claimant of his remedies to recover his property by filing claim or petition for remission); Mohammad v. U.S., 169 Fed. Appx. 475, 482 (7th Cir 2006) (plaintiff's argument that the DEA's forfeiture notice was confusing, contradicted the underlying forfeiture statutory scheme and violated Mullane's due process requirements "lacks merit"); In re Search Warrants for 27867 Orchard Lake Rd., 553 F. Supp. 2d 879, 884-85 (E.D. Mich. 2008) (DEA's notice of commencement of administrative forfeiture proceedings adequately appraised recipient of her choice between submitting a claim or petition and did not violate due process).

Accordingly, the FBI's notice standing alone, while not alleging the factual basis for the forfeiture and the specific criminal statute violated, is not determinative of whether due process is satisfied.  Instead, the complaint for forfeiture will contain these details.  Plaintiffs' motion can be denied on this basis alone.

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.**     **Plaintiffs' Vague and Unclear Request For An Injunction Requiring The Government To Return Personal Property, Which Plaintiffs Describe Only Generally As "Gold And Jewelry" And Assert That Neither A FBI Notice Letter Nor FBI Internet Notification Has Been Provided, Should Be Denied.**

**1.**     **The Government Is Unable To Determine The "Gold And Jewelry" Property Plaintiffs Seek To Have Returned From Their Boxes, But Is Nevertheless Returning The Few Items From Plaintiffs' Boxes That Might Conceivably Fall Within That Category.**

Plaintiffs also seek an injunction for the return of their personal property, which they allege consists of gold and jewelry, for which the government has not provided notice by a FBI written notice or by publication on the internet.  Plaintiffs contend that they received no FBI administrative forfeiture commencement notice letters for property they vaguely describe as "gold" in Box 5006 and "currency" in Box 4105 (Does 1 and 2); "gold and jewelry" in Box 6710 (Doe 3); and "gold and jewelry" in Box 40 (Doe 6). Docket No. 38 (moving papers at 12:20-23) and docket no. 39-6 (doe 6 declaration ¶ 4). As to Doe 1 and Doe 2, the FBI seized no currency or any other assets from box 4105, commenced administrative forfeiture proceedings as to the entirety of the $274,000 seized from Box 5006 and is in the process of returning two items (i.e., two yellow metal coins and one metal wrist band, which may be the "gold and jewelry" Doe 1 and 2 are describing).  Zellhart Decl. ¶ 2 and footnote 4 above.  As to Doe 3, the government is returning from box 6710 one white fabric cover containing a yellow metal chain with clear stones and a medallion, which may be the "gold and jewelry" being referenced by Doe 3.  Zellhart Decl. ¶ 3.  Finally, as to Doe 6, the only assets the FBI seized from box 40 was $1,194,750 in currency for which administrative forfeiture proceedings were commenced; there was no gold or jewelry in the box and therefore no gold and jewelry can be returned.   Zellhart Decl. ¶ 4 and footnote 4 above.  Accordingly, plaintiffs' non-specific request for the return of personal property, namely the vaguely described "gold

16

and jewelry" items, is moot because whatever gold or jewelry items the government has are in the process of being returned.

> ### 2. Plaintiffs' Request For The Return Of Anyone Else's Personal Property Should Be Denied Because Plaintiffs Have Not Identified The Property They Are Referencing In Any Detail, And Incorrectly Assume That Forfeiture Notice And Internet Publication Regarding That Property Has Not Occurred Or Will Not Occur In The Future.

Furthermore, as to anyone other than plaintiffs, it is unclear what property plaintiffs' are referencing in their request for injunctive relief. Citing Exhibit A to the declaration of their counsel, which is the FBI's May 20, 2021 letter to USPV setting forth the items for which the FBI has commenced administrative forfeiture proceedings, plaintiffs argue that that the government commenced the administrative forfeiture proceedings "against the currency only seized from the safe deposit boxes at USPV." Moving papers at 6:7-10. But the FBI's letter includes personal property items, such as gold and jewelry, and identifies those gold and jewelry items in specific detail.[7]  Docket 38-2 at pages 11 of 20 to 20 of 20), which is Exhibit A to the Honig Decl. (Docket 38-1 at ¶ 3).  In addition, plaintiffs seek relief for anyone who has neither received a notice letter nor for which notice has been published on the internet as to their personal property, but the publication on the internet of the USPV personal property seizures of gold and jewelry has not yet commenced and will occur in the future (Zellhart Decl. ¶ 7), which renders plaintiffs' request for relief unripe and violative of the Article III case or controversy requirement.   Furthermore, to the extent plaintiffs seek the return of items that are not the subject of administrative forfeiture proceedings, they have not identified that property with any specificity, either by property description, box number or

---

[7] See, for example, Asset ID No. 21-FBl-003330 on page 11 of 20 of Docket 38-2, which identifies the 7 Pieces of Miscellaneous Jewelry from Box #6712 as a cartier bracelet with a diamond, a cartier bracelet-nail shaped, a diamond tennis bracelet, a gold necklace, a two tone Rolex men's watch, a gold with diamonds Rolex Men's watch and a platinum Rolex men's watch.

anything else, in order to enable the government to determine what property plaintiffs are referencing.  Accordingly, plaintiffs' request for injunctive relief pertaining to personal property items should be denied.

## III.  PLAINTIFFS HAVE NOT SATISFIED THE STANDARDS FOR PRELIMINARY INJUNCTIVE RELIEF, AND PARTICULARLY THE IRREPARABLE INJURY REQUIREMENT.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original and citation and internal quotation marks omitted); see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  To obtain a preliminary injunction, the movant must demonstrate (1) that they are likely to succeed on the merits of their claims; (2) that they are likely to suffer irreparable injury in the absence of injunctive relief;  (3) that the balance of equities tips in their favor; and (4) that the proposed injunction is in the public interest.  Karnoski v. Trump, 926 F.3d 1180, 1198 (9th Cir. 2019).  "Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." Padilla v. Immigration & Custom Enf't, 2020 WL 1482393, *5 (9th Cir. 2020).

The Ninth Circuit has adopted a "sliding scale" test for issuing preliminary injunctions, under which "serious questions going to the merits and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-32 (9th Cir. 2011).  Thus, the movant must show the injunction is in the public interest and there is a likelihood, not merely a possibility, of irreparable injury. Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009).

Finally, because the function of a preliminary injunction is to maintain the status quo before the case is adjudicated on the merits, there is "heightened scrutiny" for mandatory preliminary injunctions, such as the injunction seeking the return of property

sought here.  <u>Dahl v. HEM Pharms. Corp.</u>, 7 F.3d 1399, 1403 (9th Cir. 1993) (mandatory injunctions are "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party").  "A mandatory injunction orders a responsible party to take action," and thus, "goes well beyond simply maintaining the status quo."  <u>Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.</u>, 571 F.3d 873, 879 (9th Cir. 2009) (citation and internal quotation marks omitted).  A party seeking a mandatory injunction must establish that the law and facts <u>clearly favor</u> her position, not simply that she is likely to succeed."  <u>Garcia v. Google, Inc.</u>, 786 F.3d 733, 740 (9th Cir. 2015).  Accordingly, "mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases."  <u>Marlyn Nutraceuticals, Inc.</u>, 571 F.3d at 879 (internal quotation marks omitted).

As to irreparable injury, a preliminary injunction may not be granted based on a mere possibility of irreparable harm, even if a plaintiff demonstrates a strong likelihood of success on the merits or the other factors evaluated when deciding a preliminary injunction motion.  <u>D.T. v. Sumner County Schools</u>, 942 F.3d 324, 326-27 (6th Cir. 2019)  ("even the strongest showing on the other three factors [considered in ruling on a preliminary injunction motion] cannot eliminate the irreparable harm requirement.  That factor is indispensable:  If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief <u>now</u> as opposed to at the end of the lawsuit") (emphasis in original and internal quotation marks and citations omitted).  This is because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  <u>Winter v. Natural Resources Defense Council, Inc.</u>, 555 U.S. 7, 22 (2008) (citation omitted); <u>see also</u> <u>Alliance for Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011) . "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."  <u>Caribbean Marine Services Co., Inc. v. Baldridge</u>, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted).

In addition, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." <u>Id.</u> (citation omitted).   Establishing a risk of irreparable harm in the indefinite future is not enough; the harm must be shown to be imminent.   <u>Midgett v. Tri-County Metropolitan Transp. Dist. Of Oregon</u>, 254 F.3d 846, 850 (9th Cir. 2001) ("[p]laintiff must make a showing that he faces a real or immediate threat of substantial or irreparable injury") (citation omitted); <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1337 (11th Cir. 1994) (party seeking injunctive relief must show and prove a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury); <u>Campbell Soup Co. v. ConAgra, Inc.</u>, 977 F.2d 86, 91 (3d Cir. 1992) ("a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future.  Rather, the moving party must make a clear showing of <u>immediate</u> irreparable harm") (emphasis in original and citation/internal quotation marks omitted).

Plaintiffs have shown no irreparable injury, as their property is not being in danger of being civilly forfeited.  In addition, for the other reasons set forth above, plaintiffs are not likely to prevail on the merits because, among other things, there is no practical or legal reason to return property to them only to require that it be reseized within a month before a forfeiture complaint is filed, and plaintiffs' provide only non-specific, vague and unclear assertions of the personal property they seek to have returned, but the government is nevertheless returning a few items that might be what the plaintiffs are seeking.  Finally, the balance of the equities and public interest factors do not favor plaintiffs here where they are requesting a ministerial act (<u>i.e.</u>, the return of property subject to the government re-seizing it and filing of a forfeiture case in a month), and the law does not require that result.

## IV.   CONCLUSION

For the reasons set forth above, the government respectfully requests that plaintiffs' motion be denied.

Dated: August 13, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
ANDREW BROWN
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.