TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture/
General Crimes Sections
    1100/1400/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0102/2569/1785
    Facsimile: (213) 894-6269/0142/0141
    E-mail: Andrew.Brown@usdoj.gov
          Victor.Rodgers@usdoj.gov
          Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA and
MERRICK GARLAND, in his official
Capacity as United States Attorney General

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DOES 1-6, on behalf of themselves and all others similarly situated, | Case No. 2:21-cv-03254-RGK-MAR |
|         Plaintiffs, | **DEFENDANTS' OPPOSITION TO MOTION FOR CLASS CERTIFICATION** |
|         v. | Date:      September 7, 2021 |
| UNITED STATES OF AMERICA and MERRICK GARLAND, in his official capacity as United States Attorney General, | Time:      9:00 a.m. |
| | Courtroom: 850, the Honorable |
|         Defendants. |             R. Gary Klausner |

Defendants United States of America and Merrick Garland, in his official capacity (collectively, the "government"), hereby oppose anonymous plaintiffs' Motion for Class Certification (Dkt. 37).

Dated: August 13, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
ANDREW BROWN
VICTOR A. RODGERS
MAXWELL COLL
Assistant United States Attorneys

Attorneys for Defendants
UNITED STATES OF AMERICA, et al.

# TABLE OF CONTENTS

<u>DESCRIPTION</u>                                                                                    <u>PAGE</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.      ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.      Plaintiffs' proposed class definitions are fatally ambiguous, confusing, and  not
                sufficiently definite to conform to Rule 23. . . . . . . . . . . . . . . . . . . . . . . . . . 7

        B.      The Court Should Not Certify Any Class With Anonymous Class
                Representatives. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        C.      Plaintiffs Are Neither Adequate Class Representatives Nor Typical of the
                Putative Classes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.      Individualized Issues Preclude Rule 23(a) Commonality. . . . . . . . . . . . . . 13

        E.      Plaintiffs Cannot Meet Their Burden To Show Rule 23(a) Numerosity.  . . . . . . . . 15

        F.      Even If Plaintiffs Could Satisfy Rule 23(a), They Fail To Meet the Requirements
                of Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VI.     CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

DESCRIPTION                                                                                    PAGE

CASES:

Am. Exp. Co. v. Italian Colors Rest.,
   570 U.S. 228 (2013) .......................................................................................... 6

Briseno v. ConAgra Foods, Inc.,
   844 F.3d 1121, n.4 (9th Cir. 2017) ............................................................... 1, 10

Chupa v. Armstrong Flooring, Inc.,
   2020 WL 1032420 (C.D. Cal. 2020) ................................................................ 10

Comcast Corp. v. Behrend,
   569 U.S. 27 (2013) ..................................................................................... passim

Halliburton Co. v. Erica P. John Fund, Inc.,
   573 U.S. 258 (2014) .................................................................................... 2, 11

Jamie S. v. Milwaukee Pub.,
   Schs., 668 F.3d 481 (7th Cir. 2012) ............................................................. 7, 16

Lierboe v. State Farm Mut. Auto Ins. Co.,
   350 F.3d 1018 (9th Cir. 2003) ......................................................................... 12

Mazza v. Am. Honda Motor Co., Inc.,
   666 F.3d 581 (9th Cir. 2012) ............................................................................. 6

McVicar v. Goodman Global, Inc.,
   No. 13-cv-1223, 2015 WL 4945730 ................................................................ 13

Probe v. State Teachers' Ret. Sys.,
   780 F.2d 776 (9th Cir. 1986) ...................................................................... 1, 10

Tinsley v. Snyder,
   922 F.3d 957 (9th Cir. 2019) ...................................................................... 13, 14

Wal-Mart Stores, Inc. v. Dukes,
   564 U.S. 338 (2011) ................................................................................. passim

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                          <u>PAGE</u>

<u>Wang v. Chinese Daily News, Inc.</u>,
    737 F.3d 538 (9th Cir. 2013) ............................................................6

<u>RULES</u>:

Fed. R. Civ. P. 23(a)(1) ............................................................15

Fed. R. Crim. P. 41(g) ............................................................2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs "Does 1-6" seek to certify three separate classes of boxholders at U.S. Private Vaults ("USPV") using anonymous class representatives.  The Court should deny the request as to each proposed class for many reasons.

***First***, as a threshold matter, the Court should deny the motion because Plaintiffs' proposed class definitions are fatally ambiguous and confusing, as is the relief they purport to seek on behalf of the three putative classes.  These ambiguities justify denial of class certification because the classes are not "sufficiently definite to conform to Rule 23."  Probe v. State Teachers' Ret. Sys., 780 F.2d 776, 780 (9th Cir. 1986) (recognizing that a class must not be vaguely defined and must be "sufficiently definite to conform to Rule 23"); see also Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1124 n.3, n.4 (9th Cir. 2017).  Indeed, it is difficult to address each Rule 23 factor for the three proposed classes, as the definitions are confusing, duplicative, and open to multiple interpretations. The Court need not conduct a rigorous class-certification analysis where Plaintiffs have failed to even propose class definitions that satisfy the federal rules.

***Second***, class certification should also be denied because Plaintiffs take the unprecedented step of seeking to certify three separate classes using anonymous "named" plaintiffs.  Plaintiffs cannot cite a single case where a court has certified a class with unidentified class representatives.  By seeking certification with anonymous class representatives, Plaintiffs ask the Court to violate the Due Process rights of putative class members who would have no way of knowing who is representing their claims, whether the "named" representatives even have standing or are subject to unique defenses, or whether they are qualified and will vigorously pursue the claims.  The request is improper and should be denied on this basis alone.

***Third***, even if the Court allowed anonymous individuals to represent classes, "Doe 1" through "Doe 6" cannot meet the Rule 23(a) requirements of adequacy or typicality. Every plaintiff wishing to proceed through a class action must actually ***prove***—not

simply plead—that their proposed class satisfies each requirement of Rule 23. <u>Halliburton Co. v. Erica P. John Fund, Inc</u>., 573 U.S. 258, 275 (2014) (citing <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350-51 (2011) & <u>Comcast Corp. v. Behrend</u>, 569 U.S. 27, 33 (2013)).  Here, Plaintiffs rely on six barebones declarations that provide no proof that these anonymous individuals ***are even members*** of the classes they seek to represent, let alone that they are adequate and typical class representatives.  Plaintiffs clearly fail to meet their burden.

        ***Fourth***, the Court should also deny the motion for class certification because Plaintiffs fail to meet their burden with respect to the other Rule 23 factors, including numerosity and the requirements of Rule 23(b).  Plaintiffs do not present accurate evidence regarding the current number of unknown boxholders, and individualized inquiries predominate making the claims not capable of classwide resolution.

## II.    PROCEDURAL HISTORY

        Plaintiffs Does 1 through 6 filed a class action complaint (Dkt. 1) seeking among other things the return of property seized from their and putative class members' safety deposit boxes at U.S. Private Vaults, Inc. ("USPV") because the seizures allegedly violated the Fourth and Fifth Amendments.  Each cause of action is sought on behalf of a putative class, which Plaintiffs have now (in the present motion for class certification) broken down into three separate proposed classes.  (<u>See generally</u> Mot.)  The first cause of action in the complaint seeks the return of putative class members' property under the Administrative Procedures Act ("APA"), while their second cause of action requests the return of putative class members' property under Fed. R. Crim. P. 41(g) and the right on behalf of all putative class members to proceed using pseudonyms.  (Compl. 10-11.)  The third and fourth causes of action pursuant to the APA seek orders (i) permitting plaintiffs and putative class members to file claims to contest forfeiture using pseudonyms in the already-initiated administrative forfeiture proceedings and in future judicial forfeiture proceedings (third cause of action); and  (ii) staying the deadlines for putative class members to file claims in the administrative forfeiture proceedings and

future judicial forfeiture proceedings and staying civil discovery in future judicial forfeiture proceedings until plaintiffs' constitutional challenges are decided (fourth cause of action).  (Id. at 11-13.)  Plaintiffs' fifth cause of action under the APA seeks an order to enjoin the spoliation of evidence related to putative class members' safe deposit boxes.  (Id. at 13-14.)

Simultaneously with the filing of the class action complaint, Plaintiffs moved ex parte for a temporary restraining order on behalf of all class members.  (Dkt. 6.)  In that application for a temporary restraining order, which as sought on behalf of a putative class, plaintiffs did not even address the Rule 23 factors or seek conditional class certification.  The government opposed (Dkt. 16), and on April 22, 2021, the Court denied Plaintiffs' request for a temporary restraining order "in its entirety."  (Dkt. 23 at 3.)  The Court, as an initial matter, denied Plaintiffs' application for classwide injunctive relief.  (Id.)

On June 2, 2021, Plaintiffs filed another ex parte application for a temporary restraining order on behalf of an uncertified putative class.  (Dkt. 26.)  Again, Plaintiffs did not address a single Rule 23 factor or seek conditional class certification.  (Id.)  The government opposed (Dkt. 27) and noted that "[i]t would be impossible, without knowing the plaintiffs' identities, for the government to determine whether, among other things, plaintiffs satisfy the requirements of the adequacy of plaintiffs' ability to represent the class or whether plaintiffs' claims are typical of the class."  (Dkt. 27 at 13.)  On June 7, 2021, the Court denied the second application for a temporary restraining order and – because Plaintiffs failed to even address conditional class certification in their application – did not rule on whether a conditional class should be certified.  (Dkt. 29.)

On July 26, 2021, Plaintiffs filed a "Motion to Certify Class for Preliminary Injunction and for Return of Seized Property."  (Dkt. 30.)  The Court ordered this motion stricken for failure to comply with the Local Rules, General order, and/or the Court's Case Management Order.  (Dkt. 35.)  In that original motion, Plaintiffs sought class

certification to allow putative class members to use a pseudonym and for a court order that the government return property to every putative class member.  (Dkt. 30 at 21.) After the Court ordered the motion stricken, Plaintiffs filed a stand-alone motion for class certification (Dkt. 37) and a stand-alone motion for a preliminary injunction (Dkt. 38.)   While the Complaint proposed a single class, Plaintiffs now propose three separate classes and seek certification of each class.  (See Mot. at 10.)

## III.   FACTUAL BACKGROUND

In March 2021, a grand jury indicted USPV for conspiring with its customers to launder money, distribute drugs, and structure financial transactions to avoid currency reporting requirements.  (Declaration of AUSA Victor Rodgers (Dkt. 33-6) ¶ 3 and Ex. A.)[1]  The indictment provides that USPV's business is predicated on "attract[ing] customers in possession of proceeds from criminal offenses, including drug trafficking[.]"  (Id.  (Ex. A [indictment at 3:21]).)  USPV allegedly did so by "touting the anonymity of the safety deposit rentals . . . including by advertising 'we don't even want to know your name' " and "boasting that, unlike banks, [USPV's] anonymous safety deposit box rentals did not require customer information that 'can be easily accessed by government agencies (such as the IRS)[.]'"  (Id. (Ex. A [indictment at 3:23-28]).)  In addition, the indictment provides that, as part of USPV's business model of anonymity, USPV would "mak[e] arrangements for the payment of the [safety deposit box] rental fees in cash and other ways that would be untraceable;" "issu[e] safety deposit box keys that were unmarked and unnumbered so that law enforcement could not determine that the keys unlocked safety deposit boxes at USPV;" and "charg[e] safety deposit box rental rates several times higher than those at banks."  (Id. (Ex. A [indictment at 3:28-4:5]); see also Complaint ¶¶ 23 and 26.)

The government obtained a sealed criminal seizure warrant for "[t]he nests of

---

[1] On July 26, 2021, the government filed a motion to dismiss the complaint (Dkt. 33.) The government incorporates herein the declarations of Justin Palmerton (Dkt. 33-1), Jessie Murray (Dkt. 33-2), Stephen Jobe (Dkt. 33-5), and AUSA Victor Rodgers (Dkt. 33-6), as well as the accompanying exhibits.

safety deposit boxes and keys" located at USPV, and the warrant provides it "does not authorize a criminal search or seizure of the contents of the safety boxes[,]" that "agents shall follow their written inventory policies to protect their agencies and the contents of the boxes" and that "agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property[.]"  (Rodgers Decl. ¶ 4 and Ex. B.)  Between March 22 and 26, 2021, agents executed the warrant and removed the nests of safe deposit boxes, inventorying their contents in the process, as the warrant authorized.  (Id.; Declaration of Justin Palmerton (Dkt. 33-1) ¶ 2; Complaint ¶¶ 9 and 29.)

Plaintiffs have sued using pseudonyms to protect themselves from the risk of criminal prosecution, and from injury, harassment, retaliation and embarrassment, because they claim the government has asserted it will initiate a criminal investigation if they disclose their identity.  (Complaint ¶¶ 10, 19 (at n.1), 32 and 33.)  However, the government does not investigate each box holder who identifies himself; it has no practice or policy of conducting a criminal investigation on each box but instead treats each box individually, and no criminal investigation is undertaken absent suspicion. (Palmerton Decl. ¶ 3.)  Boxes containing large sums of cash to which a narcotic detection canine alerted are likely to be criminally investigated, while boxes containing items normally stored in a safety deposit box likely will not.  (Id.)  Plaintiffs allege generally that Doe 1 and 2 had currency and gold in box numbers 4105 and 5006, Doe 3 had currency, gold and jewelry in box number 6710, and the remaining plaintiffs boxes had currency (Doe 4 in box 4300, Doe 5 in box 400 and Doe 6 in box 40).  (Complaint ¶ 11.)

On May 20, 2021, the FBI sent notice letters to persons with an interest in the contents of the aforementioned boxes (except for box number 4105, which had no assets), advising of the FBI's commencement of administrative forfeiture proceedings regarding the box contents.  (Declaration of Jessie Murray (Dkt. 33-2) ¶ 2.)  The notice letters included May 20, 2021 letters to the individual who may be Doe 1 or Doe 2 for

the $274,030 the seized from box 5006, and to the individual who may be Doe 4 for the $330,020 seized from box 4300.  (Id. at ¶ 2 and Exs. A and B.)  In addition, the government sent a notice letter on May 20, 2021 to USPV for the $199,950 seized from Doe 3's box 6710, the $570,000 seized from Doe 5's box 400 and the $1,194,750 seized from Doe 6's box 40.  (Id. at ¶ 3.)  On June 16, 2021, the FBI received claims to contest forfeiture as to the $274,030 in Doe 1 and Doe 2's box number 5006, and on June 21, 2021 as to the remaining boxes, but those claims were filed using pseudonyms and not in claimants' true names.  (Id. at ¶ 4.)

## IV.   LEGAL STANDARD

The "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"  Comcast, 569 U.S. at 33 (citation omitted).  "To come within the exception, a party … 'must affirmatively demonstrate his compliance' with Rule 23."  Id. (quoting Dukes, 564 U.S. at 350).  For this reason, Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 234 (2013).

Rule 23(a) tests whether "the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate,"  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013), requiring every "party seeking class certification [to carry the] burden of affirmatively demonstrating" (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012).  "Under Rule 23(a), the party seeking certification must demonstrate, first, that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."  Dukes, 564 U.S. at 345.  "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)."  Id. "Rule 23 does not set forth a mere pleading standard," id. at 350; rather, Plaintiff is required "to prove that there are in fact

sufficiently numerous parties, common questions of law or fact, etc." Id.

Plaintiffs appear to seek certification under Rule 23(b)(2), which "allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" Dukes, 564 U.S. at 360. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them" Id. (internal citation and quotation marks omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. Id. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." Id. "If individualized relief is sought—even individual injunctive relief—the named plaintiffs must look elsewhere in Rule 23(b) to obtain certification." Jamie S. v. Milwaukee Pub. Schs., 668 F.3d 481, 499 (7th Cir. 2012) (citing Dukes, 564 U.S. at 361-362).

## V.  ARGUMENT

### A.  Plaintiffs' proposed class definitions are fatally ambiguous, confusing, and  not sufficiently definite to conform to Rule 23.

Plaintiffs propose three confusing, ambiguous, and vague classes that are not sufficiently definite to conform to Rule 23. The proposed class definitions are:

- "**Class 1**: All persons and/or entities who maintained a safe deposit box at US Private Vaults, whose box was searched and the contents seized by the FBI on or about March 22, 2021, who received the government's constitutionally-inadequate notice of seizure of their property but filed an administrative forfeiture claim, and seek return of their property in judicial forfeiture proceedings using a pseudonym and/or through sealed filings or the appointment of a special master to administer their claims";

- **Class 2**: All persons and/or entities who maintained a safe deposit box at

US Private Vaults, whose box was searched and the contents seized by the FBI on or about March 22, 2021, and who have received no written or published notice of seizure, and seek return of their property using a pseudonym, and/or through under sealed filings or the appointment of a special master to administer their claims"; and

- **Class 3:** All persons and/or entities who maintained a safe deposit box at US Private Vaults, whose box was searched and the contents seized by the FBI on or about March 22, 2021, but received a constitutionally-inadequate notice, and seek return of their property using a pseudonym, and/or through sealed filings or the appointment of a special master to administer the relief they seek."

(Mot. at 10–11). As the government understands it, Class 1 is defined to cover all persons (1) who received a FBI notice letter regarding their property, similar to the FBI's May 20, 2021 notice letter to USPV, advising of the FBI's commencement of administrative forfeiture proceedings regarding their box's contents; (2) filed an anonymous administrative forfeiture claim with the FBI; and (3) seek return of their property in *judicial forfeiture* proceedings (meaning an <u>in rem</u> civil judicial forfeiture proceeding against the property) using a pseudonym, sealed filings or a submission to a special master (hereinafter the "Notified Judicial Forfeiture Class"). Class 2 is defined to cover those persons (1) who did not receive written (an FBI letter regarding their property) or published notice (a notice published on the internet regarding their property); and (2) seek return of their property using a pseudonym, sealed filings or submission to a special master (hereinafter the "No Notice Class"). And, as the government understands it, Class 3 is defined to cover those persons who (1) received the FBI notice letter regarding their property; and (2) seek return of property using a pseudonym, sealed filings or a submission to a special master (hereinafter the "Notified Class").

It is entirely unclear to the government how putative members of Class 1 (the

Notified Judicial Forfeiture Class) are not also members of Class 3 (the Notified Class). In other words, every person who meets the definition of Class 1 also appears to meet the definition of Class 3.  Moreover, Plaintiffs then confusingly argue that Class 3 comprises "more than 400 box holders who received constitutionally inadequate notice of the seizure of their property and/or received no written seizure notice" (mot. at 12.), which apparently consists of the 400 safe deposit boxes set forth in the FBI's letter to USPV (mot. At 6:11-12).   The reason every Class 1 member would appear to also be a Class 3 member is that plaintiffs argue that Class 3 would comprise "those box holders listed on the government's global notice of seizure who seek to move for the return of their property … in *any judicial forfeiture proceeding*."  (Mot. at 12.)  That is exactly the requirement for membership in Class 1.  Respectfully, this makes little sense, does not conform with Plaintiffs' own definition of Class 3, and presents a moving target throughout the motion for class certification.  The same is true with respect to Class 2: the definition does **not** include any reference to "non-currency personal property," which appears to be a defining characteristic as described in Plaintiffs' numerosity section. (Compare Mot. at 10 (defining Class 2) with Mot. at 12 (describing notice of non-currency personal property).)  These vague and confusing definitions are fatal to class certification.

The class definitions are also capable of multiple different interpretations.  As discussed, it is unclear if the dividing line involves "judicial forfeiture proceedings" (i.e., class members must be claimants in a future *in rem* judicial forfeiture proceeding and seek anonymity in this context), or if a member simply needs to seek the return of property.  (Compare Class 1 with Class 3; also compare Mot. at 11 (defining Class 3) with Mot. at 12 (discussing Class 3).)  Indeed, it is a reasonable interpretation that Class 1 only covers those individuals who are claimants in a judicial forfeiture proceeding, which have not even begun.  Thus as defined, there is not currently a possible member of this proposed class, the claims are not ripe, and the anonymous "named" plaintiffs do not have standing to assert claims on behalf of this group.  Moreover, with respect to Class 2

(the No Notice Class), it appears what Plaintiffs attempt to capture is a class of persons who have not received any written notice or *viewed* any published notice of the seizure of their personal property.  But the definitions fail to clarify this distinction.

These ambiguities justify denial of class certification, because the class is not "sufficiently definite to conform to Rule 23."  <u>Probe</u>, 780 F.2d at 780; *see also Briseno*, 844 F.3d at 1124 n.3, n.4  (rejecting a freestanding "administrative feasibility" requirement, but acknowledging that other "types of alleged definitional deficiencies," may justify denial of class certification, including "vaguely defined" class definitions). The Court should deny the motion for class certification on this basis alone.

## B.   The Court Should Not Certify Any Class With Anonymous Class Representatives.

In addition to the serious defects explained above, the Court should dismiss outright Plaintiffs' attempt to certify three classes using anonymous named plaintiffs.

Plaintiffs do not cite a single case supporting their position that a class can be certified using anonymous "named plaintiffs."  Nor can they.  The Due Process Clause and the rules of class action procedure both insist that the class be "adequately" represented; this ensures that the class's named representatives will pursue the class's interests sufficiently well so as to produce a judgment that can fairly bind all members of a group who cannot appear before the court individually.  <u>See</u> 1 Newberg on Class Actions § 3:50 (5th ed.).  Certifying a class with unnamed anonymous representatives would conflict with these principles, as other putative class members would have no way of knowing who is representing their claims, whether those persons are similarly situated, or if they will vigorously pursue claims on their behalf.  As part of the adequacy inquiry, courts assess among other things whether named plaintiffs have conflicts of interest, are qualified to serve as fiduciaries, know about the case and the duties of being a class representative, and are able to guide and direct the litigation as a representative of a putative class members.  <u>See, e.g., Chupa v. Armstrong Flooring, Inc.</u>, 2020 WL 1032420, at *4 (C.D. Cal. 2020) (holding that a plaintiff may not serve as a lead plaintiff

if he has been convicted of a crime that demonstrates dishonesty, which might suggest an inability to serve as a fiduciary).

In In re Ashley Madison Customer Data Sec. Breach Litig., the court dealt with claims asserted on behalf of nationwide and state classes related to a data security breach.  No. 2669, 2016 WL 1366616, at *1 (E.D. Mo. Apr. 6, 2016) (unreported). There, forty-two plaintiffs sought to represent a class of users and filed the complaint under pseudonyms.  Id.  In considering their efforts to represent putative classes of users, the court held that "[g]iven the importance of the role of class representative, the Court will require Plaintiffs to disclose their identities so that the public, including the putative class members they seek to represent, know who is guiding and directing the litigation." Id. at *4.  The court ordered that the plaintiffs proceeding under pseudonyms who also sought to serve as class representatives "must decide whether to proceed using their real names or dismiss their complaints" and proceed as class members themselves.  Id. at *5.

Here too, the Court should demand that any plaintiff who wishes to serve as a class representative must disclose their identity so that the public and putative class members they seek to represent know who is guiding and directing the litigation. Certifying a class with unknown anonymous "named" plaintiffs would conflict with the Due Process Clause and the federal rules governing class actions.

### C.    Plaintiffs Are Neither Adequate Class Representatives Nor Typical of the Putative Classes.

Even if the Court were to (1) deem the class definitions sufficient and (2) allow class certification with anonymous class representatives, which it should not, the motion for class certification still clearly fails because "Doe 1" through "Doe 6" have not met their burden to *prove* their adequacy or typicality.  Halliburton, 573 U.S. at 275.  Instead, Plaintiffs rely on barebones self-serving declarations and simply claim "there are no conflicts here." (Mot. at 15.)  This is far from sufficient at the rigorous class certification stage.

***First***, none of the "named" plaintiffs can adequately represent the Notified Judicial Forfeiture Class because none is a claimant in a judicial forfeiture proceeding. *See, e.g.*, *Lierboe v. State Farm Mut. Auto Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[O]ur law makes clear that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'").  No judicial forfeiture proceeding has commenced.  So none of the "Does" can adequately represent a class of (nonexistent) putative class members.  There are currently no members of this class as defined.

***Second***, the limited information offered in support of the request for class certification regarding "Doe 1" through "Doe 6" come from confusing, incomplete, and self-serving declarations that do not even demonstrate that the Plaintiffs are members -- let alone adequate or typical representatives -- of the three proposed classes.  For example:

- **Doe 1** claims he or she stored currency and gold in Box 5006, but declares that *Doe 2* received the direct written notice of the seizure of this box.  (Dkt. 37-7.)  Doe 1 also claims he or she stored currency in Box 4105, and never received any notice with respect to that box.  (Id.)  Doe 1 filed an administrative forfeiture claim as to Box 5006, but did not file an administrative forfeiture claim as to Box 4105.  (Id.)  Nonetheless, Plaintiffs ask the Court to appoint Doe 1 as a named plaintiff of Class 1 (the Notified Judicial Forfeiture Class), Class 2 (the No Notice Class), ***and*** Class 3 (the Notified Class).  On the face of the declaration, Doe 1 did not even receive notice for either box, and it is unclear how he is a member of Class 1 or Class 3.  Doe 1 also filed an administrative forfeiture claim as to one box but not the other.  His situation may well raise unique defenses and strategies that create conflicts.

- **<u>Doe 2</u>** declares he or she "helped maintain" Box 5006.  (Dkt. 37-8.)  It is not clear that Doe 2 even owns any of the content in that box or that she can adequately represent a class of individuals seeking the return of their property.  Yet Plaintiffs ask the Court to appoint Doe 2 as a class representative of **<u>each</u>** proposed class.  Plaintiffs also appear to ask the Court to appoint Doe 2 as a representative of a yet undefined class of "box holders whose 'contact' person was served but who wish to remain anonymous[.]"  (Mot. at 12.)  Nowhere in the class definitions do Plaintiffs even seek certification of boxholders whose "contact persons" were served with notices of forfeiture.  The Court should reject Plaintiffs' haphazard approach.

- **<u>Does 4 and 5</u>** fail to even declare whether they received notices of seizure.  (Dkt. 37-10; Dkt 37-11.)  Yet Plaintiffs ask that the Court appoint Doe 4 and Doe 5 to represent Class 1 (the Notified Judicial Forfeiture Class) and Class 3 (the Notified Class).  (Mot. at 12.)

The Court should reject this scattered, confusing, and incomplete presentation of facts. It is impossible to discern whether Doe 1 through Doe 6 are subject to unique defenses, have standing, or are qualified to represent the classes.  <u>See McVicar v. Goodman Global, Inc.</u>, No. 13-cv-1223, 2015 WL 4945730, at *8 (C.D. Cal. Aug. 20, 2015) ("[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.  Unique defenses can go to either the typicality or adequacy of class representatives. … [I]f a plaintiff lacks standing or has no claim she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail.") (citations omitted).

Plaintiffs cannot meet their burden with resepect to adequacy or typicality, and class certification should be denied on this basis alone.

### D.   Individualized Issues Preclude Rule 23(a) Commonality.

"Rule 23(a)(2) provides that class members may sue as representative parties only

13

if 'there are questions of law or fact common to the class.'" <u>B.K. by next friend Tinsley</u> <u>v. Snyder</u>, 922 F.3d 957, 967 (9th Cir. 2019).  "That language is easy to misread, since any competently crafted class complaint literally raises common questions." <u>Dukes</u>, 564 U.S. at 349 (2011) (alteration and internal quotation marks omitted).  So, for example, "[m]erely alleging a 'violation of the same provision of law' does not satisfy commonality." <u>Tinsley</u>, 922 F.3d at 967 (quoting <u>Dukes</u>, 564 U.S. at 350).  Instead, the "claims must depend upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Dukes</u>, 564 U.S. at 350.  In other words, "[w]hat matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." <u>Id</u>. (internal quotation marks omitted).

Plaintiffs' proposed class does not meet this standard.  The ongoing forfeiture proceedings involve individualized inquiries including:  what property was stored in each box; whether a criminal investigation is ongoing with respect to a particular box; whether a boxholder received notice of forfeiture; how a boxholder received notice of forfeiture; which version of the notice a boxholder received; whether the government is pursuing forfeiture of the contents of a box; whether the government is already attempting to return property to a boxholder; the stage of any ongoing return of property; or whether a boxholder is attempting to retrieve the property or has abandoned the property.

Plaintiffs' motion entirely ignores these individualized inquiries and attempts to broadly brush the common issue as putative class members' "desired opportunity to seek the return of property while remaining anonymous to the government" and their desire to have their property returned.  Mot. at 13.  But what Plaintiffs actually seek is affirmative injunctive relief as to every anonymous boxholder.  Because the individual circumstances of each boxholder vary, there are not common answers that would resolve

the litigation for each putative class member seeking the return of property
anonymously.

### E.    Plaintiffs Cannot Meet Their Burden To Show Rule 23(a) Numerosity.

Rule 23(a)(1) provides that a class action is maintainable only if "the class is so
numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).
Plaintiffs also fail to meet their burden with respect to this requirement.

Again, Plaintiffs must *prove* – not plead – that the numerosity factor is met.
Instead, Plaintiffs assert – without citing to any declarations or factual record – numbers
of boxes that they claim make up their three vague and ambiguous proposed classes. For
example, Plaintiffs state that the government has not identified a contact person for about
100 boxes, and "over 120 boxes listed on the U.S. government website's published
notices of seizure are not connected with an identified name." (Mot. at 12.) These bald
assertions are problematic for a number of reasons. First, Plaintiffs do not address
whether the number of boxes has changed since they were listed on the government's
website, or provide any evidence regarding the current number of unknown boxholders.
The basis for Plaintiffs' numbers appears to be Exhibit D to the Eric Honig Declaration,
which he describes as a compilation of currency seizures from the FBI's "Official
Notification" of seizures, taken from a larger list of USPV seizures published on the
government's forefeiture.gov website. Plaintiffs contend there are 122 boxes listed on
the exhibit and that the absence of a name next to an item on this list means there must
be 122 boxes for which the government is unable to identify the boxholder. But this is
not true. (See Declaration of Lynne Zellhart (filed with the government's Opposition to
the Mot. for Preliminary Injunction on August 13, 2021).) For example, the exhibit upon
which Plaintiffs rely lists Asset ID No. 21-FBI-375, which is $34,200.00 seized from
Box 305. The FBI did identify an individual associated with that box, and that
individual filed a claim using an actual name. (Id.) When the FBI learns that a person
owns a box, the FBI then sends a notice letter to the individual. (Id.) So the internet
publications that Plaintiffs attach as exhibits do not represent the number of boxholders

the government is unable to identify.  That number as of today is closer to around 22, not 122.  (Id.)

Moreover, Plaintiffs ignore that different notices have been published over time, and will be published in the future as to personal property plaintiffs argue was never set forth in the internet notices.  And Plaintiffs offer no evidence that any of these individuals wish to proceed anonymously.  The Court should not permit class certification on an incomplete factual record and where Plaintiffs plead and do not prove that the numerosity requirement has been satisfied.

### F.  Even If Plaintiffs Could Satisfy Rule 23(a), They Fail To Meet the Requirements of Rule 23(b).

Plaintiffs appear to seek certification under Rule 23(b)(2), which "allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'"  Dukes, 564 U.S. at 360.  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them"  Id. (internal citation and quotation marks omitted).  "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant."  Id.  "If individualized relief is sought—even individual injunctive relief—the named plaintiffs must look elsewhere in Rule 23(b) to obtain certification."  See Jamie S. v. Milwaukee Pub. Schs., 668 F.3d 481, 499 (7th Cir. 2012) (citing Dukes, 564 U.S. at 361-362).

These principles are independently fatal to the request for class certification.  Among other things, Plaintiffs explicitly request that the Court enter an injunction that requires the Government to "return the property seized from the USPV boxes[.]"  (See Dkt 38-13 at 3.)  But such injunctive relief is exactly what class actions are *not* designed

to accomplish – instead, demands an individualized inquiry into the contents of a box, the type of property in the box, the status of the return or forfeiture of each box, whether the government has already returned the content of the box, or whether a boxholder claims there is other property missing from the box.  The return of each box's property is an entirely individualized inquiry that depends on the box and the contents of each box. Plaintiffs have crafted a class action complaint and request a preliminary injunction that target complex individual issues not proper for classwide resolution.

## VI.   CONCLUSION

For the foregoing reasons, the government respectfully requests that the motion for class certification be denied.

Dated: August 13, 2021                    Respectfully submitted,

                                          TRACY L. WILKISON
                                          Acting United States Attorney
                                          SCOTT M. GARRINGER
                                          Assistant United States Attorney
                                          Chief, Criminal Division

                                          _____/s/_____
                                          ANDREW BROWN
                                          VICTOR A. RODGERS
                                          MAXWELL COLL
                                          Assistant United States Attorneys
                                          Attorneys for Defendants
                                          UNITED STATES OF AMERICA, et al.