Eric Honig (CSBN 140765)
LAW OFFICE OF ERIC HONIG
A Professional Law Corporation
P.O. Box 10327
Marina del Rey, CA 90295
erichonig@aol.com
Telephone: (310) 699-8051
Fax: (310) 943-2220

ERIC D. SHEVIN (CSBN 160103)
Shevin Law Group
15260 Ventura Boulevard, Suite 1400
Sherman Oaks, California 91403
eric@shevinlaw.com
tel. 818-784-2700
fax 818-784-2411

RICHARD M. BARNETT (CSBN 65132)
A Professional Law Corporation
105 West F Street, 4th Floor
San Diego, CA 92101
richardmbarnett@gmail.com
Telephone: (6l9) 231-1182
Facsimile: (619) 233-3221

PAUL L. GABBERT (CSBN 74430)
2530 Wilshire Boulevard
Second Floor
Santa Monica, CA 90403
plgabbert@aol.com
Telephone: 424 272-9575
Facsimile: 310 829-2148

Michael S. Chernis  (CSBN 259319)
CHERNIS LAW GROUP P.C.
Santa Monica Water Garden
2425 Olympic Blvd.
Suite 4000-W
Santa Monica, CA 90404
Michael@chernislaw.com
Tel: (310) 566-4388
Fax: (310) 382-2541

Devin J. Burstein (CSBN 255389)
Warren & Burstein
501 West Broadway, Suite 240
San Diego, California 92101
db@wabulaw.com
Telephone: (619) 234-4433

Attorneys for Plaintiffs Does 1-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DOES 1-6, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>UNITED STATES OF AMERICA, and MERRICK GARLAND, in his official capacity as United States Attorney General,<br><br>　　　　Defendants. | No.: 2:21-cv-03254-MCS-SK<br><br>REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION; DECLARATION<br><br>HRG DATE:　9/7/21<br>TIME:　　　9:00 a.m.<br>CTRM:　　　850 Roybal Fed. Bldg. |

**A.    The Court should grant an injunction ordering the government not to hold onto, but to return Plaintiffs' <u>non-currency personal property,</u> for which no seizure notice was served or published within 60 days after seizure.**

1.    <u>The forfeiture statute speaks for itself.</u>

Since Plaintiffs' **non-currency personal property** was seized on March 24, 2021, Defendants have not served Plaintiffs with a notice of the seizure.[1] Plaintiffs' motion showed that Defendants thus have violated 18 U.S.C. 983(a)(1)(F), which provides that if the government fails to serve a notice of seizure upon the person from whom the property was seized within 60 days, it "shall" return the property to that person (although it has the right to commence a forfeiture proceeding at a later time). The face of this forfeiture statutory section could not be more clear and definitive.

Fed.R.CrimP. 41(g) requires that the person from whom the property is seized is presumed to have a right to its return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property, e.g., if it needed as evidence, is contraband or is subject to forfeiture.  None of Plaintiffs' property is contraband, and Defendants' opposition did not produce any evidence that there is any pending criminal or civil forfeiture proceeding related to their property.

Defendants argued that Plaintiffs are bound by the Court's order in *Snitko v. United States*, which held that under 18 U.S.C. §983(a)(3)(A) the government has 90 days to file a complaint from the date those plaintiffs filed administrative claims with

---

[1] Defendants said the FBI's notice sent only to the the criminal defendant, US Private Vaults, included personal property seized from some of the boxes.  ECF 42, 26:14-17. However, this notice did not comply with due process. *See infra*. As proven in Plaintiffs' motion, the FBI has failed to served either written or published notice of the seizure of this property to Plaintiffs or to any of the box holders, which Defendants did not refute.

1

the FBI, and thus the status quo should be maintained until those 90 days expired. No. 2:21-cv-4405-RGK-MAR, ECF 58, pp. 3-4. However, that portion of the Order in *Snitko* does not apply to the circusmstances described here. The plaintiffs in that case never argued, and thus the Court did not address, whether Defendants failed to comply with the first deadline in the forfeiture statute, which requires the government to serve the notice of seizure within 60 days or return the property. *Id.*

This is a Constitutional issue. An elementary and fundamental requirement of due process in any proceeding that is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Federal courts always possess jurisdiction to review whether the notice given in an administrative forfeiture proceeding afforded the claimant constitutional due process. *Garcia v. Meza*, 235 F.3d 287, 290 (7th Cir. 2000); *see also United States v. Marolf*, 173 F.3d 1213, 1216 (9th Cir. 1999); *United States v. Clagett*, 3 F.3d 1355, 1356 (9th Cir. 1993). Because forfeitures are disfavored, forfeiture laws and their notice provisions are strictly construed against the government. *United States v. Ritchie*, 342 F.3d 903, 910 (9th Cir. 2003). Accordingly, the statutory and regulatory guidelines for forfeitures are interpreted in light of constitutional due process concerns regarding notice of impending legal proceedings. *Id*.

The statutory framework of CAFRA's reforms are grounded in providing property owners with proper notice and an opportunity to contest the seizure and

forfeiture of their property. *U.S. v. $10,000.00*, *supra*, 2007 WL 2330318 at *4 ("The Civil Asset Forfeiture Reform Act ('CAFRA'), including 18 U.S.C. §983, was enacted "[t]o provide increased protections for claimants."...According to the legislative history, "the purpose of the sixty-day rule is to ensure that the forfeiture process is commenced promptly so that the claimant can have his day in court." Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties,* 27 J. Legis. 97, 129 (2001).")(additional citation omitted).

Courts in the past had strictly enforced deadlines on property owners intending to challenge the administrative or civil judicial forfeiture action. *Id*., 132-34. Thus, "[t]he enactment of CAFRA was, in part, a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government. The logic was that if property owners were required to file claims within a fixed period of time, and were made to suffer consequences for failing to do so, the government should face deadlines and suffer consequences as well." *Id.* at 134-35; *United States v. Real Prop. in Section 9. Town 29 N., Range 1 W. Township of Charlton, Otsego County, Michigan,* 241 F.3d 796, 799 (6th Cir.), *reh'g denied* (2001)("[CAFRA] is specifically designed to rectify an unfairness to the individual vis-a-vis the government."); *see also United States v. $80,180.00 in United States Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002)(CAFRA was enacted in response to widespread criticism of the civil forfeiture regime); *Real Property,* 241 F.3d at 799

3

(CAFRA is primarily remedial in nature; it corrects an aberration that existed previously by leveling the playing field between the government and persons whose property has been seized).[2]

Accordingly, the portion of the *Snitko* order cited by Defendants is inapplicable and the 60-day notice-or-return-property rule of §983(a)(1)(F) should be enforced.

2. <u>The government has not returned anything, but instead demanded that Plaintiffs must identify themselves to have their property returned, and has admitted it has failed to provide notice of seized personal property.</u>

Defendants in their opposition stated that the government "is returning" gold and jewelry to Plaintiff Does 1, 2 and 3. ECF 42, 25:16. This statement is not true. Counsel for Does 1 and 2 have not been contacted by the government, and Doe 3's counsel was told by the FBI that their clients would have to produce identification to the FBI if the clients wish to retrieve their property. Declaration of Eric Honig, ¶3. This condition obviously would defeat the purpose of this litigation, in which Plaintiffs are requesting the Court to allow them to litigate anonymously.[3]

Defendants also admitted that the internet publication of notice of the seizure

---

[2] The legislative history indicates that in enacting CAFRA, Pub.L. 106-185, 114 Stat. 202 (2000), Congress sought to advance three broad policies, foremost of which was to "to increase the due process safeguards for property owners whose property has been seized." *See, Ramirez v. U.S.*, 57 Fed.Cl. 240, 250 (2003), citing H.R.Rep. No. 106-192 at 2 (1999) and *Vereda, Ltd. v. United States*, 271 F.3d 1367, 1371 n. 4 (Fed. Cir. 2001)(Congress passed CAFRA "in an effort to address due process concerns associated with federal civil forfeitures").

[3] Defendants also argued that Plaintiffs did not identify their property with any specificity, including by box number or a property description. ECF 42, 26:22-27:2. However, Plaintiffs specifically did both in their motion. *See* ECF 38, 12:13-17 (declarations averring that Plaintiffs "also received no notice for the **gold** they held in **Box #5006.** Declaration of DOE 1, ¶¶4, 5; Declaration of DOE 2, ¶¶4, 5. Also, DOE 3 stored **gold and jewelry in Box #6710**, but never received any notice of seizure for that property. Declaration of DOE 3, ¶4.")(emphasis added).

4

of box holders' personal property "has not yet commenced and will occur in the future." ECF 42, 26:17-20. Defendants' admission of their failure to send timely seizure notices – an admission of the violation of §983(a)(1)(F) – additionally supports Plaintiffs' motion for injunctive relief ordering the return of their property.

    3.    <u>Once it violates §983(a)(1)(F), the government is not entitled to hold onto Plaintiffs' property and continue violating the forfeiture statute simply because it says it might file a civil forfeiture action sometime in the future</u>.

Defendants further argued that it doesn't matter that the government violated §983(a)(1)(F)'s 60-day notice of seizure rule, since it still has time to commence a civil forfeiture proceeding within the 90 days from the date Plaintiffs' administrative claims were filed. This argument is specious.

First, under that theory, the government could effectively hold onto Plaintiffs' property for a far greater period of time even after violating the 60-day deadline. The forfeiture statute provides that the court, for good cause shown, "may extend the period for filing a complaint." 18 U.S.C. §983(a)(3(A); *U.S. v. $10,160.00 in U.S. Currency*, 2012 WL 3608578, at *2 (D. Conn. Aug. 22, 2012)(court granted two 30-day extensions of time beyond the initial 90-day deadline because the government claimed it needed "additional time to obtain the necessary information from the DEA."); *see also*, 1997 House Committee Report, Legislative History of Civil Asset Forfeiture Reform Act (CAFRA) of 2000, published by the U.S. Department of Justice (May 2000) at 251 ("good cause" language was derived from situations in which the filing of the complaint within the 90 day deadline might interfere with an ongoing criminal investigation, or endanger witnesses or undercover operations).

The government could therefore claim that it is waiting for more information from the FBI, which could continue saying it is conducting an "ongoing" criminal investigation of Plaintiffs or other box holders, and then file *ex parte* requests with the Court for numerous consecutive 30-day extensions.  As a result, the government could effectively delay commencing a judicial civil forfeiture proceeding for an extra 90 days from the date an administrative claim is filed, if not longer.

Second, Defendants admitted that by accepting Plaintiffs' valid administrative claims, the FBI has "suspended" its administrative forfeiture proceedings against Plaintiffs' currency.  *See* ECF 33, p. 16, fn. 2.  Since no judicial forfeiture proceedings have been filed against their property, and there no longer are any administrative forfeiture proceedings pending against Plaintiffs' property, no other remedy exists to seek return of their property.

Third, none of the cases cited in Defendants' motion address this lack of a remedy after the FBI suspends its administrative proceedings, when no judicial forfeiture proceeding has been filed.  Instead, the cases say only that a failure to provide timely notice does not require the government to return the property **once the government has commenced a forfeiture proceeding**. ECF 42, pp. 15-16.  Since no judicial action has been commenced against Plaintiffs' property, those cases are inapplicable.

Defendants' argument that the 60-day rule can be violated with impunity not only would conflict with Congress's intent and CAFRA's purpose of leveling the playing field between property owners and the government, particularly with regard

to due process considerations, but it also would render §983(a)(1)(F) superfluous. Congress clearly would not have desired that result.

Accordingly, the factors identified in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.C. 7 (2008) to obtain preliminary injunctive relief have been met here. First, Plaintiffs have shown a likelihood of success on the merits of their argument that by violating §983(a)(1)(F), Defendants violated Plaintiffs' right to due process of law. Second, a deprivation of Fifth Amendment due process rights, as here, "inexorably" amounts to an irreparable harm. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Third, the balance of equities favor Plaintiffs and issuance of the requested injunction would be in the public interest because "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Therefore, the Court should grant the requested injunction rather than let the government hold on to the property indefinitely.

**B.   The Court should grant an injunction ordering the government not to hold onto, but to release Plaintiffs' <u>currency</u>, for which the seizure notice was constitutionally inadequate**.

Plaintiffs also moved for the release of Plaintiffs' seized **currency** pursuant to §983(a)(1)(F) based on the same seizure notices this Court found "comply with neither of the Due Process requirements set forth in *Gete* (*v. I.N.S.*, 121 F.3d 1285 (9th Cir. 1997)] and affirmed in [*Al*] *Haramain* [*Islamic Found, Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012)]", because they were completely devoid of any

factual or specific legal grounds for the seizures. ECF 52, p. 4-5.[10]

Defendants argued that Plaintiffs' motion is not ripe for resolution because the government might file a complaint for forfeiture sometime in the future. That argument totally misses the point of §983(a)(1(F)'s penalty provision (release of property pending future possible proceedings), which was enacted by Congress for a importnant reason, i.e., to ensure that the government complies with due process. The government cannot have "one free bite" to violate a person's Fifth Amendment rights.

Defendants also argued subject matter jurisdiction does not exist for Plaintiff's motion, incorporating by reference the arguments they made in their motion to dismiss this action (ECF 33). The government is wrong. *See*, ECF 40, pp. 13-20, Plaintiffs' opposition to that motion, which they hereby incorporate by reference.

Defendants further argued the FBI's forfeiture notice, standing alone, cannot be used to determine whether a due process violation occurred, however its primary reliance on *United States v. 24 Firearms From Various Manufacturers* is misplaced. The seizure notice there, although naming only the firearms "trigger" forfeiture statute, gave the claimant notice that forfeiture at least would be based on a firearms violation. 2018 WL 4935453, *3 (E.D. Wash. Oct. 11, 2018). Here, however, the forfeiture "trigger' statute included 35 U.S. Code sections as disparate as forgery, smuggling, computer fraud, counterfeiting, loan fraud, etc., which "fall woefully

---

[10] The published notice of seizure of Plaintiffs' currency stated only "The Federal Bureau of Investigation (FBI) gives notice that the property listed below was seized for federal forfeiture for violation of federal law. Laws and procedures applicable to the forfeiture process can be found at 19 U.S.C. Sections 1602 - 1619, 18 U.S.C. Section 983, and 28 C.F.R. Parts 8 and 9." *See, e.g.*, ECF 38-6, p. 3.

8

short"of the government's due process obligations. ECF 52, pp. 4-5.[11]

The relief requested here by Plaintiffs is a prohibitory injunction, to preserve the *status quo* pending a determination of the action on the merits. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)(finding that order for restitution and to recall pharmaceuticals was a "mandatory" injunction). The *status quo ante litem* referenced means the last, uncontested status which preceded the pending controversy. *Regents of the Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 514 (9th Cir.1984). Here, the status quo was prior to the property seizures, before the due process violations occurred. The *status quo* would be preserved by releasing Plaintiffs' property back to their possession – to before the search – under §983(a)(1)(F), pending possible future commencement of forfeiture proceedings (which, according to Defendants, may never even occur).

The FBI's service of a seizure notice that fails to comply with due process is equivalent to serving no notice at all. As in Section A, above, 1) Plaintiffs likely will succeed on their merits claim that the currency seizure notices violated due process, 2) a deprivation of Fifth Amendment due process rights "inexorably" amounts to an irreparable harm, 3) the balance of equities favor Plaintiffs, and 4) it is always in the public interest to prevent the violation of a party's constitutional rights. Accordingly, pursuant to §983(a)(1)(F) and Fed.R.Crim.P. 41(g), the Court should grant the requested injunction.

---

[11] The other cases cited by Defendants (*see* ECF 42, pp. 23-24) are inapposite, since they precede the passage of 18 U.S.C. §983 and/or involved notices that failed to advise property owners of their administrative remedies, which is not the issue here.

Dated: August 20, 2021          Respectfully submitted,

LAW OFFICE OF ERIC HONIG
A Professional Law Corporation
RICHARD M. BARNETT
ERIC D. SHEVIN
CHERNIS LAW GROUP P.C.
PAUL L. GABBERT
DEVIN J. BURSTEIN


/s/   Eric Honig
_____
ERIC HONIG
Attorneys for Plaintiffs and the Class

## DECLARATION OF ERIC HONIG

I, Eric Honig, declare as follows:

1.  I am an individual over the age of 18.  I am one of the attorneys of record for Plaintiffs in this action.  I have personal knowledge of the facts set forth below and if called to testify I could and would do so competently.

2.  I am lead counsel in this class action case, *DOES 1-6 v. United States*, et al, 2:21-cv-03254-RGK-MAR.  This declaration is being filed in support of Plaintiffs' reply in support of their motion for class certification.

3.  On August 13, 2021, FBI Agents Andrew Dama and Andrew Grigoriadis separately told Doe 3's counsel that they were authorized to release the non-currency items seized from counsels' clients' boxes, but only if the clients provide a key and identification.  Counsel for Does 1 and 2 have not yet received such an "offer" from the FBI.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 20, 2021 at Marina Del Rey, California.

/s/ Eric Honig

ERIC HONIG