Eric Honig (CSBN 140765)
LAW OFFICE OF ERIC HONIG
A Professional Law Corporation
P.O. Box 10327
Marina del Rey, CA 90295
erichonig@aol.com
Telephone:  (310) 699-8051
Fax:  (310) 943-2220

RICHARD M. BARNETT (CSBN 65132)
A Professional Law Corporation
105 West F Street, 4th Floor
San Diego, CA 92101
richardmbarnett@gmail.com
Telephone: (619) 231-1182
Facsimile: (619) 233-3221

Michael S. Chernis  (CSBN 259319)
CHERNIS LAW GROUP P.C.
Santa Monica Water Garden
2425 Olympic Blvd.
Suite 4000-W
Santa Monica, CA 90404
Michael@chernislaw.com
Tel:  (310) 566-4388
Fax: (310) 382-2541

ERIC D. SHEVIN (CSBN 160103)
Shevin Law Group
15260 Ventura Boulevard, Suite 1400
Sherman Oaks, California  91403
eric@shevinlaw.com
tel. 818-784-2700
fax 818-784-2411

PAUL L. GABBERT (CSBN 74430)
2530 Wilshire Boulevard
Second Floor
Santa Monica, CA 90403
plgabbert@aol.com
Telephone: 424 272-9575
Facsimile: 310 829-2148

Devin J. Burstein (CSBN 255389)
Warren & Burstein
501 West Broadway, Suite 240
San Diego, California 92101
db@wabulaw.com
Telephone: (619) 234-4433

Attorneys for Plaintiffs Does 1-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DOES 1-6, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,  and MERRICK  GARLAND, in his official capacity as United States Attorney General,<br><br>Defendants. | No.: 2:21-cv-03254-MCS-SK<br><br>REQUEST FOR CLARIFICATION/ RECONSIDERATION/MODIFICA- TION OF ORDER (ECF 51)<br><br>DATE:       11/15/21<br>TIME:        9:00 a.m.<br>CTRM:      850 |

Plaintiffs hereby request clarification/reconsideration/modification by the Court of a portion of its September 15, 2021Order denying Plaintiffs' motion for a preliminary injunction, as follows:

Plaintiffs in their motion argued they were entitled to return of their property pending any further proceedings, both because they received no notice of seizure within 60 days,[1] and because the notices of administrative forfeiture they received did not comport with the forfeiture statute or due process.  ECF 51, p. 11, Section C, third paragraph; see also 18 U.S.C. §983(a)(1)(F).[2]

In denying relief, the Court cited the statute's provision that the if the Government does not send notice of a seizure of property "to the person from whom the property was seized...the Government shall return the property to that person...." The Court concluded that if the government violates the statutory deadline, persons asserting actual ownership of the seized property essentially do not have standing

---

[1]  DOES 1 and 2 never received notice of the seizure of the currency they held in Box #4105 or for the gold they held in Box #5006, and DOE 3never received a notice of seizure for the gold and jewelry held in Box #6710.  Since their safe deposit boxes and property were seized on March 22, 2021, the 60-day deadline for the government to serve notice of the seizure expired on May 21, 2021.  ECF 38, 12:17-13:4.

[2]  In any nonjudicial civil forfeiture proceeding under a federal civil forfeiture statute, the government is required to send written notice to interested parties within 60 days after the date of a federal seizure, unless it files a civil judicial forfeiture action against the property within those 60 days. 18 U.S.C. §983(a)(1)(A)(i, ii); *see also, e.g., United States v. Real Property Located at 475 Martin Lane, Beverly Hills, CA,* 545 F.3d 1134, 1141 (9th Cir.2008)(government has 60 days after seizing property to send written notice to interested parties").  If the government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted, it shall return the property to that person, although without prejudice to the right of the government to commence a forfeiture proceeding at a later time. 18 U.S.C. §983(a)(1)(F); see also *United States v. $10,000.00 in U.S. Currency,* 2007 WL 2330318, at *1 (S.D.Cal. Aug. 13, 2007)(granting summary judgment and return of property due to government's failure to provide timely notice after seizure).

under the statute to request return of their property if an uninterested third party who may actually or constructively have been in possession of the property does.  ECF 51, Section C, third paragraph.

This hyperliteral interpretation of §983(a)(1)(F) does not make sense, particularly in the present case.  In denying the motion, the Court incorrectly assumed that US Private Vaults ("USPV") was the "person" from whom the property was seized when the FBI opened Plaintiffs' privately-held safe deposit boxes and seized the contents.  In the Factual Background of its Order, however, the Court acknowledged that "USPV's safe deposit boxes differ from those of a typical bank.  USPV does not keep a key to any rented boxes, which means that the only person with the ability to open the box is the renter or the renter's designee."  ECF 51, p. 2, Section II, second full paragraph.

Thus, USPV, who the Court stated had been indicted by grand jury for money laundering, drug and structuring charges (ECF 51, p. 2, third full paragraph), was not the person from whom the property was seized, since it never maintained and never could have maintained actual possession of the property.  Although the FBI may have seized a wall of boxes from USPV, when it opened Plaintiffs' boxes and seized the property held within – which USPV could not do – it seized the property from Plaintiffs' personal and private box, *ergo*, it seized the property from Plaintiffs.

Moreover, the Court's finding that USPV was the person from whom Plaintiffs' property was seized creates a conflict between Plaintiffs and USPV, an indicted corporate entity, which had no motive to seek to force the government to

comply with the forfeiture statute's notice deadline regarding other persons' property. Even if USPV on its own had moved the Court to return Plaintiffs' property to the possession of USPV, Plaintffs fully expect that the Court would not grant such an order that hands over third parties' property to an indicted criminal defendant who has not claimed any legal interest in the property.

The Court's interpretation of this statute raises additional concerns that would conflict with the meaning and purpose of the statute, which is to afford due process protections to property owners. *U.S. v. $10,000.00*, 2007 WL 2330318 at *4 ("The Civil Asset Forfeiture Reform Act ('CAFRA'), including 18 U.S.C. §983, was enacted "[t]o provide increased protections for claimants."...According to the legislative history, "the purpose of the sixty-day rule is to ensure that the forfeiture process is commenced promptly so that the claimant can have his day in court." Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties,* 27 J. Legis. 97, 129 (2001))(additional citation omitted).[3]

---

[3] The legislative history indicates that in enacting CAFRA, Pub.L. 106-185, 114 Stat. 202 (2000), Congress sought to advance three broad policies, foremost of which was to "to increase the due process safeguards for property owners whose property has been seized." *Ramirez v. U.S.,* 57 Fed.Cl. 240, 250 (2003), citing H.R.Rep. No. 106-192 at 2 (1999) and *Vereda, Ltd. v. United States,* 271 F.3d 1367, 1371 n. 4 (Fed. Cir. 2001)(Congress passed CAFRA "in an effort to address due process concerns associated with federal civil forfeitures"), and *United States v. Real Prop. in Section 9. Town 29 N., Range 1 W. Township of Charlton, Otsego County, Michigan,* 241 F.3d 796, 799 (6th Cir.), *reh'g denied* (2001)("[CAFRA] is specifically designed to rectify an unfairness to the individual vis-a-vis the government.").
The floor debates in the Senate and House of Representatives show that by 2000, legislators in Congress had concluded that the old federal civil forfeiture statutes provided insufficient protection to the owners' private property. *Ramirez*, 57 Fed.Cl. at 250, citing, *inter alia,* 145 Cong. Rec. H4852 (daily ed. June 24, 1999)(statement of Rep. Pryce) ("Our current civil asset forfeiture laws, at their core, **deny basic due process** ....")(emphasis added). Even conservative Representative Henry Hyde (R-Illinois) was

Imagine the following nightmare scenario: an investment advisor conducts a fraud scheme in which he uses a client's money to purchase for himself a $300,000 watch, which is directly traceable to the stolen funds.  FBI agents investigate, execute a warrant, seize the watch for administrative forfeiture from the suspect's possession, and a grand jury indicts him for wire fraud and money laundering.  The FBI, however, fails to serve a notice of seizure within 60 days in violation of §983(a)(1)(A).  According to the Court's reasoning, the criminal defendant would have standing to move for return of the watch under §983(a)(1)(F), but not the victim.

Clearly, Congress did not intend for an indicted defendant such as USPV, with no legal interest in seized property, to be the only person who can challenge the government's failure to comply with statutory deadlines and due process.[4]  As it

a leading sponsor of civil forfeiture reform, and declared on the floor of the House of Representatives that "[c]ivil asset forfeiture as allowed in our country today is a throwback to the old Soviet Union, where justice is the justice of the government and the citizen did not have a chance." *Ramirez*, 57 Fed.Cl. at 250, citing 145 Cong. Rec. H4854 (daily ed. June 24, 1999); *see also United States v. $80,180.00 in United States Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002)(CAFRA was enacted in response to widespread criticism of the civil forfeiture regime); *Real Property*, 241 F.3d at 799 (CAFRA is primarily remedial in nature; it corrects an aberration that existed previously by leveling the playing field between the government and persons whose property has been seized).

Cassella, a U.S. Department of Justice attorney who was the principal drafter of DOJ's asset forfeiture proposals and who testified twice at the Congressional hearings on CAFRA and participated in the negotiations with Congress, analyzed CAFRA's legislative history.  Cassella, Journal of Legislation 27.1: 97-151.  Courts, however, strictly enforced deadlines on property owners intending to challenge the administrative or civil judicial forfeiture action. *Id.* at 32-34.  Thus, "[t]he enactment of CAFRA was, in part, a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government. The logic was that if property owners were required to file claims within a fixed period of time, and were made to suffer consequences for failing to do so, the government should face deadlines and suffer consequences as well." *Id.* at 34-35.

[4] In fact, the same forfeiture statute also precludes a person who is merely in possession of seized property from raising an "innocent owner" defense.  18 U.S.C. §983(d)(6)(**(6)**).

stands now, however, the Court's holding may be cited by criminal defendants in the future as a basis for obtaining possession of property that does not belong to them.

Accordingly, Plaintiffs hereby request the Court to reconsider its Order, and clarify and modify its Order (ECF 51, p. 11, Section C, third paragraph) to state that Plaintiffs had standing and were a proper party to move for return of the property seized from their safe deposit boxes, pursuant to §983(a)(1)(F).[5]

Dated: October 14, 2021          Respectfully submitted,

LAW OFFICE OF ERIC HONIG
A Professional Law Corporation
RICHARD M. BARNETT
ERIC D. SHEVIN
CHERNIS LAW GROUP P.C.
PAUL L. GABBERT
DEVIN J. BURSTEIN


/S/   Eric Honig

_____
ERIC HONIG
Attorneys for  Plaintiffs and the Class

---

[5] Although Plaintiffs requested return of their currency because of the government's statutory violation of the 60-day notice requirement, since then the government has filed civil forfeiture actions against the currency seized from Box numbers 5006, 6710, 4300, and 400 and also requested the Court to issue warrants of arrest in rem for those currency defendants. ECF 52 at 2:18-3:11; ECF 53; *see also, e.g.*, ECF 8 in Case No. 2:21-cv-07481 (request for warrant of arrest).  Thus, the request for return of the currency would be moot, and Plaintiffs consequently herein only seek relief in the form of modification of the Court's Order regarding its interpretation of 18 U.S.C. §983(a)(1)(F).

6